# EXHIBIT 1

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC  20530*

July 28, 2025

Via Mail and Email

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Dear Executive Director Matthews:

    We write to you as the chief election official for the State of Illinois to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

    Please provide a list of the election officials who are responsible for implementing Illinois' general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA.  Please include both the actions taken by State officials as well as county officials.

    The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

    Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the State of Illinois' computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format.  Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In response to EAVS Question A10a, nearly one-third of Illinois' counties (32 out of 102) reported that they did not send out any confirmation notices: Bond County; Boone County; Brown County; Bureau County; Clay County; DeWitt County; Fulton County; Gallatin County; Greene County; Grundy County; Jasper County; Johnson County; Lawrence County; Livingston County; Logan County; Macoupin County; Mason County; McDonough County; Mclean County; Menard County; Monroe County; Montgomery County; Morgan County; Pope County; Putnam County; Richland County; Schuyler County; Scott County; Stark County; Stephenson County; Wabash County; and Warren County. Please explain why each of these 32 counties reported they did not send out any confirmation notices. For each of the 32 counties that have not sent confirmation notices, please explain why they did not send confirmation notices. Please explain what steps Illinois is taking to ensure that these counties are conducting list maintenance including when those steps were taken.

2. Despite the fact that nearly one-third of counties did not respond to Question A10a, Illinois reported that it sent out over 3.8 million confirmation notices, which comprised 46.9 percent of all registered voters. The national average was 19.5 percent. Please explain why the number of confirmation notices and percentage sent to all registered voters was so high. Please explain how it is determined who receives a confirmation notice.

3. A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A10a, sixteen counties in Illinois reported that the number of confirmation notices they sent was more than one hundred percent of all registered voters: Alexander County (239.3 percent); Carroll County (123.2 percent); Christian County (265 percent); Crawford County (127 percent); Edwards County (244.5 percent); Jackson County (208.2 percent); Jefferson County (143.2 percent); Jo Daviess County (678.6 percent); Lee County (131.7 percent); Macon County (139.7 percent); Massac County (128.2 percent); Mercer County (120.5 percent); Perry County (123.5 percent); Saline County (220.1 percent); Tazewell County (144.2 percent); and Washington County (232.7 percent). Please explain why the percentage of confirmation notices that these counties sent to all registered voters was so high.

4. In response to Questions A10a through Question A10i, Illinois reported that it had over 2.3 million results of confirmation notices that were "not categorized," which was 62.3 percent of all confirmation notices sent. The national average was 17.8 percent. Please explain why the number and percentage of results of confirmation notices that were "not categorized" was so high. Furthermore, of the results of confirmation notices included as "not categorized," please provide the number for each category (e.g., "valid with no

2

address update," "valid with address update," "invalid," "confirmation notices returned undeliverable," and "unreturned confirmation notices").

5. In response to Questions A12i through Question A12k, Illinois reported that it had 258,976 voters removed for a reason described as "other," comprising 25.8 percent of all confirmation notices sent. The national average was 3.7 percent. Please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons, please provide the number of voters removed for each reason that Illinois included in the "other" category.

6. A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A12i through Question A12k, eighteen counties reported more than a quarter of voters listed as being removed were removed for a reason described as "other": Clay County (30.8 percent); Cook County (67.5 percent); DeWitt County (41.7 percent); Edgar County (36.5 percent); Fulton County (71.2 percent); Greene County (50.4 percent); Grundy County (26 percent); Jefferson County (99.4 percent); Jersey County (42.2 percent); Kendall County (47.5 percent); Knox County (30.7 percent); Logan County (25.2 percent); McDonough County (39.1 percent); McHenry County (65 percent); McLean County (68.2 percent); Morgan County (51.5 percent); Washington County (51 percent); and Winnebago County (87.3 percent). Illinois' two most populous counties, Cook County and DuPage County, together accounted for 63.4 percent of the 258,976 voters Illinois reported were removed for a reason described as "other." For each of these eighteen counties, please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons in each county, please provide the number of voters removed for each reason that the county included in the "other" category.

Please provide a description of the steps that Illinois has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Illinois used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

3

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division


Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Laura K. Donahue
    Chair, State Board of Elections
    2329 S. MacArthur Boulevard
    Springfield, IL 62704-4503
    webmaster@elections.il.gov

4

# EXHIBIT 2



U.S. Department of Justice

Civil Rights Division

---
*Office of the Assistant Attorney General*　　　　　　　　Washington, D.C. 20530

August 14, 2025

Via Mail and Email

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Re:     **Complete Illinois's Voter Registration List with All Fields**

Executive Director Matthews:

　　We have received Illinois's statewide voter registration list ("VRL").  However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

　　We have requested Illinois' VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

　　The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list.  Any statewide prohibitions are clearly preempted by federal law.

(2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Illinois's complete and current VRL. The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Illinois must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:  Laura K. Donahue
     Chair, State Board of Elections
     2329 S. MacArthur Boulevard
     Springfield, IL 62704-4503
     webmaster@elections.il.gov

---

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

# EXHIBIT 3



# STATE BOARD OF ELECTIONS
## STATE OF ILLINOIS

**2329 S. MacArthur Blvd.**
Springfield, Illinois 62704
217-782-4141
TTY: 800-964-3013
Fax: 217-782-5959

**69 W. Washington St., Suite LL08**
Chicago, Illinois 60602
312-814-6440
Fax: 312-814-6485

**BOARD MEMBERS**
Laura K. Donahue, Chair
Rick S. Terven, Sr., Vice Chair
Jennifer M. Ballard Croft
Cristina D. Cray
Tonya L. Genovese
Catherine S. McCrory
Jack Vrett
Casandra B. Watson

**EXECUTIVE DIRECTOR**
Bernadette M. Matthews

September 2, 2025

Harmeet Dhillon, Assistant Attorney General
Michael Gates, Deputy Assistant Attorney General
Maureen Riordan, Acting Chief
U.S. Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue NW, 4CON
Washington, DC 20530

*Via U.S. Mail and email to* [maureen.riordan2@usdoj.gov](mailto:maureen.riordan2@usdoj.gov)

    Re: Letter dated August 14, 2025

Ms. Dhillon, Mr. Gates, Ms. Riordan:

    Thank you for your emails dated August 21 and 22, 2025, and for granting an extension to respond to your August 14, 2025 letter. On August 11, 2025, we transmitted an electronic copy of Illinois' voter registration list (VRL) pursuant to Section 8(i) of the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(i), excluding social security and driver's license numbers.[1] We understand that the Department of Justice's (Department) August 14, 2025 letter seeks an electronic copy of Illinois' unredacted voter list, including sensitive personal information of Illinois residents, such as social security numbers and driver's license numbers, pursuant to Section 8(i) of the NVRA, as well as Sections 301 and 303 of the Civil Rights Act of 1960 (CRA), 52 U.S.C. §§ 20701, 20703, and Section 401 of the Help America Vote Act (HAVA), 52 U.S.C. § 21111. This request implicates state and federal law

---

[1] Pursuant to state and federal law, the VRL wholly excludes information of registered voters who are victims of domestic violence, human trafficking, and other similarly protected groups, as well as telephone numbers and addresses for judges who have requested redaction of personal information. *See* Ex. D to August 11, 2025 Letter.

as well as Illinoisans' interests in exercising their right to vote without risking the privacy of their personal information.

As a state agency, the Illinois State Board of Elections (SBE) has a duty to abide by all state and federal laws governing the protection of sensitive personal information. Accordingly, SBE is prohibited from disclosing its voters' social security numbers unless "(i) required to do so under State or federal law"; "(ii) the need and purpose for the social security number is documented before collection of the social security number; *and* (iii) the social security number collected is relevant to the documented need and purpose." 5 ILCS 179/10(b)(1) (emphasis added). Separately, Illinois law also mandates that SBE notify voters if their social security number or driver's license number is subject to "unauthorized acquisition . . . that compromises the security, confidentiality, or integrity" of this information. 815 ILCS 530/5. Finally, Illinois law strictly controls access to Illinois' VRL: SBE may disclose a version of the VRL with limited redactions only to government entities for government purposes and to a state or local political committee (which we have done here). 10 ILCS 5/1A-25(b). The only version of the VRL that may be disclosed to the public must further redact personal information such as telephone numbers, street numbers of home addresses, and identifiable portions of email addresses. *Id.* 1A-25(c). This information can only be used "for the purposes defined within" the NVRA. *Id.* (citing 52 U.S.C. § 20507(i)).

SBE is also, of course, bound to follow federal law, including applicable provisions cited in your August 14, 2025 letter. However, we are unaware of any authority suggesting that these federal provisions conflict with Illinois law in a manner that would compel disclosures that are otherwise impermissible under state law.

*First*, the NVRA permits redaction of sensitive personal information such as social security numbers, dates of birth, and driver's license numbers from VRLs. *See Pub. Int. Legal Found., Inc. v. Bellows,* 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File.") (collecting cases); *PILF v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) ("Other courts have also held that in complying with the Public Disclosure Provision, States may limit the revelation of highly sensitive information.") (citing *Project Vote v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) ("There is no indication in the NVRA's legislative history that Congress intended to open up for inspection information within those records that is otherwise protected as personal information under other Federal or State laws."). Significantly, in *PILF v. Matthews*, the District Court for the Central District of Illinois ordered SBE, under the NVRA, to "implement policies and procedures which make available to the public the statewide voter registration list, allowing for redaction of" social security numbers, birthdates, "and other highly sensitive personal information." *Matthews*, 589 F. Supp. 3d at 944. To support its request for the unredacted VRL, the Department's letter relies on 52 U.S.C. § 20510(a), but that provision does not contain document production requirements. If the Department is aware of authority requiring pre-litigation production of records pursuant to this provision, we would appreciate the opportunity to review.

*Second*, the CRA's document production requirement does not require disclosure of sensitive personal information. Section 101 of the CRA forbids—among other things—denying the right to vote to any person because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting" if that error or omission is immaterial in determining a person's qualification to vote. 52 U.S.C. § 10101(a)(2)(B). Correspondingly, Sections 301 and 303 of the CRA permit the Department to demand to inspect—at SBE's office in Springfield, Illinois—"records and papers" retained "for a period of twenty-two months from the date of any" federal election "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. §§ 20701, 20703, to investigate "question[s] concerning infringement or denial of constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Specifically, the purpose of the CRA's document production provision is "to enable the Attorney General to determine whether" a suit to enforce Section 101 is appropriate. *Id.* SBE is unaware of any authority permitting the Department to use the CRA's document production provision to enforce federal laws *other than* the CRA. We would appreciate the opportunity to review such authority if the Department is able to provide it.

*Third*, Section 401 of HAVA does not appear to provide authority for the Department to demand production of state records. That provision allows the Attorney General to "bring a civil action against any State or jurisdiction in an appropriate United States District Court" to enforce election technology requirements, including the requirement that each state maintain an electronic voter list. 52 U.S.C. § 21111. SBE has already provided an electronic copy of Illinois' VRL, and the Department has not disputed that Illinois complies with HAVA's technology requirements. However, again, if the Department is in possession of authority stating that Section 401 gives the Department the power to require disclosure of Illinoisans' dates of birth and social security and driver's license numbers, we would be happy to review that authority.

Additionally, we have been unable to discern from the Department's correspondence adequate assurances that the sensitive personal information in our unredacted VRL will be treated in accordance with the federal Privacy Act of 1974. *See, e.g.*, 5 U.S.C. § 552a(b) (generally prohibiting agencies from disclosing information maintained in a system of records to other agencies); *id.* § 552a(e)(2)-(3) (among other things, directing that personal information be gathered directly from individuals wherever possible, and that the collection method inform each person how the information will be used and the consequences of not providing the information); *id.* § 552a(e)(4) (requiring publication in the Federal Register and notice and comment for the uses and data contained in systems of records that agencies maintain); *id.* § 552a(e)(7) (prohibiting maintenance of records describing how any person exercises First Amendment rights).

We understand that the Department's August 14, 2025 letter requests Illinois' VRL for the purpose of assessing Illinois' compliance with the NVRA's list maintenance provisions. Our forthcoming letter—which we are diligently working to provide, as promised, by September 10, 2025—will include information demonstrating that Illinois complies with the NVRA's list maintenance requirements: the State "conduct[s] a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). We are confident

this forthcoming letter will satisfy the Department that Illinois' list maintenance program meets (and exceeds) NVRA requirements.

While SBE respects and shares the Department's commitment to assessing Illinois' compliance with the NVRA, we remain concerned about the scope of and authority for the Department's request, given that the NVRA permits redaction of sensitive personal information. We take Illinoisans' privacy very seriously; data breaches and hacking are unfortunately common, and the disclosure of sensitive information contrary to state law would expose our residents to undue risk. Nonetheless, and as always, we remain committed to partnership with the federal government wherever possible. If there is any additional information the Department can provide regarding authority for its request, please provide that so we may review. In addition, we continue to work in conjunction with Illinois' election authorities to compile the additional information that the Department's original July 28, 2025 letter sought for the purpose of assessing Illinois' NVRA compliance. Thank you.

Sincerely,

Marni M. Malowitz
General Counsel
Illinois State Board of Elections
(312) 814-6462
mmalowitz@elections.il.gov

cc: Bernadette M. Matthews, Executive Director, State Board of Elections