# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,

  *Plaintiff*,

  v.

BERNADETTE MATTHEWS, *in her official capacity as Executive Director of the State Board of Elections for the State of Illinois,*

  *Defendant*.

Case No. 3:25-cv-3398-CRL-DJQ

**MEMORANDUM IN SUPPORT OF ILLINOIS AFL-CIO, ILLINOIS ALLIANCE FOR RETIRED AMERICANS, AND ILLINOIS FEDERATION OF TEACHERS' MOTION TO INTERVENE AS DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

I.  Federal law has long made voter list maintenance a state responsibility, consistent
    with the constitutional separation of powers. .................................................... 2

II. The Department of Justice has embarked on an unprecedented nationwide
    campaign to collect personal voter registration data held by the states. ............................ 3

III. The Department of Justice sues Illinois to obtain its unredacted voter list. ...................... 4

IV. Proposed Intervenors' interests are placed in jeopardy by DOJ's demand. ...................... 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

I.  Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) ................ 8

    A.  The motion is timely. ......................................................................................... 8

    B.  Proposed Intervenors have interests in protecting the rights of their
        members and constituents and safeguarding their organizational missions. .......... 8

    C.  As other courts have recognized in parallel cases, the existing parties do
        not adequately represent Proposed Intervenors. .................................................. 12

II. Alternatively, Proposed Intervenors should be granted permissive intervention. ........... 14

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ariz. All. for Retired Ams. v. Hobbs*,
   No. CV-22-01374-PHX-GMS, 2022 WL 4448320 (D. Ariz. Sep. 23, 2022) ...................15

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013)..........................................................................................................2

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022)............................................................................................... 1, 14

*Bost v. State Board of Elec.*,
   75 F.4th 682 (7th Cir. 2023) ................................................................................ 9, 12, 13

*City of Chicago v. Fed. Emergency Mgmt. Agency*,
   660 F.3d 980 (7th Cir. 2011) ....................................................................................... 13

*Doe v. Oberweis Dairy*,
   456 F.3d 704 (7th Cir. 2006) ....................................................................................... 10

*DOJ v. Reps. Comm. For Freedom of the Press*,
   489 U.S. 749 (1989)..................................................................................................... 10

*Driftless Area Land Conservancy v. Huebsch*,
   969 F.3d 742 (7th Cir. 2020) ................................................................................... 7, 12

*Elouarrak v. Firstsource Advantage, LLC*,
   No. 1:19-cv-3666, 2020 WL 291364 (N.D. Ill. Jan. 21, 2020)......................................... 8

*Foster v. Love*,
   522 U.S. 67 (1997)..........................................................................................................2

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018)................................................................................................... 2, 3

*In re Exch. Union Co.*,
   No. 24-MC-91645-ADB, 2025 WL 894652 (D. Mass. Mar. 24, 2025) .......................... 15

*In re Sealed Case*,
   237 F.3d 657 (D.C. Cir. 2001) ..................................................................................... 11

*Issa v. Newsom*,
   No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ........... 12

*Judicial Watch, Inc. v. Ill. State Bd. of Elec.*,
　　No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ............................ 10, 12, 14

*Keith v. Daley*,
　　764 F.2d 1265 (7th Cir. 1985) ........................................................................ 9

*Kennedy v. Lynd*,
　　306 F.2d 222 (5th Cir. 1962) ......................................................................... 5

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
　　659 F.3d 421 (5th Cir. 2011) ........................................................................ 11

*Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*,
　　924 F.3d 375 (7th Cir. 2019) ..................................................................... 8, 9

*Michigan v. U.S. Army Corps of Eng'rs*,
　　No. 10-cv-4457, 2010 WL 3324698 (N.D. Ill. Aug. 20, 2010) ........................... 8

*United States v. Bellows*,
　　No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025) ........................................... 1

*United States v. Oliver*,
　　1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025) ......................................... 1, 9

*United States v. Weber*
　　No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025) ............................................... 1

*OsteoMed LLC v. Stryker Corp.*,
　　No. 20-cv-6821, 2021 WL 1962393 (N.D. Ill. May 17, 2021)............................ 14

*Paher v. Cegavske*,
　　No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ............. 12

*Powell v. Benson*,
　　No. 20-CV-11023, 2020 WL 5229104 (E.D. Mich. Sept. 2, 2020)............................ 11

*Pub. Int. Legal Found., Inc. v. Bellows*,
　　92 F.4th 36, 56 (1st Cir. 2024)........................................................................ 5

*Pub. Int. Legal Found., Inc. v. Winfrey*,
　　463 F. Supp. 3d 795 (E.D. Mich. 2020)........................................................... 15

*RNC v. Aguilar*,
　　2024 WL 3409860 (D. Nev. July 12, 2024) ..................................................... 15

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*,
  69 F.3d 1377 (7th Cir. 1995) ........................................ 8

*Swenson v. Bostelmann*,
  No. 20-CV-459-WMC, 2020 WL 8872099 (W.D. Wis. June 23, 2020) ........................ 15

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ................................................ 13

*United States v. Benson*,
  No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406 (W.D. Mich. 2025) ............ 1, 9, 11, 13

*United States v. Oregon*,
  No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025)................................ 1, 9, 13

*Voter Reference Found., LLC v. Torrez*,
  --- F.4th ----, No. 24-2133, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) ...................... 5

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. I, § 4, cl. 1 ................................................ 2

5 ILCS 179/10 .................................................... 4, 10

10 ILCS 5/1 ........................................................ 4

52 U.S.C. § 20507 ................................................... 2

52 U.S.C. § 20507(a) ................................................ 2

52 U.S.C. § 21083(a) ................................................ 2

815 ILCS 530/5 .................................................... 4

Fed. R. Civ. P. 24(a) ................................................ 1

Fed. R. Civ. P. 24(b) ............................................. 8, 14

**Other Authorities**

H.R. Rep. No. 86-956 (1959)........................................ 5

H.R. Rep. No. 107-329 (2001)....................................... 2

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented campaign to compile sensitive personal information on voters in a centralized federal database. In its most recent salvo, DOJ filed this lawsuit, seeking a judicial order compelling the production of sensitive and private information about every voter in Illinois, despite the fact that such information is protected from disclosure by law. Indeed, this case *exclusively* concerns that sensitive data. DOJ purports to seek the state's voter registration list. But Illinois has already produced it months ago—excluding individual voters' social security and driver's license numbers. Still, DOJ has insisted that this is not enough and filed this lawsuit to demand voters' private information, too.

Proposed Intervenors—the Illinois AFL-CIO, Illinois Alliance for Retired Americans, and Illinois Federation of Teachers—readily satisfy the standard for intervention as of right, *see* Fed. R. Civ. P. 24(a), and multiple federal courts have allowed similarly situated organizations—including other state chapters of the Alliance for Retired Americans—to intervene in parallel DOJ actions seeking unredacted voter lists from other states.[1] Proposed Intervenors have interests in ensuring the continued privacy of their members' personal information and in safeguarding their own voter-engagement programs. Those interests will not be adequately represented by the state defendant, who must consider the "broader public-policy implications" of the issues presented in this suit, while Proposed Intervenors prioritize their members' privacy and defending their missions "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)).

---

[1] *See United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025) (granting intervention as of right to state chapter of Alliance); *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571, at *1–2 (D. Or. Dec. 5, 2025) (granting intervention as of right to group serving marginalized communities); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting permissive intervention); *see also* Minute Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 51 (granting unopposed intervention to civic group); Minute Order, *United States v. Oliver*, 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9 (same for state Alliance chapter).

Alternatively, Proposed Intervenors should be granted permissive intervention. This will ensure that Illinois voters have a dedicated voice in this litigation, which ultimately concerns the disclosure of *their* sensitive, private, and personal information.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution assigns states primary responsibility for administering federal elections, subject to preemption by Congress. *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, the Constitution assigns states the responsibility of determining voter eligibility and maintaining lists of eligible voters, unless Congress specifically overrides it. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

Congress's principal voter-registration statutes—the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA")—underscore that voter registration shall be managed by the states. The NVRA charges *states* with administering registration and list maintenance, subject to specific safeguards, 52 U.S.C. § 20507, and charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a). Likewise, it makes *states* the custodians of voter lists. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). HAVA requires a statewide computerized list, which is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). And HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty—including because it "ma[kes] it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001).

Thus, under constitutional and congressional design, it is left up "to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which themselves purposefully operate through the states—not DOJ and the federal government.

## II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand unprecedented access to state voter files, including personal information about each registered voter. Journalists have reported that DOJ plans to share the voter lists across the federal government and use it for immigration enforcement, to push for voter purges, and to cast doubt on the legitimacy of U.S. elections.[2] More recently, Assistant Attorney General Harmeet Dhillon has made public comments indicating that the effort is intended to result in a massive voter purge, with "hundreds of thousands of people in some states being removed from the voter rolls."[3] And DOJ has reportedly been pressuring states to sign MOUs agreeing to remove voters from the rolls at nothing more than DOJ's direction.[4] To date, DOJ has demanded data from over 40 states.[5] The vast majority have refused to turn over sensitive personal information, which is typically protected by state law.[6]

As part of this campaign, DOJ sent a letter on July 28, 2025, to the Illinois State Board of Elections, demanding its "statewide voter registration list," including "all fields contained within

---

[2] *See, e.g.*, Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

[3] @AAGHarmeetDhillon, X.com (Dec. 18, 2025), https://x.com/AAGDhillon/status/2001659823335616795.

[4] Jonathan Shorman, *Trump's DOJ offers states confidential deal to remove voters flagged by feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.

[5] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19, 2025), https://perma.cc/MLR7-L9RT.

[6] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 5 (seven states have given DOJ everything it sought: Arkansas, Indiana, Kansas, Louisiana, Mississippi, Tennessee, and Wyoming).

that list." Mot. to Compel, Ex. 1 at 1, ECF No. 5-2; Compl. ¶¶ 19, 20. On August 11, the Board

sent DOJ an electronic copy of Illinois' voter registration list, excluding social security numbers;

driver's license numbers; information about victims of domestic violence and human trafficking;

and the addresses and phone numbers of judges who had requested redaction. Mot. to Compel, Ex.

3 at 1. DOJ responded on August 14, stating that the voter registration file the Board provided was

inadequate because it did not include "*all fields*," including each registrant's "state driver's license

number or the last four digits of the registrant's social security number." Mot. to Compel, Ex. 2 at

1. DOJ demanded that the Board provide this information within seven days. *Id.* at 2.

After negotiating additional time to respond, Marni M. Malowitz, the Board's General

Counsel, sent a letter to DOJ on September 2. *See* Mot. to Compel, Ex. 3. Ms. Malowitz explained

that complying with DOJ's request would require the Board to violate state law, including laws

that protect individuals' social security and driver's license numbers and that restrict disclosure of

Illinois' voter registration list. *Id.* at 2 (citing 5 ILCS 179/10(b)(1); 815 ILCS 530/5; 10 ILCS

5/1A-25(b)–(c)). Moreover, federal law—including the NVRA, HAVA, and the CRA—does not

support DOJ's demands for sensitive personal data. *Id.* at 2–3.

## III.    The Department of Justice sues Illinois to obtain its unredacted voter list.

DOJ filed this suit on December 18, seeking to compel Illinois State Board of Elections

Executive Director Bernadette Matthews to provide Illinois' unredacted registration list. Compl.

at 9. Although DOJ frames its suit as an effort to ensure that Illinois is complying with its

obligations under the NVRA and HAVA, Compl. ¶¶ 15–17, it does not bring any claims under

those statutes. Instead, it proceeds solely under Section 303 of the Civil Rights Act ("CRA"), a

Civil Rights-era law that permits DOJ to review certain records for the purpose of enabling

investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).[7]

Congress enacted Section 303 to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). DOJ does not even pretend that its goal is investigating discrimination. Instead, it claims that it must proceed under Section 303 to secure the data it needs to monitor Illinois' compliance *with the NVRA and HAVA*—statutes that do not include any sweeping authorizations for data. *See* Compl. ¶¶ 7–15. The law cannot support this tortured application of Section 303. Even if Section 303 applied, it does not prohibit states from redacting confidential and sensitive voter information—the only thing at issue in this case. *Cf. Voter Reference Found., LLC v. Torrez*, --- F.4th ----, No. 24-2133, 2025 WL 3280300, at *9 n.14 (10th Cir. Nov. 25, 2025) (explaining the NVRA allows redaction of sensitive data); *Pub. Int. Legal Found., Inc. ("PILF") v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (same).

---

[7] Notably, in the first several iterations of this same lawsuit, DOJ *did* bring claims under the NVRA and HAVA. It filed the first eight of these cases in September against Maine, Oregon, California, New York, Michigan, Minnesota, New Hampshire, and Pennsylvania, each time alleging claims under the NVRA and HAVA, as well as the CRA. *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025), Dkt. No. 1; Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025), Dkt. No. 1; Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Bd. of Elec. of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025), Dkt. No. 1. The 14 subsequent cases filed in December, including this one, allege only a claim under the CRA. *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025), Dkt. No. 1; Compl., *United States v. Toulouse Oliver*, No. 25-cv-1193 (D.N.M. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Copeland Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Griswold*, No. 25-cv-03967 (D. Colo. Dec. 11, 2025), Dkt. No. 1; Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 11, 2025), Dkt. No. 1; Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025), Dkt. No. 1; Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. D.C. Bd. of Elec.*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025), Dkt. No. 1; Compl., *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025), Dkt. No. 1; Compl., *United States v. Wisconsin Elec. Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025).

## IV.    Proposed Intervenors' interests are placed in jeopardy by DOJ's demand.

Proposed Intervenors are the Illinois AFL-CIO (IL AFL-CIO), the Illinois Alliance for Retired Americans (the Alliance), and the Illinois Federation of Teachers (IFT). They seek to intervene to protect the voting and privacy rights of their members and constituents, and safeguard their own organizational interests in voter engagement, which are threatened by DOJ's actions.

*Illinois AFL-CIO.* The IL AFL-CIO is a nonpartisan membership organization composed of over 1,500 affiliated unions representing nearly 900,000 workers living in nearly every community in Illinois. Ex. A (Drea Decl.) ¶ 5–6. IL AFL-CIO's mission is to achieve economic security and a fair economy that works for all, and it encourages its members to vote in every election to advance the interests of working families. *Id.* ¶¶ 9–14. IL AFL-CIO members include service workers, flight attendants, construction workers, parcel delivery personnel, and freight drivers, many of whom travel frequently and for long periods of time, and some of whom are in low-wage jobs that place them at risk of housing instability, which makes them especially vulnerable to voter purges. *Id.* ¶¶ 18–19.

*Illinois Alliance for Retired Americans.* The Alliance is a 501(c)(4) nonprofit, social welfare organization and the Illinois statewide affiliate of the national Alliance for Retired Americans. Ex. B (Able Decl.) ¶ 4. It represents over 240,000 members across the state, consisting primarily of retirees from public- and private-sector unions, who are politically active and engaged. *Id.* ¶ 5. The Alliance is dedicated to ensuring social and economic justice, as well as full civil rights, for all retirees in Illinois. *Id.* ¶ 6. Encouraging political participation is thus central to its mission. *Id.* ¶¶ 6–10. Many of the Alliance's members are particularly concerned about the risks of social security fraud, identify theft, and other types of fraud frequently targeted at older Americans. *Id.* ¶¶ 13–16. The Alliance also has concerns that DOJ will handle its members' personal data irresponsibly. *Id.* ¶ 19. Consequently, disclosure of Illinois' voter registration list

will discourage the Alliance's members from registering to vote. *Id.* ¶ 17. This chilling effect will harm the Alliance's civic engagement work and, as such, impair its mission.

*Illinois Federation of Teachers.* The IFT, an affiliate of the IL AFL-CIO, is a nonpartisan membership organization comprised of 103,000 PreK-12 teachers, paraprofessionals and school-related personnel, higher education professionals, public employees, and retired teachers across Illinois. Ex. C (Gates Decl.) ¶ 5. IFT's mission is to improve the status of teachers, educational workers, and others to provide for better educational opportunities for all citizens, with an emphasis on supporting and promoting the ideals of a robust and socially just democracy. *Id.* ¶ 6 Because IFT has dedicated substantial resources toward voter registration, nearly all its members are registered to vote and vote at higher percentages than the general public. *Id.* ¶¶ 7–10. This achievement has allowed it to shift its focus toward other mission-critical goals, like getting out the vote, educating its members and constituents on where candidates stand on labor-related issues, and organizing around those issues. *Id.* ¶ 10. DOJ's actions here threaten to chill its members and constituents from registering to vote, expose them to unlawful purges, and put their private information at risk. To serve its core objective of ensuring that members are able to exercise their right to vote, IFT will need to redirect its resources toward mitigating these harms. *Id.* ¶¶ 23–29.

## LEGAL STANDARD

Rule 24(a)(2) "is straightforward: the court *must* permit intervention if (1) the motion is timely; (2) the moving party has an interest relating to [the subject matter] at issue in the litigation; and (3) that interest may, as a practical matter, be impaired or impeded by disposition of the case." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020). "A proposed intervenor who satisfies these three elements is *entitled* to intervene *unless* existing parties adequately represent his interests." *Id*. (emphasis in original). Courts "construe Rule 24(a)(2)

7

liberally and should resolve doubts in favor of allowing intervention." *Michigan v. U.S. Army Corps of Eng'rs*, No. 10-cv-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010). "In accordance with this liberal construction, courts must accept as true the non-conclusory allegations of the motion a proposed intervenor makes." *Elouarrak v. Firstsource Advantage, LLC*, No. 1:19-cv-3666, 2020 WL 291364, at *1 (N.D. Ill. Jan. 21, 2020) (quotation marks omitted).

Courts also can grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). Permissive intervention should not be denied solely because of the absence of an element of intervention as of right. *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995).

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

#### A. The motion is timely.

Proposed Intervenors' motion is timely. To determine timeliness, courts consider "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 388 (7th Cir. 2019) (quotation marks omitted). Proposed Intervenors—who filed this motion mere days after the DOJ sued—easily clear this bar. This case is at its inception. No case schedule has been set, and no substantive events have occurred in the case, so there is no risk of prejudice to the existing parties. The first element of intervention of right is satisfied here.

#### B. Proposed Intervenors have interests in protecting the rights of their members and constituents and safeguarding their organizational missions.

Intervention as of right requires "direct, significant and legally protectable interest[s] in the

[subject] at issue in th[e] lawsuit." *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). Those interests must also be "unique" to the Proposed Intervenors, in the sense that they are "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit." *Bost v. State Board of Elec.*, 75 F.4th 682, 687 (7th Cir. 2023) (quoting *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019)). However, the right need not belong "*only* to the proposed intervenor"; it can be a right the proposed intervenor shares with an existing party. *Id.* The Seventh Circuit has "interpreted statements of the Supreme Court as encouraging liberality in the definition of an interest." *Lopez-Aguilar*, 924 F.3d at 392 (quotation marks removed).

This court need not break new ground to find that Proposed Intervenors have satisfied this standard. In DOJ's parallel suits in other states, federal courts have recognized that voters have a "significant protectable interest" in the privacy of their personal information and have thus granted intervention as of right to organizations seeking to defend those voters—including other state chapters of the Alliance for Retired Americans. *See United States v. Benson*, No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) (granting intervention as of right to Michigan Alliance for Retired Americans); Minute Order, *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 15, 2025), ECF No. 9) (granting intervention as of right to New Mexico Alliance for Retired Americans); *see also United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (granting intervention as of right to Oregon social welfare organization). Moreover, a federal court in the Northern District of Illinois allowed the Illinois AFL-CIO and Illinois Federation of Teachers to intervene as of right in another case involving Illinois' voter list maintenance practices, finding that both had interests in preventing their members from unlawful removal from the rolls and in avoiding reallocation of organizational resources to protecting their members' voting rights—particularly because many of their members move frequently or spend

long periods away from home, and were thus especially vulnerable to voter purges. *See Judicial Watch, Inc. v. Ill. State Bd. of Elec.*, No. 24-cv-1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024).

Proposed Intervenors have two primary interests at stake, both of which satisfy this standard. First, Proposed Intervenors' members and constituents—which include collectively well over one million Illinois voters—have protectable interests in maintaining the privacy and security of their highly sensitive personal identifying information. *See supra* Background § IV. The relief DOJ seeks would grant it access to private voter information that Illinois law protects from disclosure. *See, e.g.*, 5 ILCS 179/10(b)(1) (prohibiting any "State or local government agency" from disclosing an individual's private social security number unless, among other things, it is "necessary" for performance of the agency's duties and "the need and purpose for the social security number is documented *before* collection of the social security number" (emphasis added)).

Proposed Intervenors are credibly concerned about the disclosure of their members' and constituents' sensitive information to DOJ, because of the risk that they will be subject to voter purges, the risk of data breaches that would expose them to identity theft scams, and the potential for retaliation by the federal government against voters who engage in political advocacy work disfavored by the current administration. Ex. A (Drea Decl.) ¶¶ 18–19, 26–27; Ex. B (Able Decl.) ¶¶ 13–21; Ex. C (Gates Decl.) ¶¶ 12–22. The risk of disclosure alone, and of accompanying adverse consequences, is enough to satisfy Rule 24(a). *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (recognizing privacy interest as sufficient interest for entitlement to intervention); *see also DOJ v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). As one court explained in granting a state chapter of

the Alliance intervention as of right to protect its members' data from DOJ's dragnet, the Alliance and its members "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm." *Benson*, 2025 WL 3520406, at *3. This is because once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure).

The context compounds the significance of the privacy issues at stake. Here, compromising the privacy of Proposed Intervenors' members and constituents also compromises their right to vote. Indeed, it may chill Proposed Intervenors' members and constituents from registering at all. Proposed Intervenors have a substantial interest in preserving their members' "right to vote privately," *Powell v. Benson*, No. 20-CV-11023, 2020 WL 5229104, at *5 (E.D. Mich. Sept. 2, 2020), and in ensuring that right is not unlawfully burdened, *see, e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting-right interest was "sufficient interest").

Second, DOJ's demands threaten Proposed Intervenors' organizational missions. All three have missions to increase the civic participation of their members. Ex. A (Drea Decl.) ¶¶ 9–14; Ex. B (Able Decl.) ¶¶ 6–10; Ex. C (Gates Decl.) ¶¶ 6–10. But if DOJ succeeds, Proposed Intervenors' members will be deterred from registering and voting, since doing so risks exposing their sensitive personal information to the federal government. *See supra* Background § IV. And members are concerned not only about potential data breaches, but also that giving the federal government access to their data will expose them to political retaliation against disfavored political advocacy. Ex. A (Drea Decl.) ¶¶ 18–19, 26– 27; Ex. B (Able Decl.) ¶¶ 13–21; Ex. C (Gates Decl.) ¶¶ 12–22. Courts have long recognized that organizations have a significant protectable interest in

preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their members' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

### C.    As other courts have recognized in parallel cases, the existing parties do not adequately represent Proposed Intervenors.

The final requirement for intervention as of right is that Proposed Intervenors demonstrate that the existing parties do not adequately represent their interests. *See Driftless Area Land Conservancy*, 969 F.3d at 747. The Seventh Circuit has established a three-tiered approach for assessing adequacy, wherein what standard applies depends on the relationship between the party and the intervenor. *Bost*, 75 F.4th at 688. The default rule—which applies when there is "no notable relationship between the existing party and the applicant for intervention"—is "lenient"; the Proposed Intervenor need only show that "that representation of his interest [by the existing party] '*may be*' inadequate." *Id.* (quoting *Planned Parenthood*, 942 F.3d at 799 (emphasis added)).[8]

The lenient default rule applies here. The state government's obligations are "to the general public," whereas Proposed Intervenors represent their members. *Id.* at 689. Nor does the State Defendant share Proposed Intervenors' interests in those organizations' missions or members. *Id.* So while the State Defendant and Proposed Intervenors may "each want the law upheld, the stakes for each of them are different." *Id.*

Proposed Intervenors satisfy the default standard. The Proposed Intervenors' interests are distinct from those of the existing parties. The State Defendant's interest is in supervising voter

---

[8] A more demanding test applies when the proposed intervenor and an existing party share "the same goal." *Bost*, 75 F.4th at 688. To invoke this test, the proposed intervenor and existing party's interests must be "genuinely identical"; "it is not enough that they seek the same outcome in the case." *Id.*

registration and election administration in compliance with state law.[9] Meanwhile, Proposed Intervenors' interests are to protect their members' privacy and voting rights, as well as their own organizational missions, animated by concerns that DOJ's demands will chill and otherwise burden members' exercise of the franchise. *See supra* Section I.B. These interests extend beyond those of the State Defendant, which has no legal obligation to (for example) safeguard Proposed Intervenors' organizational missions. And of course, the other existing party—the DOJ—does not protect Proposed Intervenors' interests; its actions are what has put them at risk.

In addition, the default rule is satisfied if a proposed intervenor can show some conflict, "potential or otherwise," with the existing parties' litigation strategy. *Bost*, 75 F.4th at 690; *see also Trbovich*, 404 U.S. at 538–39 (noting risk of inadequate representation of a would-be intervenor where the interests of the existing party "may not always dictate precisely the same approach to the conduct of the litigation"). That risk is significant here. As the court granting the Michigan Alliance's request for intervention as of right in a similar case DOJ brought against Michigan noted, "Michigan has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue." *Benson*, 2025 WL 3520406, at *6; *see also Oregon*, 2025 WL 3496571, at *2 (noting the Oregon "Defendants have obligations under the NVRA and HAVA that Proposed Intervenors do not share and have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make").

Courts routinely find inadequate representation where it is possible an existing defendant will resolve a case on terms that proposed intervenors would not accept, *see City of Chicago v.*

---

[9]    *See* Illinois State Board of Elections, *What Is the State Board of Elections?*, https://www.elections.il.gov/Main/FAQ.aspx#Board (last accessed Dec. 21, 2025).

*Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011), *Judicial Watch, Inc.*, 2024 WL 3454706, at *5, and that risk is present here. The State Defendant's commitment is to the general public interest and ensuring lawful and successful election administration, not to ensuring sensitive voter information does not land in a weaponized DOJ, no matter the cost. These dynamics could reasonably lead the State Defendant to seek a settlement with the DOJ. But the Proposed Intervenors have no competing public duties. Their sole priority is protecting their own missions and their members' private information. Intervention here is necessary to ensure that Proposed Intervenors can protect their distinct interests. *See Berger*, 597 U.S. at 195–96 (noting that public officials must "bear in mind broader public-policy implications," whereas private litigants seek to vindicate their own rights, "full stop") (citing *Trbovich*, 404 U.S. at 538–39).

## II.     Alternatively, Proposed Intervenors should be granted permissive intervention.

Alternatively, the Court should grant permissive intervention. *See, e.g.*, *OsteoMed LLC v. Stryker Corp.*, No. 20-cv-6821, 2021 WL 1962393, at *4 (N.D. Ill. May 17, 2021) (granting permissive intervention after denying intervention as of right). The requirements for permissive intervention are readily satisfied. Proposed Intervenors assert a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also* Ex. D (Proposed Answer). And granting intervention would not "unduly delay or prejudice the adjudication" of the matter, Fed. R. Civ. P. 24(b); Proposed Intervenors agree to abide by any schedule entered by the Court or agreed to by the existing parties prior to their intervention.

Courts regularly grant permissive intervention to ensure actual voters or organizations representing them have a say in litigation concerning their rights—and for that reason, have allowed civic organizations, including chapters of the Alliance for Retired Americans, to intervene

in DOJ's parallel lawsuits seeking voter data from other states.[10] Like in those cases, Proposed Intervenors and their members have "confidentiality and/or privacy interest[s]" at stake in this case, which alone "warrant[] an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). And Proposed Intervenors represent a collection of Illinois voters. Finally, chapters of the Alliance of Retired Americans are participating in several parallel cases across the country. Thus, their presence will add a unique—and critically important—voter perspective that will "serve the interests of judicial administration," including as to how this case fits into the larger context. *Swenson v. Bostelmann*, No. 20-CV-459-WMC, 2020 WL 8872099, at *2 (W.D. Wis. June 23, 2020). These considerations, in addition to the clear satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention, as courts have found in permitting groups to intervene in parallel cases seeking state voter data. *See* Mins. of Mot. Hr'g, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70 (granting permissive intervention by oral order to state affiliates of the NAACP and League of Women Voters in DOJ's parallel lawsuit in California).

## CONCLUSION

For all of these reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative grant permissive intervention—to allow them to defend the interests they have at stake in this case.

---

[10] *See, e.g.*, *RNC v. Aguilar*, No. 2:24-CV-00518-CDS-MDC, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 WL 4448320, at *2 (D. Ariz. Sep. 23, 2022); *PILF v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020); *see also supra* at 9–10.

Dated: December 22, 2025

/s/ Sarah Grady
Sarah Grady
*Counsel for Proposed-Intervenors*

Sarah Grady
John Hazinski
Adam Smith
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
sarah@kaplangrady.com
Tel: (312) 852-2184

Elisabeth Frost*
Katie Chamblee-Ryan*
Tina Meng Morrison*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
kchambleeryan@elias.law
tmengmorrison@elias.law
Tel: (202) 968-4652

*Counsel for Proposed-Intervenors*

*Pro Hac Vice applications forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Grady, an attorney, certify that on December 22, 2025, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record. I further certify that within one (1) business day of filing, I will serve a copy of the foregoing via certified U.S. mail to:

Bernadette Matthews, in her Official Capacity as
Executive Director of the State Board of Elections
for the State of Illinois
69 W. Washington St., Ste. LL08
Chicago, IL 60602

*/s/* Sarah Grady
Sarah Grady
Counsel for Proposed Intervenors