**E-FILED**
Friday, 20 February, 2026  04:37:20 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

THE UNITED STATES OF AMERICA,

*Plaintiff*,

v.

BERNADETTE MATTHEWS, in her official capacity as Executive Director of the State Board of Elections for the State of Illinois,

*Defendant.*

No. 3:25-cv-3398

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## HER MOTION TO DISMISS PURSUANT TO RULES 12(B)(5) AND 12(B)(6)

February 20, 2026

KWAME RAOUL,
Attorney General of Illinois

By:   Vikas Didwania
      Holly Berlin
      R. Henry Weaver
      Office of the Illinois Attorney General
      115 S. LaSalle St.
      Chicago, IL 60603
      *vikas.didwania@ilag.gov*
      *holly.berlin@ilag.gov*
      *robert.weaver@ilag.gov*
      (312) 814-3000

# TABLE OF CONTENTS

Introduction ............................................................................................................... 1

Background ................................................................................................................ 2

    A.    Statutory Background ...................................................................... 2

    B.    DOJ's Demand for an Unredacted Voter File............................... 4

    C.    Procedural History and Related Litigation ................................... 5

Applicable Legal Standards ...................................................................................... 6

Argument ................................................................................................................... 7

I.    Matthews has not been served, so this matter should be dismissed.................... 7

II.    DOJ's demand to produce an unredacted voter file under the Civil Rights Act fails as a matter of law. ............................................................................... 9

    A.    This Court must scrutinize, not rubber-stamp, DOJ's demand for records. ......... 10

    B.    The text of the Civil Rights Act of 1960 does not authorize a demand for an unredacted voter file. ........................................... 11

    C.    DOJ lacks any legitimate "basis" or "purpose" under the Civil Rights Act of 1960 for demanding these data.......................... 14

    D.    A static snapshot of all Illinois voters' personal identifying information is irrelevant to enforcement of the NVRA and HAVA. ........................................... 18

Conclusion .............................................................................................................. 20

Certificate of Compliance ...................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ............................. 3

*Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976) ................................................ 8

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................ 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................... 6

*Bufkin v. Collins*, 604 U.S. 369 (2025) ........................................................................ 15

*Caisse v. DuBois*, 346 F.3d 213 (1st Cir. 2003) ............................................................. 7

*Califano v. Yamasaki*, 442 U.S. 68 (1979) ................................................................... 11

*Cardenas v. City of Chicago*, 646 F.3d 1001 (7th Cir. 2011) ...................................... 6, 9

*Consumer Fin. Prot. Bureau v. Accrediting Council*, 854 F.3d 683 (D.C. Cir. 2017) .......... 12, 14

*Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24 (1st Cir. 1988) ....................... 8

*Edmond v. United States*, 520 U.S. 651 (1997) ........................................................... 18

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) .......................................... 4

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) .................................... 12

*Homer v. Jones-Bey*, 415 F.3d 748 (7th Cir. 2005) ....................................................... 6

*Homola v. S. Ill. Univ. at Carbondale Sch. of Law*, 48 F.3d 1221 (7th Cir. 1995) (mem.) ............ 9

*Honeycutt v. United States*, 581 U.S. 443 (2017) ........................................................ 12

*Hu v. Schurman*, No. 08-cv-2226, 2009 WL 2382234 (C.D. Ill. July 29, 2009) ............................ 8

*Huddleston v. United States*, 415 U.S. 814 (1974) ...................................................... 13

*Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775 (S.D. Ind. 2006) ................................ 16

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ............................................................... 18

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ..................................................... 3, 17

*Kennedy v. Lewis*, 325 F.2d 210 (5th Cir. 1963) ......................................................... 17

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................................... *passim*

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999) ....................... 6–7

*La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355 (1986) ................................................ 14

*Levy v. Pappas*, 2006 WL 1994554 (N.D. Ill. July 13, 2006), *aff'd*,
    510 F.3d 755 (7th Cir. 2007) ................................................................................ 8

*Mich. Motor Techs., LLC v. Bayerische Motoren Werke AG*,
    683 F. Supp. 3d 811 (N.D. Ill. 2023) .................................................................... 6

*Miller v. Town of Cicero*, 590 N.E.2d 490 (Ill. App. 1992) ......................................... 9

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ............................................ 7

*Neita v. City of Chicago*, 830 F.3d 494 (7th Cir. 2016)................................................................ 6

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024).......................................... 12

*Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932 (C.D. Ill. 2022) ....................... 12

*Rucho v. Common Cause*, 588 U.S. 684 (2019) ............................................................................ 2

*Shepherd v. Ill. Dep't of Child. & Fam. Servs.*, No. 96-cv-7568,
 1998 WL 258473 (N.D. Ill. May 18, 1998) ............................................................................. 9

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966)................................................................... 2

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .............................. 17

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001)................................................................................. 14

*United States v. Benson*, --- F. Supp. 3d ---, 2026 WL 362789
 (W.D. Mich. Feb. 10, 2026) ..................................................................................... 6, 11, 13, 14

*United States v. Clarke*, 573 U.S. 248 (2014)............................................................................ 11

*United States v. Ligas*, 549 F.3d 497 (7th Cir. 2008) ............................................................. 7, 8

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962). .............................................................. 15

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)...................................................... 10–11, 18

*United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402
 (D. Or. Feb. 5, 2026)............................................................................................ 6, 11, 15, 16

*United States v. Powell*, 379 U.S. 48 (1964). ..................................................................... 10–11, 19

*United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807
 (C.D. Cal. Jan. 15, 2026) ............................................................................................ 6, 11, 16

*Walsh v. Alight Sols. LLC*, 44 F.4th 716 (7th Cir. 2022)............................................................ 14

**Statutes & Constitutional Provisions**

Ill. Const. art. III, § 5 ................................................................................................................... 1

Help America Vote Act of 2002, Pub. L. 107-252, 116 Stat. 1666............................................... 4

Enforcement Act of 1870, ch. 114, 16 Stat. 140 ................................................................... 2, 16

National Voter Registration Act of 1993, Pub. L. 103-31, 107 Stat. 77....................................... 3

Pub. L. 85-315, § 131, 71 Stat. 634 (1957)........................................................................... 2, 16

Pub. L. 86-449, tit. III, 74 Stat. 86 (1960) ................................................................................ 2

10 ILCS
 5/1A-2 ....................................................................................................................................... 1
 5/1A-16.1 *et seq.* ................................................................................................................... 13

18 U.S.C.
 § 1831...................................................................................................................................... 14
 § 924........................................................................................................................................ 14

42 U.S.C. § 1971 (1952) ............................................................................................... 2

42 U.S.C. § 1974 (1964) ............................................................................................... 3

52 U.S.C.
    § 10101 .......................................................................................................... 3, 12
    § 20503 .............................................................................................................. 18
    § 20504 .............................................................................................................. 13
    § 20506 .............................................................................................................. 13
    § 20507 .......................................................................................................... *passim*
    § 20510 .............................................................................................................. 17
    § 20701 ................................................................................................ 3, 12, 13, 17
    § 20703 ................................................................................................ 3, 12, 14
    § 20705 .......................................................................................................... 3, 10
    § 21083 ...................................................................................................... 4, 13, 19
    § 21111 .............................................................................................................. 17

55 ILCS 5/3-2003 ........................................................................................................ 9

735 ILCS
    5/2-203 ................................................................................................................ 8
    5/2-211 ................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 9

Fed. R. Civ. P. 4 ..................................................................................................... 7, 8

Fed. R. Civ. P. 81 ..................................................................................................... 11

**Other Authorities**

*Basis (n.)*, Oxford English Dictionary (Dec. 2025). .................................................. 15

H.R. Rep. No. 86-956 (1959) ...................................................................................... 16

Judge J. Michelle Childs, *Voting Rights: Mechanism for Social Change*,
    76 Ala. L. Rev. 603 (2025) ..................................................................................... 2

Office of the Law Revision Counsel, *Editorial Reclassification: Title 52, United States Code*, https://uscode.house.gov/editorialreclassification/t52/index.html ................................. 3

Statement by the President Upon Signing the Civil Rights Act of 1960, 1 Pub. Papers 398
    (May 6, 1960) .......................................................................................................... 2

## INTRODUCTION

The Department of Justice ("DOJ") has sued election officials in Illinois and over 25 other jurisdictions to force them to turn over the sensitive personal identifiers—driver's license and social security numbers—of every registered voter, a privacy invasion that could chill the exercise of the fundamental constitutional right to vote. No law supports DOJ's breathtaking demand. In fact, every court to consider DOJ's demand has rejected it. Because DOJ has not properly served the defendant, and because DOJ lacks statutory authority for its demand, the complaint must be dismissed.

First, DOJ has not effected service. DOJ sued only Bernadette Matthews, Executive Director of the Illinois State Board of Elections ("Board"), an independent, bipartisan agency created by the Illinois Constitution. *See* Ill. Const. art. III, § 5; 10 ILCS 5/1A-2. But, to attempt to hail Matthews into court, DOJ merely left the summons with an administrative assistant at a Board office. Federal Rule of Civil Procedure 4(e) required DOJ to serve Matthews personally. Because of DOJ's insufficient service, the complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(5).

Second, notwithstanding the improper service, DOJ's demand for an unredacted version of the voter file containing all Illinois voters' sensitive personal information also fails on the merits. To justify its far-reaching demand, DOJ does not rely on a clear grant of authority from Congress. Rather, it attempts to twist a provision in the Civil Rights Act of 1960 allowing DOJ to demand certain records that "come into [] possession" of an election officer. Yet the Board did not "come into [] possession" of the voter file; it compiled the record. DOJ's claim fails under the law's plain text. The law also requires DOJ to give the basis *and* purpose for its demand. DOJ gave no "basis," so the complaint must be dismissed. And the purpose DOJ provided—to enforce other, unrelated laws—is invalid. Congress enacted this provision to empower DOJ to root out entrenched racial

1

discrimination in voting effectuated by local election authorities, a purpose that DOJ is not pursuing here. The Civil Rights Act of 1960 does not authorize DOJ's brazen power grab. The complaint must be dismissed under Rule 12(b)(6) as well.

## BACKGROUND

### A.    Statutory Background

The Enforcement Act of 1870, ch. 114, 16 Stat. 140, was "the first comprehensive federal statute dealing with elections as a way to enforce the Fifteenth Amendment." *Rucho v. Common Cause*, 588 U.S. 684, 698 (2019). The Enforcement Act restated the core commitment of the Fifteenth Amendment, that "all citizens of the United States … shall be entitled and allowed to vote … without distinction of race, color, or previous condition of servitude." Ch. 114, § 1, 16 Stat. at 140. Some parts of the 1870 law were later repealed, *see South Carolina v. Katzenbach*, 383 U.S. 301, 310 (1966), but the core substantive guarantee survived and was still codified at 42 U.S.C. § 1971 at the dawn of the civil rights era. *See* 42 U.S.C. § 1971 (1952).

The Civil Rights Act of 1957 then began a "new generation of civil rights laws." Judge J. Michelle Childs, *Voting Rights: Mechanism for Social Change*, 76 Ala. L. Rev. 603, 609 (2025). The 1957 Act amended 42 U.S.C. § 1971 with new enforcement mechanisms, "authoriz[ing] the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *Katzenbach*, 383 U.S. at 313; *see* Pub. L. 85-315, § 131, 71 Stat. 634, 637 (1957). Three years later, Title III of the Civil Rights Act of 1960 "gave the Attorney General access to local voting records" to aid his enforcement efforts. *Katzenbach*, 383 U.S. at 313; *see* Pub. L. 86-449, tit. III, 74 Stat. 86, 88–89 (1960). As President Eisenhower explained in his signing statement, the "provision[] which requires the retention of voting records[] will be of invaluable aid in the successful enforcement of existing voting rights statutes." Statement by the President Upon Signing the Civil Rights Act of 1960, 1 Pub. Papers 398 (May 6, 1960). The Title III record-

access provisions were codified in a new section immediately following the Enforcement Act and the 1957 Act. *See* 42 U.S.C. § 1974 (1964).[1]

Title III requires an "officer of election" to "retain and preserve" all "records and papers which *come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). The Attorney General may make a "demand in writing" for records required to be retained under Title III. *Id.* § 20703. The demand "shall" provide both a "basis" and a "purpose" for the demand. *Id.* If a dispute over the demand arises, a district court for the district in which the records are held can "compel production" of the records "by appropriate process." *Id.* § 20705.

More than three decades after the Civil Rights Acts, Congress passed the National Voter Registration Act of 1993 ("NVRA"), Pub. L. 103-31, 107 Stat. 77 (codified at 52 U.S.C. § 20501 *et seq.*). "[T]he NVRA both protects registered voters from improper removal from the rolls and places limited requirements on states to remove ineligible voters from the rolls." *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017). As to the latter, the NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence. 52 U.S.C. § 20507(a)(4). This NVRA provision aims to address "failures to purge voters who have moved away or have died," which the Fifth Circuit early on described as "a matter which does not bear any particular importance to [an] inquiry" under the Civil Rights Act. *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962). The NVRA includes its own provision requiring

---

[1] Not until 2014 did a re-codification appear to separate the Civil Rights Act of 1957 from the Civil Rights Act of 1960 in the new Title 52. *See* Office of the Law Revision Counsel, *Editorial Reclassification: Title 52, United States Code*, https://uscode.house.gov/editorialreclassification/t52/index.html. Due to codifiers' choices, not any act of Congress, the Civil Rights Act of 1957, codified at 52 U.S.C. § 10101(b)–(d), has been distanced from the Civil Rights Act of 1960, codified at §§ 20701–20706.

the release of certain voter maintenance lists—a narrow provision that DOJ does not invoke in its complaint here. *See* 52 U.S.C. § 20507(i).

The Help America Vote Act of 2002 ("HAVA"), Pub. L. 107-252, 116 Stat. 1666 (codified at 52 U.S.C. § 20901 *et seq*.), refined and expanded the NVRA's list-maintenance requirements. Most notable here, it required each State that registers voters to implement "a single, uniform … computerized statewide voter registration list defined, maintained, and administered at the State level." 52 U.S.C. § 21083(a)(1)(A). Pursuant to HAVA, the Board maintains such a statewide list.

**B.    DOJ's Demand for an Unredacted Voter File**

On July 28, 2025, DOJ wrote to Matthews "to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the [NVRA]." ECF 5-2 Ex. 1 (July 28, 2025, Correspondence), at 2.[2] The letter cited the NVRA's disclosure provision, 52 U.S.C. § 20507(i), and DOJ's authority to enforce the NVRA, *id.* § 20510(a), as the basis for the demand. *Id*. It did not cite Title III of the Civil Rights Act of 1960.

On August 11, 2025, the Board provided a complete copy of the then-current statewide voter list, with driver's license and social security numbers redacted. *See* Ex. 1 (Aug. 11, 2025, Correspondence), at 1. Three days later, on August 14, DOJ replied demanding "*all fields*," emphasis in original, including "driver's license number" and "last four digits of the registrant's social security number." ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), at 7. For the first time, DOJ claimed that not only the NVRA but also Title III of the Civil Rights Act of 1960 "empowered" DOJ to demand an unredacted voter list. *Id.* at 8. DOJ provided the following justification for its demand under the Civil Rights Act: "The purpose of the request is to ascertain

---

[2] The Court may consider the correspondence discussed in this section because the letters are "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see, e.g.*, ECF 4 ¶¶ 19–25.

Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* DOJ demanded the unredacted list within seven days. *Id.* at 9.

On September 2, 2025, the Board replied to the demand for an unredacted list. The Board noted that the request implicated "Illinoisans' interests in exercising their right to vote without risking the privacy of their personal information." ECF 5-2 Ex. 3 (Sept. 2, 2025, Correspondence), at 12. The Board explained that none of the cited authorities entitled DOJ to demand an unredacted list. *Id.* at 12–13. Given that the alleged purpose of the demand was to assess "compliance with the NVRA's list maintenance provisions," the Board promised that its forthcoming September 10 response on those subjects would "satisfy [DOJ] that Illinois' list maintenance program meets (and exceeds) NVRA requirements." *Id.* at 13–14.

On September 10, 2025, the Board provided detailed responses on the topics regarding NVRA list maintenance that were the primary subject of DOJ's original July 28 information demand. *See* Ex. 2 (Sept. 10, 2025, Correspondence). DOJ never replied.

###    C.    Procedural History and Related Litigation

Instead, on December 18, 2025, without warning, DOJ filed suit against Matthews. ECF 1. The filing was stricken for failure to comply with Civil Local Rule 11.4(A)(2). *See* Text Order Dated Dec. 19, 2025. The following day, DOJ re-filed its suit. *See* ECF 4. The complaint pleads a single count under Title III of the Civil Rights Act of 1960. *Id.* ¶¶ 26–28. It seeks a declaration that Matthews has violated Title III and an order for Matthews to produce "the current electronic copy" of the Illinois statewide voter list, including a driver's license number or social security number for each voter. *Id.* at 9.

On December 31, counsel for Matthews reached out to DOJ and offered to waive service pursuant to Civil Rule 4(d), but DOJ rejected the offer and instead attempted to serve Matthews on January 5, 2026. *See* ECF 18. Specifically, a U.S. marshal handed the complaint and summons

to Brooke Shockey, an administrative assistant in the Board's Springfield office. *See id.*; *see also* Ex. 3 (Shockey Decl.), ¶ 2. No one has ever given Shockey authority to accept service on behalf of either Matthews or the Board. *Id.* ¶¶ 5–7. Shockey has never accepted service on behalf of Matthews or the Board. *Id.* ¶ 19. Shockey did not tell the marshal that she had authority to accept service on behalf of either Matthews or the Board. *Id.* ¶ 16.

The United States has filed similar lawsuits against at least 27 other jurisdictions that, like Illinois, have refused to turn over their residents' sensitive identifiers to DOJ unredacted. A chart of the lawsuits is attached as Exhibit 4. As of this writing, three of DOJ's related lawsuits have reached final disposition; all were dismissed. *United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ---, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).

## APPLICABLE LEGAL STANDARDS

"A Rule 12(b)(5) motion is used to enforce service of process requirements." *Mich. Motor Techs., LLC v. Bayerische Motoren Werke AG*, 683 F. Supp. 3d 811, 819 (N.D. Ill. 2023). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). In addition to questions as to "the fact of service," a Rule 12(b)(5) motion may raise "antecedent questions of whether the chosen method of service conformed to the law." *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005).

A defendant is entitled to dismissal under Rule 12(b)(6) where a complaint's allegations, even if true, fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim for relief must also be "legally sound." *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). So a complaint devoid of "legal merit" is "vulnerable

to dismissal under Rule 12(b)(6)." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

## ARGUMENT

In its rush to obtain all Illinois voters' personal identifiers, DOJ has neglected basic procedural steps and come to Court without a viable legal theory. First, having rejected Matthews's offer to waive service, DOJ tried but failed to serve Matthews properly. Second, DOJ is wrong that Title III of the Civil Rights Act of 1960 empowers it to demand a copy of the statewide voter list, let alone an unredacted copy disclosing millions of driver's license and social security numbers. The text of Title III does not authorize such a demand. DOJ also lacks any legitimate purpose for the demand under Title III, namely, a purpose tied to protecting the right to vote against unlawful discrimination.

## I.    Matthews has not been served, so this matter should be dismissed.

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). "[T]he service requirement is not satisfied merely because the defendant is aware that he has been named in a lawsuit or has received a copy of the summons and the complaint." *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008). DOJ sued Bernadette Matthews, an individual, so "Rule 4(e)'s list of methods is exclusive." *Id.* at 501. Rule 4(e) requires service on Matthews, Fed. R. Civ. P. 4(e), but DOJ instead served a low-level employee at Matthews' workplace, *see* ECF 18; Ex. 3 (Shockey Decl.), ¶¶ 2, 17.

To start, the rules for service on individuals apply even though DOJ sued Matthews in her official capacity. *See Caisse v. DuBois*, 346 F.3d 213, 216 (1st Cir. 2003) ("[S]ervice of process for public employees sued in their official capacities is governed by the rule applicable to serving individuals."). Even though "the state … has a great interest in the outcome, it will be the individual

… who in an official capacity is going to be bound by the judgment." *Echevarria-Gonzalez v. Gonzalez-Chapel*, 849 F.2d 24, 29–30 (1st Cir. 1988); *see also Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976) ("[E]ven if they were sued in their official capacities, proper service of process would still be necessary to obtain personal jurisdiction over those officials.").

The proper ways to serve an individual under Rule 4(e)(2) are: "personal service (Rule 4(e)(2)(A)); leaving a copy of the complaint and summons at the defendant's 'usual place of abode' with someone of suitable age and discretion who resides there (Rule 4(e)(2)(B)); [or] delivering a copy of the complaint and summons to an agent authorized to accept service (Rule 4(e)(2)(C))." *Ligas*, 549 F.3d at 501. DOJ did not do any of these. *See* ECF 18; Ex. 3 (Shockey Decl.), ¶ 5 (Shockey not authorized to accept service for Matthews).[3] Rule 4(e) also permits service by "following state law for serving a summons." Fed. R. Civ. P. 4(e)(1). But Illinois law likewise requires either personal or abode service on individuals. *See* 735 ILCS 5/2-203(a); *Levy v. Pappas*, 2006 WL 1994554, at \*4–5 (N.D. Ill. July 13, 2006), *aff'd,* 510 F.3d 755 (7th Cir. 2007) (in an action against the counsel to the Cook County Treasurer in both his personal and official capacities, "delivering a copy to the Cook County Treasurer's office" "did not properly serve" the counsel).

Rule 4(j) for service on "a foreign, state, or local government" does not apply, because a governmental body is not the defendant. Even if it did, DOJ should still have served Matthews personally. Rule 4(j) requires service on either the "chief executive officer" of the "state-created governmental organization" or "in the manner prescribed by that state's law." Fed. R. Civ. P. 4(j)(2)(A)–(B). The Illinois rule for service on governmental bodies similarly requires service on "the president or clerk or other officer corresponding thereto." 735 ILCS 5/2-211. The "clerk" to

---

[3] The Court may consider declarations in adjudicating a motion to dismiss under Rule 12(b)(5). *See, e.g.*, *Hu v. Schurman*, No. 08-cv-2226, 2009 WL 2382234 (C.D. Ill. July 29, 2009) (granting 12(b)(5) motion based on affidavits).

8

which this statute refers is not "an office clerk with general clerical duties" but rather a high-ranking official of the public body, also called a "clerk" in Illinois. *Miller v. Town of Cicero*, 590 N.E.2d 490, 493–94 (Ill. App. 1992); *e.g.*, 55 ILCS 5/3-2003 (duties of Illinois county clerks). The Seventh Circuit has thus rejected service on "secretaries" of state entities because "service requirements under the federal rules … require that delivery be made to the chief executive officer." *Homola v. S. Ill. Univ. at Carbondale Sch. of Law*, 48 F.3d 1221, 1221 n.1 (7th Cir. 1995) (mem.) (citing these provisions); *see also Shepherd v. Ill. Dep't of Child. & Fam. Servs.*, No. 96-cv-7598, 1998 WL 258473, at *2 (N.D. Ill. May 18, 1998) ("Plaintiff did not serve the Director of DCFS or Director of the IDHR or any other appropriate official.").

Dismissal is an appropriate remedy for defective service. *See Cardenas*, 646 F.3d at 1005. Out of an abundance of caution, *see* Fed. R. Civ. P. 12(g)(2), Matthews also has moved for dismissal under Rule 12(b)(6) and opposed DOJ's motion to compel. But she is not properly a party to this matter, so the complaint should be dismissed without addressing the merits.[4]

## II.   DOJ's demand to produce an unredacted voter file under the Civil Rights Act fails as a matter of law.

DOJ's complaint should be dismissed because Title III of the Civil Rights Act of 1960 does not authorize it to demand a copy of the statewide voter file, let alone an unredacted copy. DOJ starts from the faulty premise that this Court lacks authority to evaluate the legality of DOJ's written demand; rather, the Court must rubber-stamp the demand once made. ECF 4 ¶ 4. At bottom, DOJ's position is that Congress required DOJ to provide an explanation for its demand, but as long as it used some words—any words—this Court must enforce the demand, even if it is for a ludicrous or invidious purpose. Not surprisingly, the law is not so absurd. Title III requires this

---

[4] Matthews reserves her right to file a new Rule 12 motion if she is ever properly hailed into Court.

Court to use "appropriate process" when enforcing a demand. The Supreme Court has held, under a statute with identical language, that a Court must examine the agency's asserted authority and purpose. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964). Here, DOJ has no authority because the text of Title III does not extend to either the voter file itself or the sensitive personal identifiers that it contains. And DOJ has no legitimate purpose under Title III because it does not seek to protect the right to vote free from discrimination. Finally, even if DOJ's stated goal of enforcing the NVRA were credited as a valid purpose, obtaining a static copy of the voter roll with social security numbers has no relevance to that goal.

### A.    This Court must scrutinize, not rubber-stamp, DOJ's demand for records.

Title III states that this Court "shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. The plain meaning of "appropriate process" is that, contrary to DOJ's assertion, courts must provide the demand recipient with appropriate process to challenge the demand. Consistent with this commonsense interpretation, sixty years ago the Supreme Court held the same under an identically worded statute. *United States v. Powell* involved an IRS effort to enforce a summons where the statutes stated that the court "shall have jurisdiction by appropriate process to compel" testimony and production. 379 U.S. at 52 & n.10. The Supreme Court held that, pursuant to this statutory requirement, the government, among other things, "must show that the investigation will be conducted pursuant to a legitimate purpose [and] that the inquiry may be relevant to the purpose." *Id*. at 57–58. The inquiry must also be "within the authority of the agency." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

DOJ nevertheless contends that it "need only show" the existence of a "written demand" and that Matthews "refused" it, because this is a "special statutory proceeding." ECF 4 ¶¶ 3–4. *Powell* rejected this argument, holding that the summons recipient is "entitled" to an "adversary

hearing" at which he "may challenge the summons on any appropriate ground," including whether "the summons had been issued for an improper purpose." 379 U.S. at 58.

As for procedure, "because [the statute] contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 & n.18; *see also Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (there must be "clear expression of congressional intent to exempt actions … from the operation of the Federal Rules of Civil Procedure"). Rule 81(a)(5) is to the same effect, providing that the federal rules apply in subpoena enforcement proceedings "except as otherwise provided by statute, by local rule, or by court order." Fed. R. Civ. P. 81(a)(5). So, in enforcement of DOJ's civil investigative demand here, as in any other context, "[t]he summoned party must receive notice, and may present argument and evidence on all matters bearing on a summons's validity." *United States v. Clarke*, 573 U.S. 248, 253–54 (2014).

Multiple district courts have thus rejected DOJ's argument that this Court has no role to play in reviewing the substance of DOJ's demands under Title III. *See Weber*, 2026 WL 118807, at *8 & n.15 (holding that *Powell* controls and the Federal Rules apply to a Title III demand); *Oregon*, 2026 WL 318402, at *8 (same); *Benson*, 2026 WL 362789, at *7 (same). As required by *Powell*, this Court also should reject DOJ's efforts to strip Matthews of appropriate process.

### B.    The text of the Civil Rights Act of 1960 does not authorize a demand for an unredacted voter file.

DOJ's demand for a copy of the unreacted voter file is not "within the authority of the agency," *Morton Salt*, 338 U.S. at 652, because it falls outside the text of Title III's retention provision. The authority of a federal agency to issue civil investigative demands "is created solely by statute." *Consumer Fin. Prot. Bureau v. Accrediting Council*, 854 F.3d 683, 690 (D.C. Cir. 2017). Thus, as the Fifth Circuit held immediately after Title III's passage, "whether or not any

specified particular paper or record comes within" Title III's ambit is "determin[ed]" by the court. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) [hereinafter, *Lynd I*]. DOJ's demand exceeds its authority under the text of Title III: the voter file does not "come into [Matthews's] possession" because the Board compiles it.[5]

Title III authorizes DOJ to demand only a "record or paper required by section 20701 of this title to be retained and preserved." 52 U.S.C. § 20703; *see also id*. § 20705 (authorizing the district court to compel production only of those records demanded pursuant to § 20703). Title III, however, requires Matthews to retain and produce only those records that "come into [her] possession," 52 U.S.C. § 20701. The voter file does not "come" to Matthews because the Board itself creates and maintains it. "Come into possession" means to get something—to obtain or acquire it. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) (defining "obtain" as "to come into the possession or enjoyment of (something)" (quoting 10 Oxford English Dictionary 669 (2d ed. 1989))); *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting Random House Dictionary of the English Language 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'"

---

[5] Title III also does not prohibit the Board from redacting certain sensitive information in the voter file, namely the voter's driver's license and social security numbers. In the analogous context of the NVRA's disclosure provision, which also refers broadly to "all records," the First Circuit has held, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases). This Court also held that "proper redaction of highly sensitive information" from the Illinois voter list would be appropriate. *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022). These courts have noted that allowing the disclosure of such highly sensitive information can burden the right to vote. That reason is especially compelling under Title III, which was enacted to lift burdens on voting, not create new ones. Relatedly, and as discussed below, there is no indication that producing this sensitive information to DOJ would further the Civil Rights Acts' purpose to attack racial discrimination in voting. Knowing everyone's social security numbers will not help DOJ fulfill its solemn duty to ensure that all citizens may exercise their right to vote "without distinction of race, color, or previous condition of servitude." 52 U.S.C. § 10101(a)(1).

(quoting Webster's New International Dictionary (3d ed. 1966))). Thus, the phrase "come into [an official's] possession," 52 U.S.C. § 20701, "refer[s] to only those documents that state election officials *receive* from prospective voters." *Benson*, 2026 WL 362789, at *9 (emphasis added).

The Board does not receive the voter file; the Board and local election authorities create it. HAVA requires "each State, acting through the chief State election official" to implement a statewide voter list. 52 U.S.C. § 21083(a)(1)(A); *see also* ECF 4 ¶ 9. The Board maintains the database that compiles information for the voter list not only from individual voter registration forms processed by local election authorities but also from numerous other sources. *See, e.g.*, 52 U.S.C. §§ 20504, 20506 (NVRA provisions requiring States to accept information from motor vehicle offices and other state agencies); 10 ILCS 5/1A-16.1 to 16.8 (Illinois law implementing the same); Ex. 2 at 2–4 (describing this process). So "the voter registration list is not assembled purely from information in voter registration applications." *Benson*, 2026 WL 362789, at *10.

This reading is consistent with how Title III has long been interpreted not to cover an agency's internal work-product. Only two years after its passage, the Fifth Circuit observed that the Civil Rights Act did not aim to expose "confidential, private papers and effects" but merely "public records which ought ordinarily to be open to legitimate reasonable inspection." *Lynd I*, 306 F.2d at 231. Thus, documents concerning poll taxes would be discoverable, but internal documents containing sensitive voter information would not.

DOJ seeks to collapse "come into possession" down to the single word "possess," but there is no basis to rephrase the statute to DOJ's liking. A statue should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotation marks omitted). DOJ's reading would assign no meaning at all to the words "come into." Congress knows how to say "possess" more broadly when it so desires. *See, e.g.*, 18

13

U.S.C. § 1831 (whoever "receives, buys, or possesses" trade secrets has committed a felony, thereby distinguishing between possessing and coming into possession of items); *id.* § 924(a)(1)(B)(ii) (penalties related to juveniles "carry[ing] or otherwise possess[ing]" firearms); *Benson*, 2026 WL 362789, at *9 (collecting numerous other statutes). Here, as explained below, Congress was concerned about racial discrimination in voting and reasonably sought to reach records revealing such discrimination, like records received related to poll taxes, without giving DOJ expansive authority to reach all records possessed.

### C.    DOJ lacks any legitimate "basis" or "purpose" under the Civil Rights Act of 1960 for demanding these data.

DOJ's demand also fails to satisfy the requirements of Title III. DOJ's written demand was required to contain "the basis and the purpose," 52 U.S.C. § 20703, yet the demand only identified DOJ's purported purpose. DOJ cannot now provide a post-hoc basis. Even as to DOJ's stated purpose, the Civil Rights Act of 1960 did not confer investigative power on DOJ to enforce the NVRA or HAVA, and "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986); *see also Consumer Fin. Prot. Bureau*, 854 F.3d at 690 (investigative power "is created solely by statute"). Rather, Title III empowered DOJ to investigate racial discrimination in voting, a concern unrelated to the NVRA and HAVA. Title III was not concerned with voter list maintenance, which is what DOJ is purportedly seeking to investigate. Because DOJ's demand was "issued for an illegitimate purpose," *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022), it cannot be enforced.

First, Title III requires DOJ to provide "the basis *and* the purpose" for the demand. 52 U.S.C. § 20703 (emphasis added). The full explanation that DOJ provided in its August 14, 2025, demand was: "The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." ECF 5-2 Ex. 2 (Aug. 14, 2025,

14

Correspondence), at 8. Although DOJ provided a purported purpose—to assess compliance with the NVRA and HAVA—it gave no basis, or "support," for its stated purpose. *Basis (n.), sense II.8*, Oxford English Dictionary (Dec. 2025). DOJ must provide "a factual basis for investigating a violation of a federal statute," not just "identify[] any federal statute, regardless of its relation to civil rights violations." *Oregon*, 2026 WL 318402, at *8–9. DOJ has made no such factual assertion about violations of *any* statute, let alone the Civil Rights Act specifically. Congress, by using "shall," required DOJ to provide a basis, which it failed to do. *E.g.*, *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("[T]he word 'shall' imposes a mandatory command."). Because DOJ has not fulfilled the basis criterion, the complaint must be dismissed.

Second, DOJ cannot now provide a basis after the fact. Title III requires the written demand itself to contain the basis, which DOJ's demand did not. Congress's requirement is not a mere formality. A stated basis allows state election authorities to assess whether compliance with the demand is appropriate and for the Court to evaluate the legitimacy of DOJ's demand. It prevents pretextual demands with ever-changing bases depending on whatever appears advantageous in the moment. Because DOJ's demand intrudes on a function assigned to states by the Constitution's Elections Clause, Congress's limitations are important and should be strictly enforced.

In any event, DOJ cannot issue a new written demand with a purported basis. Aside from being too late, under Title III, the "basis" must be an "assertion by the Attorney General of the United States that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) [hereinafter, *Lynd II*]; *accord Lynd I*, 306 F.2d at 229 n.6. As DOJ already stated, its purpose is to explore NVRA and HAVA compliance, *not* to investigate racial discrimination in voting. Any basis therefore would be inconsistent with Title III's requirement.

15

Third, as for DOJ's asserted "purpose," enforcing "the list maintenance requirements of the NVRA and HAVA" is not a legitimate purpose under Title III. Rather, the purpose must be tied to the purpose of the Civil Rights Acts to eliminate racial discrimination in voting; otherwise, if any purpose whatsoever could suffice, the requirement would be devoid of any meaning. *See Lynd I*, 306 F.2d at 228 (explaining that the Attorney General "is entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960"); *Weber*, 2026 WL 118807, at *9; *United States v. Oregon*, 2026 WL 318402, at *10.

The purpose of the Civil Rights Act of 1960 was to enable meaningful enforcement of the Enforcement Act of 1870 and the Civil Rights Act of 1957. Those laws were "enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements." *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008). The 1870 Act guaranteed voting rights "without distinction of race, color, or previous condition of servitude," Act of May 31, 1870, ch. 114, § 1, 16 Stat. at 140, and the 1957 Act provided for enforcement of this guarantee, Pub. L. 85-315, § 131, 71 Stat. at 637. Title III of the Civil Rights Act of 1960 was designed to further develop the enforcement scheme because existing law "lack[ed] a suitable provision for access to voting records during the course of an investigation and prior to the institution of a suit." H.R. Rep. No. 86-956, at 1944 (1959).

Contemporaneous decisions from the Fifth Circuit could not have spoken more clearly on this point: "[Title III's] purpose is to enable the Attorney General to determine whether § 1971 suits [that is, Civil Rights Act suits] or similar actions should be instituted." *Lynd I*, 306 F.2d at 228. "[T]he entire history of the Act reflects that it was and is designed to provide a means of

enforcing the basic federally guaranteed rights of citizenship (to vote) against state action." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Title III served to grant "the Attorney General an opportunity to inspect the records as to those who may have been illegally denied the right to qualify" to vote. *Kennedy v. Lewis*, 325 F.2d 210, 212 (5th Cir. 1963). On the other hand, "failures to purge voters who have moved away or have died," the problem targeted by the NVRA, were held to be irrelevant to the Civil Rights Act. *Bruce*, 298 F.2d at 863 n.2. Therefore, the "purpose" in the written demand must be one that is tied to the purposes of the Civil Rights Act, such as to investigate racial discrimination in registration or in voting or the payment of a poll tax. *See* 52 U.S.C. § 20701 (requiring the retention of records related to these issues). DOJ's stated purpose of exploring NVRA and HAVA compliance is improper.

It would in fact be quite odd for Congress to have intended Title III to serve as a disclosure and enforcement mechanism for the NVRA and HAVA. The Civil Rights Acts preexisted NVRA and HAVA, and thus Congress could not have meant that a valid "basis" or "purpose" for demanding records under the Civil Rights Act was to examine compliance with those acts. Moreover, the NVRA has its own records disclosure provision, 52 U.S.C. § 20507(i), and both the NVRA and HAVA include their own enforcement provisions, *id.* §§ 20510, 21111. Congress carefully crafted the disclosure and enforcement provisions of these later-enacted laws; it would frustrate that goal to allow the disclosure provision of an entirely different law enacted decades earlier for a different purpose to govern.

Finally, the above reading of the text of Title III avoids serious constitutional concerns about whether the Constitution in fact authorizes DOJ's dramatic assertion of federal power in this case to oversee voter eligibility and registration (rather than a narrow inquiry into voter list

maintenance practices). DOJ is not responsible for screening voter eligibility or overseeing voter registration; that responsibility belongs to state and local election authorities. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16-17 (2013) (explaining that states decide and enforce voter qualifications); 52 U.S.C. § 20503(a) (acknowledging states conduct voter registration as "provided for under State law").

So there are "serious constitutional doubts," *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018), that the Constitution permits what DOJ is attempting to do in this case. And Title III could not authorize the executive to go further than the limits of the Constitution. The Court should construe Title III of the Civil Rights Act to avoid this constitutional question about DOJ's asserted authority because "there is another reasonable interpretation available." *Edmond v. United States*, 520 U.S. 651, 658 (1997). Namely, the Court should hold that Title III does not grant DOJ the power it has claimed to demand an unredacted state voter file for purposes of NVRA enforcement.

Because DOJ has not articulated any "basis" for its demand, and because it openly confesses a "purpose" divorced from the purposes of Title III, ECF 4 ¶ 9, its complaint must be dismissed.

> **D.     A static snapshot of all Illinois voters' personal identifying information is irrelevant to enforcement of the NVRA and HAVA.**

Finally, even if enforcement of the NVRA and HAVA were a legitimate purpose for a Civil Rights Act investigation, collecting a point-in-time snapshot of Illinois voters' social security numbers is not "reasonably relevant" to voter roll list maintenance. *Morton Salt*, 338 U.S. at 652; *see also Powell*, 379 U.S. at 57 (agency must show that "the inquiry may be relevant to the purpose"). Collecting every Illinois voter's driver's license and social security number would not help DOJ enforce the NVRA and HAVA. The NVRA and HAVA require only that States implement a "general program" that "makes a reasonable effort" to remove voters who have moved

or died from the voter roll. *See* 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A). The reasonable mechanisms that a State employs to remove certain ineligible voters—its efforts—are what is relevant under the NVRA. The NVRA does not require any particular voter lists, so the receipt of voter lists cannot relate to NVRA enforcement. As discussed below, DOJ is not interested in the former—the Board's efforts, which are actually relevant under the NVRA—but is focused exclusively on the latter.

DOJ has given no explanation for how it would use voters' sensitive information to determine compliance with the list-maintenance requirement. It provides no details on whether or how it would identify voters on the list who moved or died. Nor could it actually determine compliance from a static list, which does not reveal whether the Board has a general program that makes a reasonable effort. Just because an ineligible voter appears on the list does not indicate noncompliance. The ineligible voter might well be removed in the next update on the list. For instance, the NVRA requires States to notify a registered voter and then wait for that voter to fail to vote in two federal elections before removal, *id.* § 20507(d)(1)(B), so the process of removal can take years. And the laws only require "a reasonable effort," not perfection, *id.* § 20507(a)(4), so the presence of ineligible voters does not mean such a reasonable effort was lacking.

Perhaps most revealing, DOJ has demonstrated little interest in engagement with the Board on the technical details of how the Board undertakes vital list-maintenance work. After asking a series of accusatory questions about list maintenance in its July 28 correspondence, ECF 5-2 Ex. 1 (July 28, 2025, Correspondence), at 3–4, DOJ has never again mentioned the topic. The August 14 letter where DOJ first introduced Title III of the Civil Rights Act of 1960 asked no follow-up questions. *See id.* Ex. 2 (Aug. 14, 2025, Correspondence). On September 10, the Board provided detailed responses to DOJ's specific questions, Ex. 2 at 8–10, but DOJ has not followed up since.

For example, the NVRA includes a safe harbor provision: if the state undertakes certain measures, then it complies with the NVRA's "reasonable effort" requirement. 52 U.S.C. § 20507(c)(1). DOJ never inquired whether the Board undertakes these efforts and is entitled to the safe harbor. This silence further demonstrates that DOJ's demand for a static, unredacted voter roll has no connection with NVRA list-maintenance procedures.

## CONCLUSION

The complaint should be dismissed without prejudice for insufficient service of process. In the alternative, the complaint should be dismissed with prejudice for failure to state a claim.

Dated: February 20, 2026

Vikas Didwania
Holly Berlin
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*vikas.didwania@ilag.gov*
*holly.berlin@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois, on behalf of
Bernadette Matthews, Executive Director of the
Illinois State Board of Elections

By:    */s/ R. Henry Weaver*
        Assistant Attorney General

20

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Civil Local Rule 7.1(B)(4)(c) that this memorandum complies with the type volume limitation. This memorandum contains 6901 words, including all headings, footnotes, and quotations, and excluding the cover page, table of contents, and table of authorities.

By: */s/ R. Henry Weaver*
R. Henry Weaver