# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>BERNADETTE MATTHEWS, in her official capacity as Executive Director of the State Board of Elections for the State of Illinois,<br><br>*Defendant.* | No. 3:25-cv-3398 |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION TO COMPEL

February 20, 2026

KWAME RAOUL,
Attorney General of Illinois

By:   Vikas Didwania
      Holly Berlin
      R. Henry Weaver
      Office of the Illinois Attorney General
      115 S. LaSalle St.
      Chicago, IL 60603
      *vikas.didwania@ilag.gov*
      *holly.berlin@ilag.gov*
      *robert.weaver@ilag.gov*
      (312) 814-3000

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 3

Legal Standard ...................................................................................................................... 6

Argument ............................................................................................................................... 7

I.     DOJ's motion to compel should be denied because Matthews's motion to dismiss should be granted. ................................................................................................. 7

II.    In the alternative, if the complaint survived, then further pleading and discovery would be needed in this matter, so DOJ's premature dispositive motion should be denied. ......................................................................................................................... 8

        A.     Matthews can plausibly allege that DOJ's collection of these data would violate multiple federal privacy statutes. .............................................................. 9

        B.     Matthews can plausibly allege that DOJ is seeking Illinois voters' personal information for illegitimate purposes that it has not revealed to the Court. ......... 12

Conclusion .......................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Argyropoulos v. City of Alton*, 539 F.3d 724 (7th Cir. 2008) ........................................................14

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ...................................4–5, 13–14

*Bassiouni v. F.B.I.*, 436 F.3d 712 (7th Cir. 2006) ..........................................................................10

*Britt v. Naval Investigative Serv.*, 886 F.2d 544 (3d Cir. 1989) ....................................................10

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ........................................................10

*Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020) .............................................................................12

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ...................................................................................1

*Cardenas v. City of Chicago*, 646 F.3d 1001 (7th Cir. 2011) .........................................................7

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   233 F.3d 981 (7th Cir. 2000) ......................................................................................................9

*Doe v. Off. of Pers. Mgmt.*, No. 25-cv-234, 2025 WL 513268 (D.D.C. Feb. 17, 2025) ................10

*E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995) .......................................................6

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
   266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd*, 878 F.3d 371 (D.C. Cir. 2017) .............................10

*Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818 (7th Cir. 2025) ...........................................9

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) .......................................................................12

*McLane Co. v. E.E.O.C.*, 581 U.S. 72 (2017) .................................................................................8

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ..............................................7

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) ................................................................14

*Reno v. Condon*, 528 U.S. 141 (2000) ..........................................................................................11

*Senne v. Vill. of Palatine*, 695 F.3d 597 (7th Cir. 2012) ..............................................................11

*Thirteen Inv. Co., Inc. v. Foremost Ins. Co. Grand Rapids Michigan*,
   67 F.4th 389 (7th Cir. 2023) ....................................................................................................12

*United States v. Clarke*, 573 U.S. 248 (2014) ..............................................................2–3, 6, 12, 14

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ..................................................................8

*United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402
   (D. Or. Feb 5, 2026) ......................................................................................................6–7, 13–14

*United States v. Powell*, 379 U.S. 48 (1964) ...........................................................................1, 6–7

*United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807
   (C.D. Cal. Jan. 15, 2026) ..............................................................................................3, 7, 12–14

*Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990) ...............................................................6

*Walsh v. Alight Sols. LLC*, 44 F.4th 716 (7th Cir. 2022) ..................................................................14

**Statutes & Constitutional Provisions**

U.S. Const. art. I, § 2, cl. 1 ..................................................................................................14

U.S. Const. art. I, § 4, cl. 1 ................................................................................................2, 4

E-Government Act, Pub. L. No. 107-347, 116 Stat. 2899 (2002) ................................10–11

5 U.S.C. § 552a ..............................................................................................................9–10

10 ILCS
    5/1A-16.1 ..........................................................................................................................11
    5/1A-16.7 ..........................................................................................................................11

18 U.S.C.
    § 2721 ..............................................................................................................................11
    § 2725 ..............................................................................................................................11

52 U.S.C.
    § 20503 ..............................................................................................................................5
    § 20703 ..............................................................................................................................8
    § 21083 ..........................................................................................................................2, 4

**Rules**

Fed. R. Civ. P. 1 ......................................................................................................................7

Fed. R. Civ. P. 8 ...................................................................................................................7–8

Fed. R. Civ. P. 26 ....................................................................................................................8

Fed. R. Civ. P. 56 ....................................................................................................................8

Fed. R. Civ. P. 81 ....................................................................................................................7

**Other Authorities**

S. Rep. No. 93-1183 (1974) ...................................................................................................10

Complaint, *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Sept. 16, 2025) ..................6

Complaint, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026) ..............6

Complaint, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025) .............6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html .............4

Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/ ..................................................................................4–5, 13

Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Justice (last updated Feb. 13, 2026),

https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ............................................................................................... 4

Letter from Pamela Bondi, Attorney General, to Tim Walz, Governor of Minnesota (Jan. 24, 2026) ................................................................................................................. 5

Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html ........................................................................................ 5

Quentin Young, *State Election Officials in Letter Ask If They Were "Misled" by Trump Administration*, Colorado Newsline (Nov. 18, 2025), https://coloradonewsline.com/2025/11/18/state-election-officials-misled-trump/ ................... 5

Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, Reuters (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 ........................................................ 4

**INTRODUCTION**

The Department of Justice ("DOJ") lacks statutory authority under the Civil Rights Act of 1960 to demand an unredacted copy of the Illinois voter roll, as explained in defendant Bernadette Matthews's motion to dismiss. *See generally* Mot. to Dismiss & Mem. in Support, ECF 41–42. That is reason enough to dismiss this suit, so the motion to compel should be denied as moot.

If this suit proceeds any further, however, the Court should not grant DOJ's request for immediate summary disposition of this matter without any of the normal processes of civil litigation. The summary disposition that DOJ seeks, *see* ECF 5-1 at 18–19, is contrary to Supreme Court precedent. As the Supreme Court held in similar circumstances, the government "must show that the investigation will be conducted pursuant to a legitimate purpose [and] that the inquiry may be relevant to the purpose." *United States v. Powell*, 379 U.S. 48, 57 (1964); s*ee also* Mot. to Dismiss Mem. at 10–11. The Supreme Court explained that the demand recipient is "entitled" to an "adversary hearing" at which she "may challenge the summons on any appropriate ground," including whether "the summons had been issued for an improper purpose." *Powell*, 379 U.S. at 58 (quotation omitted). The processes established by the Federal Rules of Civil Procedure for the conduct of civil litigation apply here. *See Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (there must be "clear expression of congressional intent to exempt actions … from the operation of the Federal Rules of Civil Procedure"). DOJ's motion should be denied, without prejudice, so this case can proceed in an orderly fashion under the federal rules, including discovery and briefing of dispositive motions to allow Matthews to assert and then solidify potential defenses.

The standard process provided by the federal rules is especially crucial here. Presentation of a "challenge" on "appropriate ground[s]," 379 U.S. at 58, will require developing the issues through an answer, discovery, dispositive motion practice, and ultimately a trial if necessary. First, the appropriate grounds may include, depending on the facts developed, defenses based on the

1

multiple federal privacy statutes that bar DOJ from collating sensitive personal information about millions of Americans. The Court cannot issue injunctive relief against Matthews that would violate federal law. Second, DOJ's demand for the disclosure of all voters' driver's license and social security numbers—ostensibly to enforce the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA")—likely omits DOJ's actual, unauthorized purposes. This Court "may not permit its process to be abused," so an investigative demand without a "legitimate purpose" must be refused. *Id*. at 57–58. Moreover, discovery is available into an agency's "bad faith" if the respondent can present "some credible evidence supporting his charge." *United States v. Clarke*, 573 U.S. 248, 254 (2014). Here, DOJ appears to be engaged in a nationwide effort not to enforce the NVRA and HAVA but rather to obtain unredacted state voter rolls, combine them into a first-of-its-kind national database, and use that database to pursue goals unrelated to compliance with voter list maintenance requirements. The federal government is not authorized to maintain voter rolls. Voter databases are maintained by States, which, under the Constitution and federal law, have primary authority for running elections. U.S. Const. art. I, § 4, cl. 1; 52 U.S.C. § 21083(a)(1)(A) (directing States to maintain a statewide voter registration list). DOJ's failure to disclose its broader purpose to the Court in its own papers raises a plausible inference of ulterior motive that entitles Matthews to discovery. *See Clarke*, 573 U.S. at 254.

      This Court cannot allow its process to be used by DOJ to pursue unauthorized purposes, especially with the privacy of millions of Illinois voters on the line and the potential chilling effects on their voting rights. As a state agency, the Illinois State Board of Elections has a duty to abide by all state and federal laws governing the protection of sensitive personal information. The Board also seeks to protect Illinoisans' interests in exercising their right to vote without risking disclosure of their personal information. Turning over the sensitive personal information of voters to DOJ for

unauthorized purposes unrelated to enforcement of NVRA and HAVA would imperil voter privacy, chill the exercise of the right to vote, and undermine voters' trust in the Board's supervision of elections.

The complaint should be dismissed and the motion to compel denied as moot, for the reasons explained in Matthews's separately filed Rule 12 motion. But, if the motion to dismiss were denied, then DOJ's attempt to secure immediate summary disposition of this matter should also be refused so that Matthews's defenses can be adjudicated.

## BACKGROUND

The motion to dismiss presented the statutory background at issue and described the limited set of facts properly at issue on a Rule 12 motion. *See* Mot. to Dismiss Mem. at 2–6. But this Court is not bound by the same evidentiary restrictions in considering whether to grant DOJ's motion to compel, which would give DOJ the ultimate relief that it seeks in this case. *See Clarke*, 573 U.S. at 254 (recipient of investigative demand entitled to present surrounding "facts and circumstances"). And consideration of the broader context makes clear that this lawsuit belongs to DOJ's nationwide effort "to compile a national database with millions of voters' private information." *United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807, at *11 (C.D. Cal. Jan. 15, 2026). But such a goal is completely divorced from enforcement of the Civil Rights Act of 1960, and DOJ cannot leverage its Civil Rights Act power to serve its ulterior and improper goal. Equally important, whatever DOJ's goals, "DOJ's obfuscation of its true motives in the present matter" raises concern of "a pretextual investigative purpose." *Id.* at *12.

During the summer of 2025, DOJ began demanding detailed and comprehensive voter registration data from States, under the guise of voter list maintenance compliance, but actually

3

"to essentially establish a national voting database."[1] DOJ's August 14, 2025, demand letter here gave a purpose for its demand allegedly specific to Illinois: "The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), at 8. Yet, to date, DOJ has directed at least 47 states and the District of Columbia to supply their complete voter registration lists.[2] No law authorizes DOJ to create a national voting database containing sensitive information about every registered American voter. Voter databases are maintained by States, which, under the Constitution and federal law, have primary authority for running elections. U.S. Const. art. I, § 4, cl. 1; 52 U.S.C. § 21083(a)(1)(A) (directing States to maintain a statewide voter registration list).

On September 9, 2025, Reuters reported that DOJ was in talks with the Department of Homeland Security ("DHS") about a partnership in which DOJ would compile voter data collected from States and transfer it to DHS "for use in criminal and immigration-related investigations."[3] Then, on September 12, DHS admitted that the federal government was "sharing information to solve problems" and revealed its "collaboration with the DOJ" to remove noncitizens from voter rolls.[4] Again, federal agencies do not have responsibility for screening for voter eligibility or overseeing voter registration; that responsibility belongs to state and local election authorities. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16–17 (2013) (explaining that states

---

[1] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Justice (last updated Feb. 13, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[3] Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, Reuters (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

[4] *See* Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/.

4

decide and enforce voter qualifications); 52 U.S.C. § 20503(a) (acknowledging that States conduct voter registration as "provided for under State law").

Even as DOJ revealed publicly that it was using voter roll data for purposes other than enforcement of the NVRA and HAVA, it denied doing so to state election officials in private. On November 18, 2025, ten state election officials sent a letter to DOJ "to express our immense concern with recent reporting that [DOJ] has shared voter data with [DHS], and to seek clarity on whether DOJ and DHS actively misled election officials regarding the uses of voter data."[5] The letter alleges that, on September 11, DOJ privately assured a group of state officials that it was not engaged in such information sharing.[6] But the next day, public reporting indicated that DOJ was engaged in such information sharing.[7]

Similarly, on January 24, 2026, the U.S. Attorney General herself wrote to the Minnesota Governor confirming that she views immigration enforcement and collection of these voter data to be related subjects. *See* Letter from Pamela Bondi, Attorney General, to Tim Walz, Governor of Minnesota, at 3 (Jan. 24, 2026) (Ex. 1). The Attorney General wrote to the Governor to demand that he "cooperate fully with ICE [Immigration and Customs Enforcement], honor immigration detainers, and permit ICE to interview detainees in custody to determine immigration status." *Id.* Two sentences later, the Attorney General further demanded that the Governor "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960." *Id.*

---

[5] Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html.

[6] *See* Quentin Young, *State Election Officials in Letter Ask If They Were "Misled" by Trump Administration*, Colorado Newsline (Nov. 18, 2025), https://coloradonewsline.com/2025/11/18/state-election-officials-misled-trump/.

[7] *See* Shorman, *supra*.

5

The Attorney General thus appeared to link her demand that Minnesota grant policy concessions on immigration enforcement with the demand for unredacted voter roll information.

DOJ has now filed lawsuits against at least 27 jurisdictions, all attempting to compel the production of unredacted voter files that include driver's license and social security numbers. *See* Ex. 4 to Mot. to Dismiss Mem. DOJ has consistently alleged in its complaints that it seeks to enforce the NVRA and HAVA. *E.g.*, Complaint ¶¶ 6–9, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026), ECF 1; Complaint at 3, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), ECF 1; Complaint ¶ 1, *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Sept. 16, 2025), ECF 1. It has never stated that it seeks to obtain these data for the purposes of creating a national voter database or for sharing with other agencies, neither of which plays a role in NVRA or HAVA enforcement.

## LEGAL STANDARD

This Court must scrutinize DOJ's authority and purpose before requiring compliance with its demand. *See* Mot. to Dismiss Mem. at 10–11; *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *7–8 (D. Or. Feb 5, 2026) (rejecting DOJ's argument that Title III document demands are a "special statutory proceeding" and concluding that the Federal Rules apply instead). The Court must "be satisfied that the demand for information is not 'too indefinite' and that it has not 'been made for an illegitimate purpose.'" *Quad/Graphics, Inc.*, 63 F.3d at 645 (quoting *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191 (1990)).

In enforcing a civil investigative demand, "a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. Discovery is therefore available into the agency's "bad faith" if the respondent can present "some credible evidence supporting his charge." *Clarke*, 573 U.S. at 254. If further proceedings are necessary, then the federal rules of civil procedure apply just as they do

6

to any other case. *See Powell*, 379 U.S. at 58 & n.18; Fed. R. Civ. P. 1, 81(a)(5); *see also Oregon*, 2026 WL 318402, at *8.

## ARGUMENT

The motion to compel should simply be denied as moot because the complaint has not been served and, in any event, it suffers from fundamental legal defects. If, however, this matter proceeded any further, then the motion should be denied without prejudice, and Matthews should be allowed to present her defenses in the ordinary course. *See* Fed. R. Civ. P. 8(b). At this preliminary stage, based on the facts in the complaint, it appears that federal privacy laws prohibit DOJ from constructing a nationwide database of voters' sensitive personal information. And, based on publicly available information, it appears that DOJ is not disclosing ulterior purposes, namely, building an unauthorized nationwide voter database and sharing voters' personal information with agencies that do not conduct NVRA and HAVA enforcement. DOJ has told the Board and this Court that "[t]he purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." *See* ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), at 8; *see also* ECF 4 ¶ 9. But, as another court has already concluded in a similar case, these statements may well conceal "a pretextual investigative purpose." *Weber*, 2026 WL 118807, at *12.

**I.     DOJ's motion to compel should be denied because Matthews's motion to dismiss should be granted.**

DOJ's motion to compel is moot because the complaint should be dismissed. *See generally* Mot. to Dismiss Mem.

First, Matthews has not even been served, so this matter should be dismissed without prejudice. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

7

Second, even if Matthews were properly served, DOJ's demand for an unredacted voter file under Title III of the Civil Rights Act of 1960 fails as a matter of law—even if the demand is taken at face value. The demand, which on its face was issued to obtain information about compliance with voter list maintenance requirements, ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), was not "within the authority of the agency," *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950), because it falls outside the text of Title III's retention provision. *See* Mot. to Dismiss Mem. at 11–14. In addition, DOJ's stated purpose of enforcing "the list maintenance requirements of the NVRA and HAVA" is not a lawful purpose under the Civil Rights Act. *See id.* at 14–20. Title III authorizes demands for certain information concerning racial discrimination in voting, specifically requiring both a "basis" and "purpose" grounded in that statutory regime. 52 U.S.C. § 20703. A demand lacking a basis and issued with "an illegitimate purpose" cannot be enforced. *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 77 (2017) (quotation omitted). So the complaint should be dismissed and the motion to compel denied.

II.     **In the alternative, if the complaint survived, then further pleading and discovery would be needed in this matter, so DOJ's premature dispositive motion should be denied.**

As described above, and in the motion to dismiss, *see* Mot. to Dismiss Mem. at 11, this case is subject to the usual procedures established by the Federal Rules. That includes opportunity to assert defenses, seek discovery, and file dispositive motions. *See* Fed. R. Civ. P. 8(b), 26, 56. To allow this process to play out, the motion to compel should be denied without prejudice.

The ordinary process established by the federal rules is especially important here because there appear to be substantial defenses that Matthews should be allowed to develop and present if the complaint survived. First, the facts in the complaint suggest that sending these data to DOJ would violate multiple federal privacy statutes: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act. Those laws oblige the federal government to deliberate publicly

8

before constructing a national database of individuals' personal information, deliberation that DOJ has not undertaken here. Second, publicly available evidence suggests that the reason DOJ pleads for its investigation—assessing voter roll maintenance, ECF 4 ¶ 9—is not the real reason for DOJ's actions. Instead, DOJ is demanding voters' sensitive personal information from the States in pursuit of its other goals, including to construct an unauthorized nationwide database and to share sensitive voter information with other agencies. These purposes are an illegitimate use of Title III of the Civil Rights Act of 1960 and, moreover, a troubling dissimulation given that DOJ has not revealed them to this Court. For both reasons, DOJ's attempt at peremptory disposition of this matter must fail.

### A.    Matthews can plausibly allege that DOJ's collection of these data would violate multiple federal privacy statutes.

DOJ has failed to comply with multiple federal privacy statutes in issuing this demand: the Privacy Act of 1974, the E-Government Act, and the Driver's Privacy Protection Act. DOJ would likely violate these federal laws in receiving a vast trove of unredacted driver's license and social security numbers from Matthews. These impending violations underline that the demand was not "within [DOJ's] authority" and that "the proper administrative procedures have [not] been followed." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 233 F.3d 981, 986 (7th Cir. 2000). But, because this affirmative matter is not "clear from the face of the complaint"—the complaint does not mention any steps that DOJ has taken to comply with these laws—Matthews needs the opportunity to answer to develop her defenses based on them. *See Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025). The privacy laws therefore prevent summary disposition of this case in DOJ's favor.

First, the Privacy Act requires agencies to follow specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual, called a

9

"system of records." 5 U.S.C. § 552a(a)(3), (a)(5), (e)(4). It further prohibits federal agencies like DOJ from collecting or maintaining records of an individual's First Amendment activities unless narrow exceptions apply. *Id.* § 552a(e)(7). The Privacy Act recognized that "'the creation of formal or de facto national data banks, or of centralized Federal information systems without certain statutory guarantees would threaten the observance of the values of privacy and confidentiality in the administrative process.'" *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 550 (3d Cir. 1989) (quoting S. Rep. No. 93-1183, at 6930 (1974)) (alteration omitted). By all indications, DOJ is creating precisely such a "national data bank." *See supra* pp. 3–6. But it has likely not engaged in the required procedure for "establishment or revision" of any "system of records," namely a notice in the *Federal Register* disclosing a range of details about the system. 5 U.S.C. § 552a(e)(4). Moreover, voter data of course relates to First Amendment activity, *see, e.g.*, *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999), so collecting it is presumptively unlawful unless an exception applies, *see Bassiouni v. F.B.I.*, 436 F.3d 712, 714 (7th Cir. 2006).

Second, the E-Government Act requires that federal agencies perform a "privacy impact assessment" ("PIA"), ensure the review of the PIA by the appropriate official, and publish the PIA before "initiating a new collection of information that … includes any [contact] information in an identifiable form" stemming from any request to "10 or more persons." Pub. L. No. 107-347, § 208(b)(1)(A)(ii), (B), 116 Stat. 2899, 2921–22 (2002). "The statute, given its construction, requires all three of these events, including the public disclosure of the assessment, to occur *before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017), *aff'd*, 878 F.3d 371 (D.C. Cir. 2017); *Doe v. Off. of Pers. Mgmt.*, No. 25-cv-234, 2025 WL 513268, at *2 (D.D.C. Feb. 17, 2025) (describing the PIA process). Like the Privacy Act, the mandatory PIA would require DOJ

10

to explain why it is seeking this dramatic aggregation of data on millions of American voters. *See* Pub. L. No. 107-347, § 208(b)(2)(B)(ii)(II), 116 Stat. at 2922. DOJ appears to have ignored these statutory requirements, too.

Third, DOJ's demand would likely run afoul of the Driver's Privacy Protection Act, which prohibits disclosing "personal information" obtained by a state department of motor vehicles "in connection with a motor vehicle record" "without the express consent of the person to whom such information applies." 18 U.S.C. § 2721(a); *see Reno v. Condon*, 528 U.S. 141, 143–44 (2000). "[P]ersonal information" includes a "social security number" or "driver identification number," the things that DOJ is seeking in this suit. 18 U.S.C. § 2725(3). The Act's restrictions extend to Matthews because, though she may receive restricted personal information to fulfill her official duties, *id.* § 2721(b)(1), she may not re-disclose it except in accordance with the Act, *id.* § 2721(c). In Illinois, the Secretary of State—which is the Illinois state department of motor vehicles—provides the State Board of Elections with "personal information needed to complete the person's registration to vote in Illinois." 10 ILCS 5/1A-16.1(f). Like the federal Act, Illinois law similarly requires Matthews to hold the social security numbers and driver's license numbers that she receives as confidential except for "voter registration purposes." *Id.* 5/1A-16.7(k). So Matthews has a large quantity of data subject to the Driver's Privacy Protection Act, and "the statute's purpose, clear from its language alone, is to prevent all but a limited range of authorized disclosures of information contained in individual motor vehicle records." *Senne v. Vill. of Palatine*, 695 F.3d 597, 605 (7th Cir. 2012). DOJ says nothing about how it can get around that purpose.

The complaint does not allege any steps that DOJ has taken to comply with these privacy laws, so it does not reveal DOJ's theory for how collecting a vast trove of sensitive personal identifiers and voting information could possibly abide by them. If this case proceeded any further,

11

then, Matthews would argue that this Court may not issue equitable relief directing a result that would violate federal law. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 79 (1982) (a court cannot "command conduct" that would amount to "an illegal undertaking under [multiple] federal statutes").

But DOJ's ostensible failure to attend to its basic statutory obligations in collecting sensitive information on the public is not properly before the Court at this point in the litigation. Defendants' failure to comply with the privacy statutes is in the nature of an affirmative defense because it would negate Matthews's duty to comply with the demand "even if [DOJ] establishe[d] a *prima facie* case." *Thirteen Inv. Co., Inc. v. Foremost Ins. Co. Grand Rapids Michigan*, 67 F.4th 389, 392 (7th Cir. 2023) (quotation omitted). In general, however, to resolve an affirmative defense even at the pleading stage, "the defendant should answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). Summary enforcement of DOJ's demand would short-circuit ordinary procedure and deprive Matthews of her opportunity to plead her defenses.

    **B.**    **Matthews can plausibly allege that DOJ is seeking Illinois voters' personal information for illegitimate purposes that it has not revealed to the Court.**

Second, as other courts have found in similar lawsuits, there appears to be a plausible defense based on "DOJ's obfuscation of its true motives in the present matter." *Weber*, 2026 WL 118807, at *12. Administrative information demands are subject to the normal "adversarial process," and thus the recipient of a demand is entitled to discovery "when [s]he can point to specific facts or circumstances plausibly raising an inference of bad faith." *Clarke*, 573 U.S. at 254. "[C]ircumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available." *Id.* The evidence currently available easily clears this bar: The public record alone raises a plausible inference that

12

DOJ's motives in pursuing its information demands are not exclusively related to DOJ's stated narrow purpose of assessing voter list maintenance under the NVRA and HAVA. DOJ's potential dissimulation on this point prevents summary enforcement of its demand to produce all Illinois voters' personal identifying information.

The public evidence suggests DOJ is seeking every State's voter data to create a national database that would allow DOJ to screen voter eligibility. *See supra* pp. 3–6. Voter qualification is a traditional responsibility of States, not DOJ. *See Inter Tribal Council*, 570 U.S. at 16–17 (explaining that states decide and enforce voter qualifications). DOJ has candidly stated that its data collections are "being screened for ineligible voter entries."[8] Based on such opposing-party statements, two courts have already concluded that "DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 2026 WL 118807, at *10; *see Oregon*, 2026 WL 318402, at *11 ("The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."). DOJ is not authorized to create a national database of voters; States maintain such databases.

Public evidence of DOJ's intentions also strongly suggests that it is striving to obtain unredacted voter files to share with other federal agencies. Most notably, the Attorney General's letter to Minnesota linked the two purposes. *See supra* pp. 5–6. Another federal court, considering the Attorney General's letter, concluded that "[t]he context of [the voter data] demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data."

---

[8] *See* Shorman, *supra*.

*Oregon*, 2026 WL 318402, at *11. And, troublingly, other state election officials have alleged that DOJ told them an inaccurate account on this point, immediately contradicted by DOJ's own public statements. *See supra* p. 5.

These facts require denying summary enforcement of DOJ's demand, first, because investigation of voter eligibility by building a national voter database would be illegitimate grounds for a Civil Rights Act investigative demand. *See Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022) (agencies cannot demand records "for an illegitimate purpose"). Voter qualifications are set by state, not federal law: "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them." *Inter Tribal Council*, 570 U.S. at 16 (emphasis in original); *see* U.S. Const. art. I, § 2, cl. 1. States therefore evaluate and enforce voter eligibility. So DOJ could not use the records-retention provision of the Civil Rights Act of 1960 as a pretext to do what it otherwise lacks authority to do. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024) ("[A] government official cannot do indirectly what she is barred from doing directly … .").

Even more troubling, however, is the prospect that DOJ has concealed its true purpose from this Court. DOJ has alleged here that its purpose is to investigate "Illinois' compliance with federal election law, particularly the NVRA and HAVA." ECF 4 ¶ 9; *see also* ECF 5-1 at 9 (same). But public evidence, including DOJ's own statements, suggests different purposes, as two courts have already held. *See Weber*, 2026 WL 118807, at *10–12; *Oregon*, 2026 WL 318402, at *11. This contrast implies "a pretextual investigative purpose." *Weber*, 2026 WL 118807, *12. And a "pretext" is tantamount to "act[ing] in bad faith, i.e., dishonestly." *Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008). A demand recipient is entitled to discovery if she can "plausibly rais[e] an inference of bad faith." *Clarke*, 573 U.S. at 254. Such an inference exists here—as other

14

courts already have found—because, according to the public evidence, DOJ appears to be planning to share voters' sensitive information with agencies not involved in enforcement of the NVRA and HAVA. Therefore, if this case proceeded any further, which it should not, then the only proper next steps would be an answer and then discovery into the true motives behind DOJ's demand for Illinois voters' sensitive personal identifying information.

## CONCLUSION

The complaint should be dismissed, so the motion to compel should be denied as moot. In the alternative, even if the complaint were viable, multiple issues outside the complaint require further development through ordinary litigation before DOJ is granted its ultimate relief, again requiring denial of the current motion to compel.

Dated: February 20, 2026

Vikas Didwania
Holly Berlin
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*vikas.didwania@ilag.gov*
*holly.berlin@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois, on behalf of Bernadette Matthews, Executive Director of the Illinois State Board of Elections

By:  */s/ R. Henry Weaver*
      Assistant Attorney General

15