E-FILED
Monday, 02 March, 2026  02:31:29 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

THE UNITED STATES OF AMERICA,

                *Plaintiff*,

    v.

BERNADETTE MATTHEWS, in her Official
Capacity as Executive Director of the State Board
of Elections for the State of Illinois,

                *Defendant*.

Civil Action No. 3:25-cv-3398-CRL-DJQ

**[PROPOSED] MEMORANDUM OF LAW IN SUPPPORT OF THE MOTION TO DISMISS OF COMMON CAUSE, ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS, BRIAN BEALS, PABLO MENDOZA, AND ALEJANDRA L. IBANEZ**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 5

ARGUMENT ............................................................................................................... 5

    I.   The United States' Demands Exceed the Statutory Authority of the CRA and Are Contrary To Law. ............................................................................................. 5

      A.   The United States' Demand Fails to Meet the CRA's Requirements. ............................. 6

      B.   Any Records Disclosed Under the CRA Should Be Redacted To Protect the Constitutional Rights of the Voter, So the Requested Relief Must Fail......................... 11

    II.  The United States Is Not Entitled To Summary Disposition and Its Motion To Compel Should Be Denied........................................................................................... 13

CONCLUSION........................................................................................................... 17

CERTIFICATE OF COMPLIANCE............................................................................ 19

CERTIFICATE OF SERVICE .................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers,*
   187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 1

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................. 5

*Becker v. United States,*
   451 U.S. 1306 (1981)............................................................................................ 15

*Bova v. United States Bank, National Association,*
   446 F. Supp. 2d 926 (S.D. Ill. 2006)................................................................... 10

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System,*
   603 U.S. 799 (2024).............................................................................................. 9

*Crook v. South Carolina Election Commission,*
   No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025)........................................... 13

*Denius v. Dunlap,*
   330 F.3d 919 (7th Cir. 2003) ................................................................................ 10

*Federal Deposit Insurance Co. v. Wentz,*
   55 F.3d 905 (3d Cir. 1995).................................................................................... 9

*General Electric Capital Corp. v. Lease Resolution Corp.,*
   128 F.3d 1074 (7th Cir.1997) .............................................................................. 5

*In re Coleman,*
   208 F. Supp. 199 (S.D. Miss. 1962),
   *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...................... 7

*Jones v. United States,*
   529 U.S. 848 (2000).............................................................................................. 11

*Kennedy v. Lynd,*
   306 F.2d 222 (5th Cir. 1962) ........................................................................ passim

*Niz-Chavez v. Garland,*
   593 U.S. 155 (2021).............................................................................................. 9

*Peters v. United States,*
   853 F.2d 692 (9th Cir. 1988) ............................................................................... 8

*Project Vote/Voting for America, Inc. v. Long,*
   682 F.3d 331 (4th Cir. 2012) .......................................................................... 12, 13

*Public Interest Legal Foundation v. Benson,*
    136 F.4th 613 (6th Cir. 2025) ............................................................... 8

*Public Interest Legal Foundation, Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ........................................................... 11, 13

*Public Interest Legal Foundation, Inc. v. Dahlstrom,*
    673 F. Supp. 3d 1004 (D. Alaska 2023) ............................................ 12

*Public Interest Legal Foundation, Inc. v. Matthews,*
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ................................................. 12

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections,*
    996 F.3d 257 (4th Cir. 2021) ............................................................. 12

*Sheetz v. County of El Dorado,*
    601 U.S. 267 (2024) ........................................................................... 13

*United States v. Orona-Ibarra,*
    831 F.3d 867 (7th Cir. 2016) ............................................................. 11

*United States v. Powell,*
    379 U.S. 48 (1964) ................................................................... 8, 15, 16

**Statutes**

5 U.S.C. § 552a ...................................................................................... 9

26 U.S.C. § 7604(a) ............................................................................. 16

52 U.S.C. § 20701 .................................................................................. 6

52 U.S.C. § 20703 .................................................................................. 7

52 U.S.C. § 20704 .................................................................................. 3

52 U.S.C. § 20705 ................................................................................ 16

52 U.S.C. § 20507 .................................................................... 3, 8, 10, 11

52 U.S.C. § 21083 ................................................................................ 10

52 U.S.C. § 21085 ................................................................................ 10

5 ILCS 179/10(b)(1) ............................................................................. 12

10 ILCS 5/1A-25 .................................................................................. 12

750 ILCS 61/11 .................................................................................... 12

iii

815 ILCS 530/5 ............................................................................................................ 12

Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994),
    codified at 18 U.S.C. § 2721 *et seq.*................................................................... 16

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002).................................. 16

Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat.
    3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014) ...................................... 16

Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974) ................................................ 16

**Other Authorities**

"Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER (last visited Dec. 9,
    2025) ...................................................................................................................... 14

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
    Voter Roll*, N.Y. Times, Sept. 9, 2025 ............................................................... 4, 15

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*,
    N.Y. Times Mag., Nov. 16, 2025.......................................................................... 4, 15

H.R. Rep. No. 86-956 (1959)......................................................................................................... 1

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice
    Department Requests for Voter Information,
    Brennan Center for Justice (updated Dec. 19, 2025) ............................................... 2

Press Release, U.S. Department of Justice, *Justice Department Sues Arizona and
    Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026)................................ 3

Press Release, U.S. Department of Justice, *Justice Department Sues Four Additional
    States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12,
    2025) ........................................................................................................................ 3

Press Release, U.S. Department of Justice, *Justice Department Sues Four States for
    Failure to Produce Voter Rolls* (Dec. 18, 2025)...................................................... 3

Press Release, U.S. Department of Justice, *Justice Department Sues Oregon and Maine
    for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025) ........................... 3

Press Release, U.S. Department of Justice, *Justice Department Sues Six Additional States
    for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025) ............................. 3

Press Release, U.S. Department of Justice, *Justice Department Sues Six States for Failure
    to Provide Voter Registration Rolls* (Sept. 25, 2025) ............................................. 3

Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976)...................... 14

U.S. Department of Justice, Civil Right Division, Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021).............................................................................................. 1

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................... 13

Fed. R. Civ. P. 12 ........................................................................................................... 5

Fed. R. Civ. P. 81 ......................................................................................................... 13

## INTRODUCTION

The United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using the civil rights laws as a pretext. Because the United States failed to disclose the basis and purpose of its request for the data, dismissal should be granted, and its attempt to summarily dispose of this case via an improper motion to compel should be rejected.

Congress has repeatedly legislated to ensure that all eligible Americans can participate in free, fair, and secure elections. As the U.S. Department of Justice ("DOJ") has explained, Title III of the Civil Rights Act of 1960 ("Title III" or "CRA"), the provision invoked here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., C.R. Div., Federal Law Constraints on Post-Election "Audits" (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) and H.R. Rep. No. 86-956, at 7 (1959)).

The federal government's demand for Illinois' unredacted voter file—which contains sensitive personal information including driver's license numbers and/or Social Security numbers from millions of Illinoisans—undermines the CRA's core purposes and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting voter access would only deter voter participation and undermine the right to vote. That is especially so here, where the United States has not fully and accurately set forth "the basis and the purpose" for its data request, as required by the very statute that it invokes. 52 U.S.C. § 20703. The Court should dismiss.

## BACKGROUND

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See*

1

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On July 28, 2025, DOJ sent a letter to the Executive Director of the Illinois State Board of Elections, Bernadette Matthews ("Director Matthews"), demanding an electronic copy of Illinois' entire statewide voter registration list, including "all fields." Pl.'s Mot. for Order to Compel, Ex. 1, Ltr. from Michael E. Gates to the Hon. Bernadette Matthews dated July 28, 2025, Dkt. No. 5-2 ("July 28 Letter"); Compl. ¶¶ 19–20. The July 28 Letter also propounded several questions regarding Illinois' voter registration and list maintenance procedures and requested that Illinois provide information about purported "registered voters identified as ineligible to vote" due to being non-citizens or due to a felony conviction. July 28 Letter, Dkt. No. 5-2 at 3–4. DOJ asked Illinois to respond within 14 days. *Id.*

On August 11, 2025, Director Matthews provided a redacted version of the registration list citing privacy provisions under both state and federal law. *See* Compl. ¶ 22. The redacted version excluded social security and driver's license numbers, information of registered voters who are victims of domestic violence, human trafficking, and other similarly protected groups, and telephone numbers and addresses for judges who have requested redaction of personal information. *See* Pl.'s Mot. for Order to Compel, Ex. 3, Letter from Marni M. Malowitz to Harmeet K. Dhillon dated September 2, 2025, Dkt. No. 5-2 at 11 & n.1 ("September 2 Letter").

Three days later, DOJ sent another letter, reiterating its demand for the full electronic voter file. Compl. ¶ 23. DOJ again stated that the production "must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Pl.'s Mot. for Order to Compel, Ex.

3, Letter from Harmeet K. Dhillon to the Hon. Bernadette Matthews dated Aug. 14, 2025, Dkt. No. 5-2 at 7 ("Aug. 14 Letter"). This time, DOJ also cited the Civil Rights Act of 1960 ("CRA") as authority for its request, and noted that the "purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 8. DOJ dismissed any potential privacy issues on the ground that the CRA prohibits DOJ from sharing the sought-after information directly with the public. *See id.* (citing 52 U.S.C. § 20704).

On September 2, 2025, Director Matthews sent a letter to DOJ refusing to provide an unredacted voter registration list. *See* September 2 Letter. The United States responded by filing this lawsuit, which is one of at least twenty-four similar suits seeking disclosure of sensitive voter data.[1] The United States concurrently filed a motion to compel the production of records—namely, "an electronic copy of the Illinois statewide Voter Registration to include each registrant's name, date of birth, address, and as required by HAVA, the last four digits of the registrant's social security number, driver's license/state identification number or the unique HAVA identifier. *See* Mot. to Compel, Dkt. No. 5 at 4.

But DOJ's request does not appear to relate to voter roll list maintenance under the NVRA, 52 U.S.C. § 20507, the statute invoked in the July 28 Letter. According to reporting, federal employees "have been clear that they are interested in a central, federal

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026), https://perma.cc/6QP2-8ZXC; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. One recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the Administration's aims in these cases:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Mot. to Intervene as Defs. at 5–6 & nn. 2–3. In its initial July 28 Letter to Executive Director Matthews, and in letters to other states requesting the same private voter data, DOJ requested information about how election officials, among other things, identify and remove duplicate registrations; and verify that registered voters are not ineligible to

4

vote, such as due to a felony conviction or lack of citizenship.[2] In other states, DOJ also requested information concerning the processing of vote-by-mail applications.[3]

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court need not accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," survive a motion to dismiss. *Id*. at 678–79. In assessing a motion for failure to state a claim, courts may take judicial notice of matters of public record, orders, items appearing in the record, and exhibits attached to the complaint. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir.1997).

## ARGUMENT

I.     **The United States' Demands Exceed the Statutory Authority of the CRA and Are Contrary To Law.**

The United States' demand for Illinois' full, unredacted voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of

---

[2] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

[3] *See id.*

civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"); *see also Pa. State Conf. of NAACP Branches v. Sec'y of Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024) (explaining that Congress enacted the CRA to rein in "efforts to deny the right to vote," including "arbitrary registration procedures" to qualify to vote) (cleaned up). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Illinois' full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in support of its records requests. *Second*, any records should be redacted to vindicate the privacy and constitutional rights of Illinois voters. Nothing in the CRA prevents the appropriate redaction of the sensitive personal information of voters. Plaintiff, therefore, is not entitled to its requested relief.

### A. The United States' Demand Fails to Meet the CRA's Requirements.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made

available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id*. § 20703. "This demand shall contain a statement of *the basis and the purpose therefor*." *Id*. (emphasis added).

The federal government's requests fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id*. The Complaint offers only the conclusory allegation: "The written demand 'contain[ed] a statement of the basis and the purpose therefor.'" Compl. ¶ 27 (citation omitted). The July 28 Letter does not mention the CRA at all. *See* July 28 Letter, Dkt. No. 5-2 at 2–5. And the August 14 Letter—which is the first to mention the CRA—likewise includes only a bare allegation that the purpose is to "assess [Illinois'] compliance with the statewide [voter registration list] maintenance provisions of the [NVRA]." August 14 Letter, Dkt. No. 5-2 at 7. Neither the Complaint nor the letters allege adequate evidence of anomalies or anything amiss with Illinois' list maintenance.

Contemporaneous case law immediately following Title III's enactment shows that the "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law and the "purpose" explains how the requested records would help determine if there is a violation. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III have consistently been treated as distinct concepts. *See id*.; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom*., *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

Even if the United States had provided a proper "basis" for its demand—and it did not—it fails to explain any connection between its purported "purpose" and the request for the full and unredacted voter file. It does not explain why unredacted voter files are necessary to determine whether Illinois has "conduct[ed] a general program that makes a reasonable effort to remove the

names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507; Compl. ¶ 12. And in fact, such unredacted files are not necessary: A single snapshot of a state's voter list does not and could not provide enough information to determine if the state has made a "reasonable effort" to remove ineligible voters under Section 8 of the NVRA. Compl. ¶ 12; 52 U.S.C. § 20507(a)(4)(A)–(B). The NVRA and HAVA both leave the mechanisms for conducting list maintenance within the State's discretion. *See* 52 U.S.C. § 20507(a)(4), (c)(1); *id*. §§ 21083(a)(2)(A), § 21085. The procedures carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were the United States to use voter file data to identify voters who had moved or died on Illinois' voter list at a single point in time, that would not amount to Illinois failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible").

The basis and purpose requirements are critical safeguards that prevent the statute from being used as a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. In the context of administrative subpoenas, and specifically in assessing an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose," *United States v. Powell*, 379 U.S. 48, 57 (1964), and that such subpoenas "may not be so broad so as to be in the nature of a 'fishing expedition,'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). Such purpose requirements ensure that the information

8

sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation via administrative subpoena).

As such, even if some other voting records or some portion of the voter file were necessary to investigate Illinois' NVRA list maintenance compliance, *see* July 28 Letter, Dkt. No. 5-2 at 2, the United States has not provided any justification for why the full unredacted voter file is necessary. For decades, DOJ has neither sought nor required a full, unredacted voter file in its NVRA compliance investigations. The United States' failure to articulate the basis and the purpose for its demand is another reason it is insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that the federal government did not disclose the main basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies for unlawful purposes. *See supra* 3–5. As Congress has never authorized the creation of such a database, its creation would violate the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

The federal government's failure to fully and accurately provide this information is fatal. Section 303 requires a statement of "the basis and the purpose" of a records request, and by twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the actual* basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). This is yet another ground for dismissal.

Setting aside this fatal deficiency, compliance with the NVRA and HAVA cannot be the true basis and purpose for these data requests based on the United States' own more recent statements to States in connection with the requests. The United States has recently sought for a number of States to sign a now-public memorandum of understanding ("MOU") in connection with its requests for statewide voter files. *See* Ex. 7, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU"); *see also* Ex. 8, December 4 Transcript Excerpts from *United States v. Weber*, No. 25-cv-09149, at 72–73, 90 (DOJ attorney discussing MOU). Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, this MOU runs directly afoul of those statutes.[4]

The NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), and the NVRA includes safeguards to protect voters from erroneous removal. But the MOU that the government proposed indicates multiple contemplated violations of those statutory requirements. First, it seeks to place authority to identify supposed ineligible voters in the hands of the federal government, contrary to statutory text, *id*. § 21085 (methods of complying with HAVA "left to the discretion of the State"). MOU at 2, 5. Second, its substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a way that would violate multiple protections of the NVRA, 52 U.S.C. § 20507. This now-public MOU shows that the United States' supposed purpose is not in compliance with federal law but aggrandizes authority to a federal agency in ways contrary to federal law.

---

[4]    This Court can take judicial notice of the MOU as a government document produced by DOJ. *See, e.g.*, *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *see also Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (collecting cases where courts took judicial notice of public records and government records).

**B.  Any Records Disclosed Under the CRA Should Be Redacted To Protect the Constitutional Rights of the Voter, So the Requested Relief Must Fail.**

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction, which is not barred under Title III. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See United States v. Orona-Ibarra*, 831 F.3d 867, 876 (7th Cir. 2016) (applying "[t]he well-established canon of constitutional avoidance," which instructs that "'[w]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter'" (quoting *Jones v. United States*, 529 U.S. 848, 857 (2000))).

Federal courts have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–

11

68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Indeed, a court in this district previously recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), clarified on denial of reconsideration, No. 20-cv-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022). Other courts have consistently reached the same conclusion. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023). Illinois provides express protections from disclosure for social security numbers, driver's license numbers, and contact information of participants in the confidential address programs. *See* 750 ILCS 61/11; *see also* 5 ILCS 179/10(b)(1); 815 ILCS 530/5; 10 ILCS 5/1A-25(b), (c).

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *See, e.g., Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." *Id.* The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason

12

of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the NVRA and Title III must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Illinois voters and civic groups is present here. *See* Mot. to Intervene, Ex. 2, Decl. of Elizabeth J. Grossman ¶¶ 12–15; Ex. 3, Decl. of Lawrence Benito ¶¶ 10–17; Ex. 4, Decl. of Brian Beals ¶¶ 8–12; Ex. 5, Decl. of Pablo Mendoza ¶ 7; Ex. 6, Decl. of Alejandra L. Ibañez ¶¶ 8–9.

The same privacy and constitutional concerns warranting redactions under the NVRA apply equally to requests under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledge that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as the redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.[5]

## II.    The United States Is Not Entitled To Summary Disposition and Its Motion To Compel Should Be Denied.

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the claim under Title III here. *See* Fed. R. Civ. P. 81. Ignoring these standards, the United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil

---

[5] The United States cites *Crook v. S.C. Election Comm.*, No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025), a non-binding decision which briefly discussed Title III in dicta. Mot. to Compel Br. at 16–17. *Crook* did not address Proposed Intervenors' arguments about the basis-and-purpose requirement or the need to redact sensitive voter information, so carries little persuasive weight.

Procedure by creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General'" that "a written demand for Federal election records and papers covered by the statute [was made], explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Mem. in Supp. of United States' Request to Compel Prod. of Recs., Dkt. No. 5 ("Mot. to Compel Br.") at 6 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–226 (5th Cir. 1962)); *see also* Compl. ¶¶ 1–4. This is contrary to the Federal Rules, not contemplated by statute, and rests on misreading a single set of non-binding cases decided sixty plus years ago, in a different circuit and a drastically different context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* Mot. to Compel Br.; *see also* Compl. ¶¶ 1–4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue." Mot. to Compel Br. at 5 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[6] In these states, election officials and others, including judges, notoriously used every possible means to block Black Americans from registering to vote.[7] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual

---

[6] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 9, 2025).

[7] *See generally*, *e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[8]

By contrast, here, more than sixty years later, the context of *this* request could not be more different. The United States has invoked the CRA for unprecedented purposes, to make sweeping demands for extensive voter data with no showing or claim of legal deficiencies or violations of rights, while making unprecedented demands for sensitive personal information—amid both the United States' own MOU and extensive reporting suggesting that the stated basis and purpose are pretextual, and that the data at issue is in fact being sought for unlawful ends.[9]

Nothing in Title III insulates the sufficiency of the requirement for a "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation and quotation marks omitted); *see also Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena). Just two years after *Lynd*, the Court held that

---

[8] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging that while "[t]he right of free examination of official records is the rule" under Title III there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

[9] *See, e.g.*, Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data[.]"), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.").

Even in *Lynd*, the court, in explaining its findings, noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The court also noted that the CRA authorizes jurisdiction by "appropriate process" to compel production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[10] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated that the "duty to issue protective orders" would arise for

---

[10] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

16

certain CRA records requests, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of Illinois voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required stated basis and purpose, would go even further than *Lynd* did—in a context where, very much unlike there, the basis and purpose are not inarguably clear but appear pretextual. The court presiding over the federal government's similar action in California has already recognized that the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

For all these reasons, the United States' Motion to Compel should be denied and the Complaint dismissed.

Dated: January 9, 2026                      Respectfully submitted,

                                            */s/ Kevin Fee*
                                            Kevin Fee
Ethan Herenstein                            Rebecca Glenberg
Sophia Lin Lakin                            Priyanka Menon
Theresa J. Lee                              ROGER BALDWIN FOUNDATION OF
Will Hughes                                 ACLU, INC.
AMERICAN CIVIL LIBERTIES UNION              150 North Michigan Avenue
FOUNDATION                                  Chicago, IL 60601
125 Broad St., 18th Floor                   (312) 201-9740
New York, NY 10004                          kfee@aclu-il.org
(212) 549-2500

17

eherenstein@aclu.org
slakin@aclu.org
tlee@aclu.org
whughes@aclu.org

Patricia Yan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. NW
Washington, DC 20001
(202) 457-0800
pyan@aclu.org

rglenberg@aclu-il.org
pmenon@aclu-il.org

Aneel Chablani
Ami Gandhi
CHICAGO LAWYERS' COMMITTEE FOR
CIVIL RIGHTS
25 E. Washington St., Ste. 1300
Chicago, IL 60602
(312) 888-4193
achablani@clccrul.org
agandhi@clccrul.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5,692 words and therefore complies with the type

volume limitation of Civil LR 7.1.

*/s/ Kevin Fee*
Kevin Fee

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on January 9, 2026.

/s/ *Kevin Fee*
Kevin Fee