## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

BERNADETTE MATTHEWS, *in her official capacity as Executive Director of the State Board of Elections for the State of Illinois,*

    *Defendant*.

Case No. 3:25-cv-3398



FILED
3/12/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## PROPOSED INTERVENORS THE ILLINOIS AFL-CIO, ILLINOIS ALLIANCE FOR RETIRED AMERICANS, AND ILLINOIS FEDERATION OF TEACHERS' PROPOSED MOTION TO DISMISS

Proposed Intervenor-Defendants the Illinois AFL-CIO, Illinois Alliance for Retired Americans, and Illinois Federation of Teachers move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the supporting memorandum filed alongside this Motion, Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**WHEREFORE**, Proposed Intervenor-Defendants request that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 20, 2026

/s/ *Sarah Grady*
Sarah Grady
*Counsel for Proposed-Intervenors*

Sarah Grady
John Hazinski
Adam Smith
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
sarah@kaplangrady.com
Tel: (312) 852-2184

Elisabeth Frost
Katie Chamblee-Ryan
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
kchambleeryan@elias.law
tmengmorrison@elias.law
Tel: (202) 968-4490

*Counsel for Proposed-Intervenors*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | |
| BERNADETTE MATTHEWS, *in her official capacity as Executive Director of the State Board of Elections for the State of Illinois*, | Case No. 3:25-cv-3398 |
| *Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF ILLINOIS AFL-CIO, ILLINOIS ALLIANCE FOR RETIRED AMERICANS, AND ILLINOIS FEDERATION OF TEACHERS' PROPOSED MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

I.    Federal law leaves the authority to administer voter registration lists with the states. ................................................................................................. 2

II.   DOJ has undertaken an unprecedented effort to amass voter data held by the states. ........................................................................................................... 4

III.  DOJ filed suit to attempt to compel Illinois' unredacted voter registration list. ................................................................................................................. 5

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

I.    DOJ relies on a single, out-of-circuit case that is both distinguishable and has been superseded by intervening precedent. ........................................... 7

II.   DOJ failed to allege that it has properly made a Title III demand. ......................... 9

III.  Title III does not grant DOJ general audit power over state elections data. .......... 11

IV.   Title III does not preempt Illinois's privacy protections. .................................... 14

V.    DOJ's failure to comply with the Privacy Act independently requires dismissal. ............................................................................................................ 16

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*188 LLC v. Trinity Industries, Inc.*,
   300 F.3d 730 (7th Cir. 2002) ............................................................. 9

*Am. C.R. Union v. Phila. City Comm'rs*,
   872 F.3d 175 (3d Cir. 2017) ............................................................ 3, 5

*Arizona v. Inter Tribal Council of Ariz.*,
   570 U.S. 1 (2013) ............................................................................. 2

*Arizona v. United States*,
   567 U.S. 387 (2012) ........................................................................ 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................... 6

*Bell v. City of Country Club Hills*,
   841 F.3d 713 (7th Cir. 2016) ........................................................... 13

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
   854 F.3d 683 (D.C. Cir. 2017) ...................................................... 9, 10

*CFPB v. Source for Pub. Data, L.P.*,
   903 F.3d 456, 458, 460 (5th Cir. 2018) ........................................ 9, 10

*Def. Sec. Co. v. First Mercury Ins. Co.*,
   803 F.3d 327 (7th Cir. 2015) ............................................................ 9

*FTC v. Mandel Brothers, Inc.*,
   359 U.S. 385 (1959) ........................................................................ 13

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018) ....................................................................... 3, 4

*In re Admin. Subpoena*,
   *No. 25-1431-019* 800 F. Supp. 3d 229 (D. Mass. 2025) .................... 10

*In re Subpoena*,
   *No. 25-1431-014* No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ............. 10

*Jud. Watch, Inc. v. Lamone*,
   399 F. Supp. 3d 425 (D. Md. 2019) .................................................. 16

*Kaminski v. Elite Staffing, Inc.*,
   23 F.4th 774 (7th Cir. 2022) ............................................................. 6

*Kansas v. Hendricks*,
    521 U.S. 346 (1997) ................................................................................ 12

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ................................................... *passim*

*King v. Burwell*,
    576 U.S. 473 (2015) ................................................................................ 11

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
    No. 25-cv-3501 (SLS), 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ........................ 17, 18

*Londrigan v. FBI*,
    670 F.2d 1164 (D.C. Cir. 1981) ............................................................. 16

*McHenry County v. Kwame Raoul*,
    44 F.4th 581 (7th Cir. 2022) ................................................................. 15

*Pippinger v. Rubin*,
    129 F.3d 519 (10th Cir. 1997) ............................................................. 18

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ................................................... 16

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) ............................................................... 16

*Smith v. Doe*,
    538 U.S. 84 (2003) ................................................................................. 12

*Territory of Alaska v. Am. Can Co.*,
    358 U.S. 224 (1959) ............................................................................... 13

*Twentieth Century Music Corp. v. Aiken*,
    422 U.S. 151 (1975) ............................................................................... 14

*United States v. Lewis*,
    411 F.3d 838 (7th Cir. 2005) ............................................................... 19

*United States v. Oregon*,
    No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................... *passim*

*United States v. Powell*,
    379 U.S. 48 (1964) ............................................................................. 7, 8

*United States v. Weber*,
    No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ........... *passim*

*Util. Air Regul. Grp. v. E.P.A.*,
   573 U.S. 302 (2014) ............................................................................................ 1

*Voter Reference Found., LLC v. Torrez*,
   160 F.4th 1068 (10th Cir. 2025) ........................................................................ 16

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ..................................................................................... 11, 14

**Constitutional Provisions and Statutes**

U.S. Const. art. I, § 4, cl. 1 ...................................................................................... 2

5 U.S.C. § 552a .......................................................................................... 16, 17, 18

42 U.S.C. §§ 1971–1974 (1958 & Supp. IV) ......................................................... 12

52 U.S.C. § 20507 ...................................................................................................... 3

52 U.S.C. § 20701 ............................................................................................... 12, 13

52 U.S.C. § 20703 ................................................................................................. 9, 12

52 U.S.C. § 21083 ................................................................................................. 3, 16

52 U.S.C. § 21085 ...................................................................................................... 3

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 6

82 Fed. Reg. 24147 (May 25, 2017) ....................................................................... 19

*Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610 (Aug. 11, 2003) .......................... 19

*Privacy Act of 1974; System of Records*, 70 Fed. Reg. 43904 (July 29, 2005) .......................... 19

**Other Authorities**

106 Cong. Rec. 5296, H.R. 8601 (86th Cong.) (Mar. 11, 1960) ................................. 13

H.R. Rep. No. 107-329 (2001) .................................................................................. 3

H.R. Rep. No. 86-956 (1959) ................................................................................... 13

Pub. L. 86-449, 74 Stat. 86 (1960) .......................................................................... 13

## INTRODUCTION

In recent months, the Department of Justice has filed a series of lawsuits against two dozen states (including this one, against Illinois), claiming the extraordinary and unprecedented power to demand—and judicially compel—any state voter registration data, at any time, for any purpose, without any meaningful review. On that premise, DOJ has demanded that Illinois (and many other states) turn over its complete, unredacted voter registration list. DOJ claims it makes this demand to determine if the state is complying with the National Voter Registration Act (NVRA) and Help America Vote Act (HAVA)—federal laws related to the maintenance of voter registration lists. But those laws not only assign the responsibility for voter list maintenance expressly to the states, they broadly defer to the states as to *how* to conduct that maintenance, as well. Nor is there any basis in any law that authorizes the fishing expedition that DOJ effectively admits it is on.

Indeed, although DOJ claims to be "investiga[ting]" the NVRA and HAVA, Compl. ¶ 9, it alleges no basis whatsoever to suspect that Illinois is violating either of those statutes, nor does it bring any claims under them. Instead, its complaint alleges a single claim under Title III of the Civil Rights Act, which DOJ contends gives it sweeping authority to demand any voter data at any time for any purpose. But it falters at the outset, failing to comply with Title III's express mandate that any demand made under its auspices identify both its basis and purpose. DOJ failed to state *any basis* for its demand to Illinois *at all*. And the purpose it asserted—to ensure compliance with the NVRA and HAVA—is not proper under Title III, which was enacted to enable DOJ to investigate *violations of federal voting rights* so as to *protect* those rights. It does not give DOJ a blank check to audit state election data whenever it wishes, for any reason at all.

As the Supreme Court has recognized, when "an agency claims to discover in a long-extant statute an unheralded power," courts "typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014). Here, that skepticism is

amply warranted. And because DOJ's demand fails to comply with Title III, both in terms of its plain text and its clear contextual purpose, its complaint must be dismissed.

There are other independent reasons why it must be dismissed, as well. Illinois has already given DOJ its voter list, redacting only private, sensitive voter information protected by state law. That private data is the *only* information in dispute here. But, as even the case upon which DOJ relies makes clear, Title III is intended to reach *only* "public records," *not* "confidential, private papers and effects." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962). Nor does Title III (nor any other federal law) preempt state protections for private voter data. Finally, DOJ also has failed to satisfy the requirements of the federal Privacy Act, which are necessary before it may obtain the information it seeks here.

Any one of these defects warrants dismissal. And indeed, every court that has ruled on motions to dismiss DOJ's parallel voter-data suits thus far has granted them. *See, e.g.*, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026). This Court should do the same.

## BACKGROUND

### I.    Federal law leaves the authority to administer voter registration lists with the states.

The Elections Clause of the Constitution empowers the states in the first instance to regulate and administer elections. U.S. Const. art. I, § 4, cl. 1. While Congress may preempt state law, that power goes only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 9 (2013). And while Congress has enacted federal laws concerning voter registration in recent decades, these laws sit "atop state voter-registration systems," *id.* at 5, and confirm that the power to compile and maintain voter registration lists remains with the states.

As relevant here, Congress enacted the National Voter Registration Act (NVRA) in 1993

to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). It makes states the custodians of voter lists, *see id.*, and by its plain terms, charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining those lists, *id.* § 20507(c)–(g), and making "reasonable effort[s]" at list maintenance, subject to strict safeguards to protect against removal of lawful voters, *see id.* §§ 20507(a)(4), 21083(a)(4)(A).

Congress enacted the Help America Vote Act (HAVA) in the wake of the 2000 elections "to help improve the equipment used to cast votes, the way registration lists are maintained, and how polling operations are conducted." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 180 (3d Cir. 2017) (internal citation omitted). It requires states to create a "computerized statewide voter registration list," 52 U.S.C. § 21083(a)(1)(A), and to "perform list maintenance" consistent with the NVRA's "reasonable efforts" provision, *id.* § 21083(a)(2)(A). HAVA is explicit that this list is to be "defined, maintained, and administered at the State level," *id.* § 21083(a)(1)(A), and directs that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State," *id.* § 21085. These choices were deliberate; indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. **The dispersal of responsibility for election administration *has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.*** This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001) (emphases added).

3

Consistent with that principle, Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the NVRA and HAVA, which purposefully operate through the states themselves.

## II.    DOJ has undertaken an unprecedented effort to amass voter data held by the states.

Last spring, DOJ began an unprecedented campaign to obtain state voter files, including sensitive and personal information about each voter. It has sent demands to 47 states and D.C., and plans to make similar demands on all 50.[1] The vast majority of states that have received such demands have declined to turn over sensitive personal information that is typically protected by state law. DOJ has since sued 24 states and D.C.[2]

On July 28, 2025, DOJ sent the Illinois State Board of Elections' Executive Director, Bernadette Matthews, a letter demanding, among other things, Illinois' "statewide voter registration list." DOJ Mot. to Compel, Ex. 1 (July 28 Ltr.) at 2, Dkt. No. 5-2 (Attachment A). DOJ made clear that the produced voter list should "include *all fields* contained within the [registration] list." *Id*. (emphasis added). Executive Director Matthews responded on August 11 by producing a redacted version of the state's voter registration list, and citing privacy provisions under state law as well as the Privacy Act, the Driver's License Protection Act, and the Social Security Fraud Prevention Act. Compl. ¶ 22.

After receiving the redacted list, DOJ sent a second letter to Executive Director Matthews on August 14, reiterating its request for "*all fields*" including "the registrant's full name, date of

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9, 2026), https://perma.cc/DY3U-8ZFH; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." DOJ Mot. to Compel, Ex. 2 (Aug. 14 Ltr.) at 1, Dkt. No. 5-2 (Attachment B). Executive Director Matthews again reiterated the state's privacy protections and stated that she was unaware of any authority suggesting that federal law compelled the information DOJ sought. DOJ Mot. to Compel, Ex. 3 (Sept. 2 Ltr.) at 1–3, Dkt. No. 5-2 (Attachment C). She concluded: "If there is any additional information the Department can provide regarding authority for its request, please provide that so we may review." *Id.* at 4. DOJ did not respond. Instead, it filed this lawsuit.

**III. DOJ filed suit to attempt to compel Illinois' unredacted voter registration list.**

DOJ filed its complaint on December 18, 2025. *See generally* Compl. DOJ does not contend that it aims to investigate any potential violations of federal voting rights. *See id.* Instead, the Complaint alleges that DOJ seeks this information to assess Illinois' compliance with its list-maintenance obligations under the NVRA and HAVA. *Id.* ¶¶ 9–15. Yet DOJ brings no claim under either of those statutes. Its sole cause of action is asserted under Title III of the Civil Rights Act. *Id.* ¶¶ 16–18, 26–28.

This lawsuit comes on the heels of a series of September 2025 suits against other states seeking the same information, except in those cases, DOJ also explicitly asserted claims under the NVRA and HAVA.[3] However, in the subsequent 17 lawsuits that it has since filed against states seeking the same relief (including in this one against Illinois), DOJ has abandoned its NVRA and

---

[3] *See* Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 2:25-cv-1481 (W.D. Pa. Sep. 25, 2025).

HAVA claims.[4] The courts that have adjudicated motions to dismiss thus far have summarily dismissed DOJ's NVRA and HAVA claims, noting that the NVRA's disclosure provision does not provide a basis for seeking the information that DOJ demands, and that HAVA has no disclosure provision at all—"end[ing] the inquiry." *Weber*, 2026 WL 118807, at *15; *see also Oregon*, 2026 WL 318402, at *6–7. Now DOJ has jettisoned those claims and proceeds under Title III alone, while still relying on its discredited interpretation of the NVRA and HAVA. *See* Attach. A (July 28 Ltr.).

## LEGAL STANDARD

A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At this stage, the Court accepts all well-pleaded factual allegations as true, but need not accept "legal conclusions" or "threadbare recitals" of the elements supported only by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a complaint to survive, the "[f]actual allegations must . . . raise a right to relief above the speculative level." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[4] *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-1193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 12, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 1:25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-cv-00042 (E.D.V.A. Jan. 16, 2026).

## ARGUMENT

DOJ brings a single claim under Title III of the Civil Rights Act. But DOJ does not allege that it has satisfied Title III's threshold requirements. Even if it had, Title III is a voting rights enforcement tool, not an unrestrained right to demand state voter data for any purpose, at any time, without any scrutiny. Moreover, the only information still in dispute here is sensitive personal data that Illinois law protects. Title III does not bar Illinois from redacting that data, and federal law does not preempt Illinois' protections. Separately, DOJ has not complied with the federal Privacy Act, which it must in order to obtain and maintain the data it seeks (even if it could demand it). Any one of these deficiencies requires dismissal.

## I.    DOJ relies on a single, out-of-circuit case that is both distinguishable and has been superseded by intervening precedent.

DOJ alleges that Title III grants it the "sweeping power" to obtain any state voting records upon demand, no questions asked. *See* Compl. ¶¶ 2–4. It contends that once it makes that demand, the court may not review it. *Id.* ¶ 4. DOJ's support for this claim is a decades-old, out-of-circuit case: *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). *See* Compl. ¶¶ 2–4. There, the court found that Title III "creates a special statutory proceeding . . . [that] does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Lynd*, 306 F.2d at 225–26. And although, on its face, Title III requires the Attorney General to provide the "basis and the purpose" of its demand, the Fifth Circuit in *Lynd* concluded that a court has no power "to ascertain the factual support for, or the sufficiency of" that statement. *Id.* at 226.

*Lynd* was never binding on this Court, but it has not been good law on this point even in the Fifth Circuit for over 60 years. This is because, two years after the Fifth Circuit decided *Lynd*, the Supreme Court rejected its conclusion that demands under statutes like Title III are insulated from judicial review. In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court considered

a statute that—using language identical to that in Title III—confers jurisdiction on district courts "by appropriate process to compel" compliance with federal document demands. *Id*. at 52 n.10. The Court concluded that, because the statute did not specify any other "appropriate process," "the Federal Rules of Civil Procedure apply," and courts may "inquire into the underlying reason for" the demand. *Id*. at 52, 58 & n.18. Thus, *Powell* "squarely rejects" *Lynd*'s reasoning. *Oregon*, 2026 WL 318402, at *8 & n.15 (noting DOJ has not been able to cite *any* binding authority that supports its position "nor even any cases which apply *Lynd* . . . within the last sixty years").

It is also notable that *Lynd* emphasized that "[t]he record establishes without contradiction that the . . . demand [in that case] was made and that it adequately stated the basis and purpose therefor." 306 F.2d at 229; *see also id*. at 229 n.6 (quoting demand, which stated it "is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction," and "[t]he purpose of this demand is to examine the aforesaid records in order to ascertain whether or not" such violations of federal law have in fact occurred). The court emphasized that "one of the clearest purposes of" Title III is to examine relevant records "relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights." *Id*. at 228. The court also underscored that it was of "great importance" that, in that case, at issue were "*not* . . . confidential, private papers and effects," but only "public records which ought ordinarily to be open to legitimate reasonable inspection," *id*. at 231 (emphasis added), and that, if there were "a genuine dispute" as to whether specific information "comes within" the reach of Title III "the Court would, of course, be open for its determination," *id*. at 226.

Here, in contrast, (1) there *is* a dispute as to whether DOJ adequately stated the basis and purpose for its demand; (2) the demand is laser focused on private, confidential information, not

records that ought ordinarily be open to inspection; and (3) the parties strongly dispute whether the information demanded does in fact come within the reach of Title III. Thus, under *Powell* (but arguably even under *Lynd*, too), the Court is not only empowered to but has the duty to determine whether DOJ's demand does in fact comply with the requirements of the statute it invokes. *See CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458, 460 (5th Cir. 2018) (explaining an agency's authority to demand documents and information "is a creature of statute," and, as such, it "must comply with statutory requirements"); *see also CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 689, 690 (D.C. Cir. 2017).

## II.    DOJ failed to allege that it has properly made a Title III demand.

Although DOJ purports to ground its authority in the text of Title III, *see* Compl. ¶¶ 1–2, it ignores the text's explicit requirements that any demand for records under its authority "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). This requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9; *see also Oregon*, 2026 WL 318402, at *9. Because DOJ does not sufficiently allege it satisfied these requirements, its complaint must be dismissed.

DOJ's demand—set forth in its August 14 letter—states no "basis" at all, much less identifies "what conduct [DOJ] believes constitute[d] an alleged violation" of federal law.[5] *Source*

---

[5] The complaint baldly asserts that the letter *did* include "a statement of the basis" for the demand—without explaining what the basis might be. Compl. ¶ 27 (quoting 52 U.S.C. § 20703) (alteration in original). This Court need not accept that conclusory assertion. *See Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015). Instead, it may examine the letter itself, which plainly fails to identify a basis for the demand. *See* Attach. A (July 28 Ltr.) & Attach. B (Aug. 14 Ltr.); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (quotations omitted).

*for Pub. Data*, 903 F.3d at 458–59; *see* Attach. B (Aug. 14 Letter). That omission alone is fatal. Courts do not enforce agencies' investigative demands when they fail to "comply with statutory requirements." *Source for Pub. Data*, 903 F.3d at 460; *see also, e.g.*, *ACICS*, 854 F.3d at 689 (same). And courts considering parallel cases that DOJ has brought against other states demanding private voter data have dismissed its complaints on that ground. *See Oregon*, 2026 WL 318402, at *9 (dismissing DOJ's complaint in part because its demand did not include "a factual basis for investigating a violation of a federal statute"); *Weber*, 2026 WL 118807, at *9 (holding a proper demand under Title III requires DOJ to put forward "specific, articulable facts pointing to the violation of federal law").

DOJ's stated purpose for its demand, "to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA," Attach. B at 2, does not suffice under Title III. A "purpose" cannot be valid unless it actually falls within the ambit of Title III's authority. As the Oregon court explained in dismissing DOJ's parallel case filed against that state, "[i]f *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function." *Oregon*, 2026 WL 318402, at *9. In other contexts, courts have likewise rejected investigative demands premised on purposes beyond the statute's grant of authority. *See*, *e.g.*, *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena seeking information that had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme). Title III authorizes DOJ to enforce federal voting

protections—not to supervise state list-maintenance procedures. *See infra* at Section III. DOJ cannot satisfy the statute by reciting a purpose untethered from the authority Congress conferred.

### III.    Title III does not grant DOJ general audit power over state elections data.

Even if DOJ had facially complied with Title III's requirements that it state its basis and purpose in its demand, the law does not grant the authority DOJ asserts. To insist otherwise, DOJ purports to rely on Title III's text. But in doing so, it ignores both the language of Title III and its statutory framework—staking its claim on certain phrases while avoiding others. That is not how statutory interpretation works. As the Supreme Court has repeatedly admonished, courts "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010)). Textual analysis therefore requires reading the words "in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

In particular, when an agency claims sweeping statutory authority, courts do not assume that Congress means "to confer the power the agency has asserted" simply because an isolated phrase can bear that reading. *West Virginia v. EPA*, 597 U.S. 697, 721 (2022); *see also Oregon*, 2026 WL 318402, at *9 (quoting *West Virginia*, 597 U.S. at 721, for same). Instead, consistent with separation-of-powers principles, courts examine the statute as a whole to determine whether Congress in fact granted the authority the agency claims. *Id.* Applying that rule, courts have rejected expansive constructions that had "a colorable textual basis" but strained the statute's structure and design. *See West Virginia*, 597 U.S. at 721–23 (collecting cases).

Here, the statutory framework confirms that Title III creates an enforcement tool that enables DOJ to investigate potential violations of federal voting rights law—not a general review

power over state election systems. Congress codified Title III in the chapter titled "Elective Franchise," alongside the substantive voting protections it had enacted three years earlier in the Civil Rights Act of 1957. *See* 42 U.S.C. §§ 1971–1974 (1958 & Supp. IV).[6] Read within that structure, Title III functions as an enforcement mechanism designed to protect federal voting rights—not a roving mandate to supervise state election regulation. *See Smith v. Doe*, 538 U.S. 84, 85 (2003) ("[F]ormal attributes of legislative enactment, such as the manner of its codification . . . are probative of the legislature's intent"); *Kansas v. Hendricks*, 521 U.S. 346, 352 (1997) (interpreting statute based on where it was originally codified).

The language of Title III tracks its structure. It directs states to preserve records "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. Those categories are keyed to the substantive guarantees codified alongside it, which prohibit deprivations of "the opportunity to register to vote," including "registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." 42 U.S.C. § 1971(a)–(e) (1958 & Supp. IV). The parallel is deliberate: the statute protects against barriers to voting, and Title III ensures the preservation of records necessary to investigate and remedy violations of those protections.

Title III's demand provision—requiring a "basis" and a "purpose" for any records demand—reinforces that design. 52 U.S.C. § 20703. The "basis" and "purpose" requirement is consistent with a rights-enforcement tool designed for discrete investigations of potential violations. But it makes little sense if Title III confers freestanding access to state election data for

---

[6] Title III was later recodified in Title 52 of U.S. Code as part of a non-substantive reorganization of election-related statutes. *See* Editorial Reclassification of Title 52 U.S.C.A, 52 U.S.C.A. Disp Table (stating that provisions were "editorially transferred" to from titles 2 and 42 to Title 52).

any purpose or no purpose at all. *See FTC v. Mandel Brothers, Inc.,* 359 U.S. 385, 389 (1959) (stating that courts must read statutes to "fit, if possible, all parts into a harmonious whole").

Finally, the text and structure of Title III neatly align with its legislative history.[7] Title III was passed specifically to facilitate voting rights investigations—filling a specific need that was preventing the enforcement of voting rights laws. *See* Pub. L. 86-449, 74 Stat. 86, 88–89 (1960) (now codified at 52 U.S.C. §§ 20701–06); 106 Cong. Rec. 5296, H.R. 8601 (86th Cong.) (Mar. 11, 1960); *see also id.* at 5309 (Representative Addonizio stating: "Title III . . . does no more than facilitate investigations regarding denials of the right to vote"). Its purpose was tied explicitly to right-protection: "to provide a more effective protection of the right of all qualified citizens to vote." H.R. Rep. No. 86-956 at 7 (1959), 1959 WL 3581 at *1944.

Moreover, when Title III was enacted, there was nothing like the modern federal list maintenance statutes now found in NVRA and HAVA. *See supra* at 2–4. Those statutes were enacted much later, for different purposes. *See id.* And it was not until HAVA was enacted in 2002 that federal law required states to ask for driver's license numbers or Social Security numbers on voter registration forms. *See* 52 U.S.C. § 21083(a)(5)(A)(i). The Congress that enacted Title III could not have intended it to require disclosure of such private information, or believed that it was relevant or necessary to conduct the sort of investigations that Title III was enacted to facilitate.[8] And because those regulatory statutes did not exist in 1960, Congress similarly had no reason to

---

[7] Courts may take judicial notice of legislative history and therefore may consider it on a motion to dismiss. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959); *see also Bell v. City of Country Club Hills*, 841 F.3d 713, 716 n.1 (7th Cir. 2016) ("Courts may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment.") (internal quotations omitted).

[8] For that same reason, the court in *Lynd* had no reason to consider whether turning over all of the data that DOJ requested in that case would also mean turning over private voter data similar to that DOJ demands here.

cabin Title III with language distinguishing between rights-enforcement investigations and regulatory supervision.

Thus, to the extent the language in Title III is broad, it reflects a broad grant of power *to investigate violations of federal voting rights*—not to enforce a regulatory scheme that would not exist for another three decades. DOJ offers nothing to suggest otherwise. Indeed, even *Lynd* recognizes that Title III was intended for voting rights enforcement. *See* 306 F.2d at 228. Although a "statute may be applied to new situation not anticipated by Congress, if, fairly construed, such situations come within its intent and meaning," it "should not be stretched to apply to new situations not fairly within [its] scope." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 158 (1975) (quoting *Jerome H. Remick & Co. v. Am. Automobile Accessories Co.*, 5 F.2d 411 (6th Cir. 1929)).

In sum, nothing in Title III's text, structure, or context supports the conclusion "that Congress intended to grant [DOJ] such expansive and unfettered authority to invade citizens' right to keep their sensitive information private." *Oregon*, 2026 WL 318402, at *9. If Congress intended to create a general federal auditing power, it would have said so. *See West Virginia,* 597 U.S. at 721–23. Even when Congress enacted the NVRA and HAVA, it did not give DOJ the power it now claims it has to investigate compliance with those statutes. Instead, it provided for a public disclosure provision that, in its estimation, was sufficient for these purposes. *See* 52 U.S.C. § 20507(i); *infra* at 16. For all of these reasons, DOJ's complaint must be dismissed with prejudice.

## IV. Title III does not preempt Illinois's privacy protections.

DOJ's complaint also must be dismissed because granting it would violate Illinois's privacy protections for sensitive voter data, which are not preempted by federal law. Although DOJ characterizes this as an effort to obtain Illinois' voter registration list, Illinois provided that list months ago. What it did not provide—because state law forbids it—are voters' sensitive

14

personal identifiers, namely their Social Security and driver's license numbers. Attach. C (Sept. 2 Ltr.) at 1–2 (citing 5 ILCS 179/10(b)(1)). Those redacted identifiers are the only information at issue here and DOJ does not dispute that Illinois law bars their disclosure. *See, e.g.*, Attach. B (Aug. 14 Ltr.) at 1–3. As a result, DOJ may obtain them *only if* federal law preempts Illinois privacy protections. It does not. This provides an independent basis for dismissal.

Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. *Arizona v. United States*, 567 U.S. 387, 400 (2012). To the contrary, in the principal case DOJ cites in its complaint, the Fifth Circuit explained that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection." *Id.* Instead, DOJ seeks obviously sensitive information that enjoys strong privacy protection under both federal and state law. *See Weber*, 2026 WL 118807, at *9.

Nor is there a conflict between Title III and Illinois' protection of this private voter data. A conflict arises only when compliance with both laws is impossible or when state law stands as an obstacle to Congress's objectives. *McHenry County v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022) (quoting *Arizona*, 567 U.S. at 399). Illinois can fully comply with Title III by producing covered records while redacting Social Security and driver's license numbers. Indeed, that this must be the case is only further supported by the Fifth Circuit's recognition in *Lynd* that Title III was not concerned with "confidential, private papers and effects." 306 F.2d at 231. Redaction cannot pose any obstacle to Congress's objectives under Title III unless it would thwart the investigation of federal voting rights violations—but as DOJ has admitted, here it is not investigating any violation of voting rights.

Congress's choices when it enacted the NVRA and HAVA—the statutes DOJ purports to seek to enforce via its demand here, *see* Compl. ¶¶ 7, 9—confirm that there is no conflict between Illinois' privacy protections and Title III. If Congress thought that it was necessary (or even desirable) for DOJ to have access to a database containing highly sensitive information about every voter in order to ensure that a state was complying with its list maintenance obligations, it would have done so *in the NVRA and HAVA*. It did not. To the contrary, courts have repeatedly found that the NVRA inspection provision, which Congress designed to enable "critical scrutiny and public audits of voter data," does *not* prohibit states from redacting sensitive personal information. *See Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (ordering disclosure of records "subject to compliance with the relevant state law"); *see also, e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022). HAVA contains no disclosure provision at all; instead, it explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). Simply put, Title III cannot be read to require what the statutes DOJ invokes it to enforce do not.

## V.    DOJ's failure to comply with the Privacy Act independently requires dismissal.

Finally, even if DOJ could use Title III to demand the private data of Illinois's over eight million registered voters, it must first comply with the Privacy Act, 5 U.S.C. § 552a, *et seq.* Its failure to do so provides yet another reason why its complaint must be dismissed.

Congress enacted the Privacy Act after the Watergate scandal in response to "a growing awareness that governmental agencies were accumulating an ever-expanding stockpile of information about private individuals that was readily susceptible to both misuse and the perpetuation of inaccuracies." *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981). These

concerns persist today, including for Intervenors, who are staunchly opposed to Illinois giving their sensitive data to DOJ. *See* Mem. Supp. Mot. to Intervene at 1, Dkt. No. 8; Decl. of Timothy Drea ¶¶ 8–27, Dkt. No. 8-1; Decl. of Krystle Able ¶¶ 12–21, Dkt. No. 8-2; Decl. of Stacy Davis Gates, ¶¶ 12–29, Dkt. No. 8-3. The Act accordingly "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.* ("*LOWV*"), No. 25-cv-3501 (SLS), 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does this in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)).

In its rush to sweep up the sensitive information of every registered voter in Illinois, DOJ overlooked the Act's basic procedural requirements. Specifically, the Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are defined by the statute. A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Illinois' voter registration list, which contains the names of all registered voters in the state as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Illinois's voter registration list, the obligations imposed by subsection (e) are

triggered. *See id.* § 552a(e)(4); *Weber*, 2026 WL 118807, at *17 (noting that DOJ's request for voting records "includes a litany of personal and sensitive information that is governed by the Privacy Act"). Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *LOWV*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine use[s]" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

Congress enacted the Privacy Act to "permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuse of such information." *LOWV*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to compile a federal database of registered voters, the Act requires (at a minimum) that DOJ give the public adequate notice about its intention to do so by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the *character* of existing systems of records"); *see also* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

DOJ does not appear to dispute that the Privacy Act is applicable to its collection of voter data. Nor does DOJ appear to dispute it must publish a SORN that would apply to voter registration lists, as it has alleged in parallel litigation in other states that a SORN it identified as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records," supplies the requisite authority. *E.g.*, Compl. ¶ 23, *United States v. Oliver,* No. 1:25-cv-1193 (D.N.M. Dec. 2, 2025), Dkt. No. 1. Yet the complaint in this case is bereft of any allegations that an appropriate SORN has been published. In other cases, DOJ has referenced a SORN, but it "does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level," much less the uses to which it intends to put the information. *Weber*, 2026 WL 118807, at *18.[9] Instead, it simply states that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). This is plainly insufficient.

Finally, there is no impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if construed as an affirmative defense, the Court may grant a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Here, the complaint clearly alleges DOJ's intention to collect, use, and retain a system of records that

---

[9] DOJ's complaints seeking the same information from other states have cited two other notices in the Federal Register, but they, too, fail to "give sufficient notice to the American public as required under the Privacy Act." *Weber*, 2026 WL 118807, at *18. The first simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See Privacy Act of 1974; System of Records,* 70 Fed. Reg. 43904 (July 29, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

requires compliance with the Privacy Act. Its failure to comply with that Act independently warrants dismissal.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.


Dated: February 20, 2026                  /s/ *Sarah Grady*
                                          Sarah Grady
                                          *Counsel for Proposed-Intervenors*

                                          Sarah Grady
                                          John Hazinski
                                          Adam Smith
                                          **KAPLAN & GRADY LLC**
                                          2071 N. Southport Ave., Ste. 205
                                          Chicago, IL 60614
                                          sarah@kaplangrady.com
                                          Tel: (312) 852-2184

                                          Elisabeth Frost
                                          Katie Chamblee-Ryan
                                          Tina Meng Morrison
                                          **ELIAS LAW GROUP LLP**
                                          250 Massachusetts Avenue NW, Suite 400
                                          Washington, D.C. 20001
                                          efrost@elias.law
                                          kchambleeryan@elias.law
                                          tmengmorrison@elias.law
                                          Tel: (202) 968-4490

                                          *Counsel for Proposed-Intervenors*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 6,830 words and therefore complies with the type

volume limitation of Civil LR 7.1.

/s/ *Sarah Grady*
Sarah Grady
*Counsel for Proposed Intervenors*

**<u>CERTIFICATE OF SERVICE</u>**

I, Sarah Grady, an attorney, certify that on February 20, 2026, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.


/s/ *Sarah Grady*
Sarah Grady
*Counsel for Proposed Intervenors*

# Attachment A

E-FILED
Friday, 19 December, 2025  03:08:28 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 1

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 28, 2025

<u>Via Mail and Email</u>

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Dear Executive Director Matthews:

We write to you as the chief election official for the State of Illinois to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Illinois' general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by State officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the State of Illinois' computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In response to EAVS Question A10a, nearly one-third of Illinois' counties (32 out of 102) reported that they did not send out any confirmation notices: Bond County; Boone County; Brown County; Bureau County; Clay County; DeWitt County; Fulton County; Gallatin County; Greene County; Grundy County; Jasper County; Johnson County; Lawrence County; Livingston County; Logan County; Macoupin County; Mason County; McDonough County; Mclean County; Menard County; Monroe County; Montgomery County; Morgan County; Pope County; Putnam County; Richland County; Schuyler County; Scott County; Stark County; Stephenson County; Wabash County; and Warren County. Please explain why each of these 32 counties reported they did not send out any confirmation notices. For each of the 32 counties that have not sent confirmation notices, please explain why they did not send confirmation notices. Please explain what steps Illinois is taking to ensure that these counties are conducting list maintenance including when those steps were taken.

2. Despite the fact that nearly one-third of counties did not respond to Question A10a, Illinois reported that it sent out over 3.8 million confirmation notices, which comprised 46.9 percent of all registered voters. The national average was 19.5 percent. Please explain why the number of confirmation notices and percentage sent to all registered voters was so high. Please explain how it is determined who receives a confirmation notice.

3. A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A10a, sixteen counties in Illinois reported that the number of confirmation notices they sent was more than one hundred percent of all registered voters: Alexander County (239.3 percent); Carroll County (123.2 percent); Christian County (265 percent); Crawford County (127 percent); Edwards County (244.5 percent); Jackson County (208.2 percent); Jefferson County (143.2 percent); Jo Daviess County (678.6 percent); Lee County (131.7 percent); Macon County (139.7 percent); Massac County (128.2 percent); Mercer County (120.5 percent); Perry County (123.5 percent); Saline County (220.1 percent); Tazewell County (144.2 percent); and Washington County (232.7 percent). Please explain why the percentage of confirmation notices that these counties sent to all registered voters was so high.

4. In response to Questions A10a through Question A10i, Illinois reported that it had over 2.3 million results of confirmation notices that were "not categorized," which was 62.3 percent of all confirmation notices sent. The national average was 17.8 percent. Please explain why the number and percentage of results of confirmation notices that were "not categorized" was so high. Furthermore, of the results of confirmation notices included as "not categorized," please provide the number for each category (e.g., "valid with no

address update," "valid with address update," "invalid," "confirmation notices returned undeliverable," and "unreturned confirmation notices").

5.  In response to Questions A12i through Question A12k, Illinois reported that it had 258,976 voters removed for a reason described as "other," comprising 25.8 percent of all confirmation notices sent. The national average was 3.7 percent. Please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons, please provide the number of voters removed for each reason that Illinois included in the "other" category.

6.  A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A12i through Question A12k, eighteen counties reported more than a quarter of voters listed as being removed were removed for a reason described as "other": Clay County (30.8 percent); Cook County (67.5 percent); DeWitt County (41.7 percent); Edgar County (36.5 percent); Fulton County (71.2 percent); Greene County (50.4 percent); Grundy County (26 percent); Jefferson County (99.4 percent); Jersey County (42.2 percent); Kendall County (47.5 percent); Knox County (30.7 percent); Logan County (25.2 percent); McDonough County (39.1 percent); McHenry County (65 percent); McLean County (68.2 percent); Morgan County (51.5 percent); Washington County (51 percent); and Winnebago County (87.3 percent). Illinois' two most populous counties, Cook County and DuPage County, together accounted for 63.4 percent of the 258,976 voters Illinois reported were removed for a reason described as "other." For each of these eighteen counties, please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons in each county, please provide the number of voters removed for each reason that the county included in the "other" category.

Please provide a description of the steps that Illinois has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Illinois used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1.  Non-citizen

2.  Adjudicated incompetent

3.  Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division


Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division


cc:    Laura K. Donahue
       Chair, State Board of Elections
       2329 S. MacArthur Boulevard
       Springfield, IL 62704-4503
       webmaster@elections.il.gov

# Attachment B

# EXHIBIT 2



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

August 14, 2025

<u>Via Mail and Email</u>

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Re:    **Complete Illinois's Voter Registration List with All Fields**

Executive Director Matthews:

We have received Illinois's statewide voter registration list ("VRL").  However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections.  *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Illinois' VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list.  Any statewide prohibitions are clearly preempted by federal law.

(2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq.* Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Illinois's complete and current VRL. The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Illinois must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:    Laura K. Donahue
       Chair, State Board of Elections
       2329 S. MacArthur Boulevard
       Springfield, IL 62704-4503
       webmaster@elections.il.gov

---

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

# Attachment C

# EXHIBIT 3



**STATE BOARD OF ELECTIONS**

**STATE OF ILLINOIS**

2329 S. MacArthur Blvd.
Springfield, Illinois 62704
217-782-4141
TTY: 800-964-3013
Fax: 217-782-5959

69 W. Washington St., Suite LL08
Chicago, Illinois 60602
312-814-6440
Fax: 312-814-6485

**BOARD MEMBERS**
**Laura K. Donahue, Chair**
**Rick S. Terven, Sr., Vice Chair**
**Jennifer M. Ballard Croft**
**Cristina D. Cray**
**Tonya L. Genovese**
**Catherine S. McCrory**
**Jack Vrett**
**Casandra B. Watson**

**EXECUTIVE DIRECTOR**
**Bernadette M. Matthews**

September 2, 2025

Harmeet Dhillon, Assistant Attorney General
Michael Gates, Deputy Assistant Attorney General
Maureen Riordan, Acting Chief
U.S. Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Avenue NW, 4CON
Washington, DC 20530

*Via U.S. Mail and email to* [maureen.riordan2@usdoj.gov](mailto:maureen.riordan2@usdoj.gov)

    Re: Letter dated August 14, 2025

Ms. Dhillon, Mr. Gates, Ms. Riordan:

    Thank you for your emails dated August 21 and 22, 2025, and for granting an extension to respond to your August 14, 2025 letter. On August 11, 2025, we transmitted an electronic copy of Illinois' voter registration list (VRL) pursuant to Section 8(i) of the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(i), excluding social security and driver's license numbers.[1] We understand that the Department of Justice's (Department) August 14, 2025 letter seeks an electronic copy of Illinois' unredacted voter list, including sensitive personal information of Illinois residents, such as social security numbers and driver's license numbers, pursuant to Section 8(i) of the NVRA, as well as Sections 301 and 303 of the Civil Rights Act of 1960 (CRA), 52 U.S.C. §§ 20701, 20703, and Section 401 of the Help America Vote Act (HAVA), 52 U.S.C. § 21111. This request implicates state and federal law

---

[1]     Pursuant to state and federal law, the VRL wholly excludes information of registered voters who are victims of domestic violence, human trafficking, and other similarly protected groups, as well as telephone numbers and addresses for judges who have requested redaction of personal information. *See* Ex. D to August 11, 2025 Letter.

as well as Illinoisans' interests in exercising their right to vote without risking the privacy of their personal information.

As a state agency, the Illinois State Board of Elections (SBE) has a duty to abide by all state and federal laws governing the protection of sensitive personal information. Accordingly, SBE is prohibited from disclosing its voters' social security numbers unless "(i) required to do so under State or federal law"; "(ii) the need and purpose for the social security number is documented before collection of the social security number; *and* (iii) the social security number collected is relevant to the documented need and purpose." 5 ILCS 179/10(b)(1) (emphasis added). Separately, Illinois law also mandates that SBE notify voters if their social security number or driver's license number is subject to "unauthorized acquisition . . . that compromises the security, confidentiality, or integrity" of this information. 815 ILCS 530/5. Finally, Illinois law strictly controls access to Illinois' VRL: SBE may disclose a version of the VRL with limited redactions only to government entities for government purposes and to a state or local political committee (which we have done here). 10 ILCS 5/1A-25(b). The only version of the VRL that may be disclosed to the public must further redact personal information such as telephone numbers, street numbers of home addresses, and identifiable portions of email addresses. *Id.* 1A-25(c). This information can only be used "for the purposes defined within" the NVRA. *Id.* (citing 52 U.S.C. § 20507(i)).

SBE is also, of course, bound to follow federal law, including applicable provisions cited in your August 14, 2025 letter. However, we are unaware of any authority suggesting that these federal provisions conflict with Illinois law in a manner that would compel disclosures that are otherwise impermissible under state law.

*First*, the NVRA permits redaction of sensitive personal information such as social security numbers, dates of birth, and driver's license numbers from VRLs. *See Pub. Int. Legal Found., Inc. v. Bellows,* 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File.") (collecting cases); *PILF v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) ("Other courts have also held that in complying with the Public Disclosure Provision, States may limit the revelation of highly sensitive information.") (citing *Project Vote v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) ("There is no indication in the NVRA's legislative history that Congress intended to open up for inspection information within those records that is otherwise protected as personal information under other Federal or State laws."). Significantly, in *PILF v. Matthews*, the District Court for the Central District of Illinois ordered SBE, under the NVRA, to "implement policies and procedures which make available to the public the statewide voter registration list, allowing for redaction of" social security numbers, birthdates, "and other highly sensitive personal information." *Matthews*, 589 F. Supp. 3d at 944. To support its request for the unredacted VRL, the Department's letter relies on 52 U.S.C. § 20510(a), but that provision does not contain document production requirements. If the Department is aware of authority requiring pre-litigation production of records pursuant to this provision, we would appreciate the opportunity to review.

*Second*, the CRA's document production requirement does not require disclosure of sensitive personal information. Section 101 of the CRA forbids—among other things—denying the right to vote to any person because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting" if that error or omission is immaterial in determining a person's qualification to vote. 52 U.S.C. § 10101(a)(2)(B). Correspondingly, Sections 301 and 303 of the CRA permit the Department to demand to inspect—at SBE's office in Springfield, Illinois— "records and papers" retained "for a period of twenty-two months from the date of any" federal election "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. §§ 20701, 20703, to investigate "question[s] concerning infringement or denial of constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Specifically, the purpose of the CRA's document production provision is "to enable the Attorney General to determine whether" a suit to enforce Section 101 is appropriate. *Id.* SBE is unaware of any authority permitting the Department to use the CRA's document production provision to enforce federal laws *other than* the CRA. We would appreciate the opportunity to review such authority if the Department is able to provide it.

*Third*, Section 401 of HAVA does not appear to provide authority for the Department to demand production of state records. That provision allows the Attorney General to "bring a civil action against any State or jurisdiction in an appropriate United States District Court" to enforce election technology requirements, including the requirement that each state maintain an electronic voter list. 52 U.S.C. § 21111. SBE has already provided an electronic copy of Illinois' VRL, and the Department has not disputed that Illinois complies with HAVA's technology requirements. However, again, if the Department is in possession of authority stating that Section 401 gives the Department the power to require disclosure of Illinoisans' dates of birth and social security and driver's license numbers, we would be happy to review that authority.

Additionally, we have been unable to discern from the Department's correspondence adequate assurances that the sensitive personal information in our unredacted VRL will be treated in accordance with the federal Privacy Act of 1974. *See, e.g.*, 5 U.S.C. § 552a(b) (generally prohibiting agencies from disclosing information maintained in a system of records to other agencies); *id.* § 552a(e)(2)-(3) (among other things, directing that personal information be gathered directly from individuals wherever possible, and that the collection method inform each person how the information will be used and the consequences of not providing the information); *id.* § 552a(e)(4) (requiring publication in the Federal Register and notice and comment for the uses and data contained in systems of records that agencies maintain); *id.* § 552a(e)(7) (prohibiting maintenance of records describing how any person exercises First Amendment rights).

We understand that the Department's August 14, 2025 letter requests Illinois' VRL for the purpose of assessing Illinois' compliance with the NVRA's list maintenance provisions. Our forthcoming letter—which we are diligently working to provide, as promised, by September 10, 2025—will include information demonstrating that Illinois complies with the NVRA's list maintenance requirements: the State "conduct[s] a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). We are confident

this forthcoming letter will satisfy the Department that Illinois' list maintenance program meets (and exceeds) NVRA requirements.

While SBE respects and shares the Department's commitment to assessing Illinois' compliance with the NVRA, we remain concerned about the scope of and authority for the Department's request, given that the NVRA permits redaction of sensitive personal information. We take Illinoisans' privacy very seriously; data breaches and hacking are unfortunately common, and the disclosure of sensitive information contrary to state law would expose our residents to undue risk. Nonetheless, and as always, we remain committed to partnership with the federal government wherever possible. If there is any additional information the Department can provide regarding authority for its request, please provide that so we may review. In addition, we continue to work in conjunction with Illinois' election authorities to compile the additional information that the Department's original July 28, 2025 letter sought for the purpose of assessing Illinois' NVRA compliance. Thank you.

Sincerely,

Marni M. Malowitz
General Counsel
Illinois State Board of Elections
(312) 814-6462
mmalowitz@elections.il.gov

cc: Bernadette M. Matthews, Executive Director, State Board of Elections

Page 4