E-FILED
Thursday, 12 March, 2026  11:19:12 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

BERNADETTE MATTHEWS, *in her official capacity as Executive Director of the State Board of Elections for the State of Illinois,*

    *Defendant*.

Case No. 3:25-cv-3398



FILED
3/12/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## PROPOSED OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO COMPEL RECORDS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND ........................................................................................................... 2

ARGUMENT ............................................................................................................... 2

    I.      The Federal Rules govern DOJ's claims. ................................................. 3

    II.    This Court must conduct meaningful review of DOJ's demand............................ 4

    III.   The proper procedural course is for the Court to resolve any motions to dismiss and then, if needed, to proceed to discovery................................................. 6

CONCLUSION ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017)...................................................................5

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
    988 F.2d 1157 (Fed. Cir. 1993) .............................................................7

*Brandon v. Smith*,
    No. 06-1316, 2007 WL 9735326 (C.D. Ill. Mar. 15, 2007) ........................7

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ........................................................................7

*Gibson v. City of Chicago*,
    910 F.2d 1510 (7th Cir. 1990) ...............................................................6

*In re Admin. Subpoena*,
    800 F. Supp. 3d 229 (D. Mass. 2025) ...................................................5

*In re Sealed Case (Admin. Subpoena*,
    42 F.3d 1412 (D.C. Cir. 1994)...............................................................5

*In re Sealed Case*,
    237 F.3d 657 (D.C. Cir. 2001)...............................................................7

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962)...............................................1, 4, 5, 6

*Smith v. OSF HealthCare Sys.*,
    933 F.3d 859 (7th Cir. 2019)...............................................................9

*Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018)...............................................................5

*State of Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ......................................................6

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) ...............................................................5

*United States v. Millman*,
    822 F.2d 305 (2d Cir. 1987)...............................................................5

*United States v. Oregon*,
    No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ............................4

*United States v. Powell*,
    379 U.S. 48 (1964) ................................................................................. 1, 3, 4, 5

*League of Latin Am. Citizens v. Exec. Office of the Pres.*,
    No. 25-0946, 2026 WL 252420 (D.D.C. Jan. 30, 2026)............................................8

*United States v. Weber*,
    No. 2:25-cv-09149-DOC-ADS 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .............. 3, 8

**STATUTES**

26 U.S.C. § 7604(a) ...........................................................................................4

52 U.S.C. § 20705 ......................................................................................... 1, 3

**RULES**

Fed. R. Civ. P. 1 ..............................................................................................3

Fed. R. Civ. P. 81(a) .........................................................................................3

**OTHER AUTHORITIES**

Devin Bartlett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
    Voter Roll*, N.Y. Times (Sep. 9, 2025),
    https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-
    data.html............................................................................................8

Letter from Att'y Gen. Pam Bondi to Gov. Tim Walz (Jan. 24, 2026),
    https://www.documentcloud.org/documents/26508832-minneapolis-shooting-ag-
    pam-bondi-gives-gov-walz-conditions-for-ice-to-leave-minnesota-fox-9-
    minneapolis-st-paul/ ..............................................................................8

Jacob Fischler, *Trump doubles down on calling for feds to take over state elections*, News
    from the States (Feb. 3, 2026),
    https://www.newsfromthestates.com/article/trump-doubles-down-calling-feds-
    take-over-state-elections..........................................................................8

Dan Bongino Show: I'm Back (Ep. 2443) (Spotify, Feb. 2, 2026), available at
    https://open.spotify.com/show/4sftHO603JaFqpuQBEZReL?uri=spotify%3Aepis
    ode%3A4b0rso7ZqI0UEyGZHCNTfh ........................................................8

## INTRODUCTION

The Federal Rules of Civil Procedure set forth the ordinary progression of a civil case in all but the most unusual cases: first come the pleadings, then adjudication of any Rule 12(b) motions, followed by discovery if the matter is not dismissed, then summary judgment if the case is amenable to it, and finally—if necessary—trial. At each stage, courts apply well-established standards to test the sufficiency of the claims before them. The U.S. Department of Justice asks this Court to sweep all that aside and put the onus instead on the *Defendants* at the outset to resist a "motion for order to compel records," which would immediately grant DOJ the final relief it seeks in this action at the very start of the case. That is not how civil litigation works.

Nothing in the Federal Rules—or in Title III—authorizes this departure from the ordinary course of litigation. Title III of the Civil Rights Act of 1960 does not "displace" the Rules or create a "special statutory proceeding" when DOJ demands voting records. Mem. Supp. Mot. Compel Prod. ("DOJ Mem.") at 6, Dkt. No. 5-1. Neither the term "special statutory proceeding" nor anything like it appears anywhere in the Civil Rights Act. The Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. In *United States v. Powell*, 379 U.S. 48, 57–58 & n.18 (1964), the U.S. Supreme Court interpreted *a statute that said exactly this* involving federal demands for records and held that the Federal Rules of Civil Procedure apply and that courts may "inquire into the underlying reasons for" the demand. The case that DOJ relies on, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), is out-of-circuit and distinguishable many times over, but it also predated *Powell*, and thus is no longer good law, even in the Fifth Circuit. The Court should reject DOJ's effort to leapfrog the prescribed stages of litigation and permit this action to unfold under the governing Federal Rules.

1

## BACKGROUND[1]

DOJ filed this suit on December 18, 2025, seeking to compel Illinois to turn over its full statewide voter registration list without redacting sensitive information protected from disclosure by state law. *See* Stricken Compl. ¶ 3, Dkt. No. 1. DOJ's complaint asserts a single cause of action under Title III of the Civil Rights Act of 1960. Because DOJ lacks legal authority for its demand— and because its demand is insufficient under the plain language of Title III and runs contrary to state and federal law—Proposed Intervenors have submitted a proposed motion to dismiss the complaint. *See* Proposed-Intervenors Proposed Mot. to Dismiss ("Proposed-Intervenors' Mot.").

Alongside its complaint, DOJ filed a motion to compel, asking this Court to begin these proceedings by ordering the Executive Director of the State Board of Elections, Bernadette Matthews, "to produce a copy of the Illinois statewide Voter Registration List," including all the sensitive fields that DOJ demands in its prayer for relief. Mot. Compel Prod. at 4, Dkt. No. 5; Compl. at 9, Dkt. No. 4. In other words, DOJ asks this Court to ignore the issues that make DOJ's complaint subject to dismissal and skip straight to granting it the ultimate relief it seeks. As Proposed Intervenors explain in this proposed response, DOJ's "motion for order to compel records" has no basis in federal law and improperly seeks to circumvent the governing rules to secure immediate relief.

## ARGUMENT

The Federal Rules of Civil Procedure govern this case. DOJ has no valid authority for its contention that Title III "displaces" the Rules or authorizes a "special statutory proceeding." *See*

---

[1] Proposed Intervenors' motion to dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in Illinois and throughout the country. *See* Proposed-Intervenors Mot. at Background §§ I–III.

DOJ Mem. at 6. The Court should therefore deny DOJ's motion and permit this litigation to unfold under the normal course, starting with resolving the motions to dismiss.

## I.     The Federal Rules govern DOJ's claims.

This Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case does not fall within the narrow set of cases that Rule 81 exempts from the ordinary rules, and DOJ never argues that it does. *See* Fed. R. Civ. P. 81(a).[2] Nor does DOJ cite any binding authority for its claim that these proceedings should nonetheless be treated differently.

There is no support for DOJ's position in the text of Title III. The statute says only that district courts "shall have jurisdiction *by appropriate process* to compel the production" of the documents sought. 52 U.S.C. § 20705 (emphasis added). Nothing in that language suggests that "appropriate process" means anything other than the ordinary procedures federal courts use to resolve contested cases. *See United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026) (holding "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures").

In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court confirmed that, when a statute uses the language employed in Title III—granting jurisdiction to federal courts to compel

---

[2] The plain text of Rule 81(a)(5) further affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings"—a limited exception that does not apply here because the statutes underlying DOJ's claims do not authorize it to issue subpoenas for compliance. Fed. R. Civ. P. 81(a)(5). Congress knows how to create subpoena power and special proceedings to enforce those subpoenas, *see, e.g.*, 29 U.S.C. § 161(1)–(2) (authorizing National Labor Relations Board to issue subpoenas and seek "[c]ourt aid" in compelling compliance under threat of contempt), but it did not do so in Title III.

production "by appropriate process," but not identifying a particular process—the process that applies is the ordinary process under the Federal Rules, *not* a special proceeding that circumvents those Rules. There, the Court was presented with language in 26 U.S.C. § 7604(a) exactly like that in Title III, which conferred jurisdiction on district courts "by appropriate process to compel" compliance with federal demands for documents or testimony. *Id.* at 57–58. It held that, "[b]ecause [the statute] contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*," and the court may "*inquire into the underlying reasons for the*" government's demand. *Id.* at 58 & n.18 (emphases added).

DOJ rests its extraordinary assertion that it is entitled to circumvent the Federal Rules and any scrutiny of its demand on a single, decades-old, out-of-circuit case, in which the Fifth Circuit described a Title III action as a "special statutory proceeding" that allows for minimal judicial involvement. *Lynd*, 306 F.2d at 225–26; *see also* DOJ Mem. at 17–18 (relying on same). But *Lynd* was decided two years before the Supreme Court's decision in *Powell*, which held that the same statutory language required a process governed by the Federal Rules. *See Powell*, 379 U.S. at 57–58. "The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd*." *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026). Thus, at most, that case would have imposed that rule in the Fifth Circuit for two years, between 1962 and 1964. *Lynd* was never binding on this Court and, for decades now, it has not even been good law in the Fifth Circuit.

## II.     This Court must conduct meaningful review of DOJ's demand.

Because the Federal Rules govern this case, this Court must assess "whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8. More fundamentally, to invoke the powers of a federal court to enforce an agency's document demand, the government must show its investigation "will be conducted pursuant to a

4

legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57. After all, "[i]t is the court's process which is invoked to enforce the [demand,] and a court may not permit its process to be abused." *Id.* at 58. And "an abuse would take place if the summons had been issued for an improper purpose." *Id.*

Unsurprisingly, then, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government document requests issued under a variety of statutes. *E.g.*, *United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir. 1987) (holding a summons recipient can successfully challenge government's document request by "showing bad faith on the part of the [agency]"); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand because the agency had not produced an adequate "notification of purpose" required by statute); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in civil investigative demand and emphasizing that agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)); *In re Admin. Subpoena*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). Nothing in Title III justifies any different treatment.

DOJ's reliance on *Lynd* also ignores its context—which differs powerfully from the circumstances here. *Lynd* involved demands for voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending

to show that distinctions on the basis of race or color have been made with respect to registration and voting within [the subject] jurisdiction." 306 F.2d at 229 n.6. That was undeniably a valid objective, as protecting federal voting rights was the explicit purpose of Title III, *see State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Moreover, *Lynd* emphasized that it was "of great importance" that the records DOJ sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers." 306 F.2d at 231.

Here, in contrast, DOJ seeks sensitive and private information that is protected from disclosure. And even the court in *Lynd* emphasized that, if there were a "genuine dispute" whether the records sought fell within the scope of Title III, the court would adjudicate that issue. *Id.* at 226. *Lynd*'s approach may have made sense for requests for public voter registration forms in 1960s Mississippi in the context that those requests arose. But it is entirely inappropriate for the brave new world ushered in by DOJ's wave of extraordinary document demands targeting private information about the millions of registered voters in Illinois—and nearly every other state besides.

III.   **The proper procedural course is for the Court to resolve any motions to dismiss and then, if needed, to proceed to discovery.**

Consistent with the above, the Court can and should first adjudicate the motions to dismiss, rather than a "motion for order to compel records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." (quotation omitted)). The Rules set an early deadline for motions to dismiss because

6

"[o]ne of the purposes of Rule 12(b)(6) is to eliminate actions that are fatally flawed in their legal premises and are destined to fail, thus sparing litigants the burdens of unnecessary pretrial and trial activity." *Brandon v. Smith*, No. 06-1316, 2007 WL 9735326, at *2 (C.D. Ill. Mar. 15, 2007) (quoting *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993)). Accordingly, Rule 12(b)(6) motions are meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Following the Federal Rules—and seeking to weed out DOJ's meritless claim—Proposed Intervenors have sought to timely file a motion to dismiss DOJ's complaint under Rule 12(b)(6). DOJ has no statutory basis for its unprecedented attempt to invoke Title III to obtain unredacted statewide voter registration lists. Its demand fails to comply even with the express requirements of Title III and granting it would result in violations of state and federal law. *See* Intervenor Mot., Argument §§ I–III. In light of these fatal deficiencies, resolving DOJ's motion to compel first would get things backwards, depriving Defendants of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. This approach would also severely prejudice the hundreds of thousands of individual Illinois voters Proposed Intervenors seek to represent, whose private and sensitive information is the subject of DOJ's demand. *See, e.g.*, *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (recognizing in allowing intervention when similar interests are at stake, once the information is disclosed, "the cat is out of the bag" (quotation omitted)).

Even if the Court were to find that DOJ's complaint can survive Rule 12(b), the next step would be to permit discovery on its claim. Should DOJ's claim survive the motions to dismiss, discovery will be critical to this Court's determination on the merits. A key dispute in this case is whether DOJ's purported "purpose" for its demand—to assess compliance with the NVRA and

HAVA—is a proper ground for invoking Title III. That inquiry requires the court to assess not only the purposes DOJ alleges, but also whether those purposes are pretext for other aims, especially those the law forbids. As a federal court recently explained, the Court is "not required to accept pretextual, formalistic explanations untethered to the reality of what the government has said outside of the courtroom." *Weber*, 2026 WL 118807, at *10.

And, here, DOJ's public statements and actions suggest objectives well beyond administrative list maintenance. Amid public reporting that DOJ is building a national registration list,[3] Assistant Attorney General Harmeet Dhillon has promised that suits like this one would result in "hundreds of thousands of people in some States being removed from the voter rolls."[4] Just weeks ago, Attorney General Pam Bondi conditioned the withdrawal of Immigration and Customs Enforcement officers in Minneapolis on unfettered access to the state's voter rolls.[5] And DOJ's campaign of voter data lawsuits aligns with broader efforts of the federal government to seize control of elections in ways the Constitution forbids[6]—culminating in President Trump's recent call to "nationalize" elections.[7] Granting DOJ the final relief it seeks before discovery could even

---

[3] *See, e.g.*, Devin Bartlett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[4] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 AM ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[5] Letter from Att'y Gen. Pam Bondi to Gov. Tim Walz (Jan. 24, 2026), https://www.documentcloud.org/documents/26508832-minneapolis-shooting-ag-pam-bondi-gives-gov-walz-conditions-for-ice-to-leave-minnesota-fox-9-minneapolis-st-paul/.

[6] *See, e.g.*, *League of Latin Am. Citizens v. Exec. Office of the Pres.*, No. 25-0946, 2026 WL 252420, at *40–41 (D.D.C. Jan. 30, 2026) (granting summary judgment on claim that Executive Order requiring voter registration applicants to provide documentary proof of citizenship overstepped the constitutional separation of powers).

[7] Dan Bongino Show: I'm Back (Ep. 2443) (Spotify, Feb. 2, 2026), available at https://open.spotify.com/show/4sftHO603JaFqpuQBEZReL?uri=spotify%3Aepisode%3A4b0rso

occur would allow DOJ to avoid review of these important questions—contrary to the well-established practices designed to ensure fair outcomes in civil litigation. *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 866 (7th Cir. 2019) (collecting cases and concluding "these precedents emphasize the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against" it). DOJ identifies nothing that properly permits it to proceed in this manner, and the Court should not allow it to avoid scrutiny of its claims.

## CONCLUSION

For the foregoing reasons, this Court should deny DOJ's motion for order to compel records.

---

7ZqI0UEyGZHCNTfh (1:36:40-1:36:55); Jacob Fischler, *Trump doubles down on calling for feds to take over state elections*, News from the States (Feb. 3, 2026), https://www.newsfromthestates.com/article/trump-doubles-down-calling-feds-take-over-state-elections.

Dated: February 20, 2026

/s/ *Sarah Grady*
Sarah Grady
*Counsel for Proposed-Intervenors*

Sarah Grady
John Hazinski
Adam Smith
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
sarah@kaplangrady.com
Tel: (312) 852-2184

Elisabeth Frost
Katie Chamblee-Ryan
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
kchambleeryan@elias.law
tmengmorrison@elias.law
Tel: (202) 968-4490

*Counsel for Proposed-Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Grady, an attorney, certify that on February 20, 2026, I caused the foregoing to be filed using the Court's CM/ECF system, which effected service on all counsel of record.


/s/ *Sarah Grady*
Sarah Grady
Counsel for Proposed Intervenors