E-FILED
Friday, 17 April, 2026  04:05:27 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> BERNADETTE MATTHEWS, in her official capacity as Executive Director of the State Board of Elections for the State of Illinois, <br><br> *Defendant*. | No. 3:25-cv-3398 |

## DEFENDANT'S REPLY IN SUPPORT OF
## HER MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

April 17, 2026

KWAME RAOUL,
Attorney General of Illinois

By:  Vikas Didwania
Holly Berlin
R. Henry Weaver
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
*vikas.didwania@ilag.gov*
*holly.berlin@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

**TABLE OF CONTENTS**

I.   Introduction.................................................................................................................. 1

II.  Argument ..................................................................................................................... 3

    A.  The *Powell* standard for civil investigative demands applies, and it provides ample authority for this Court to scrutinize DOJ's demand and complaint. .................................. 3

    B.  The text of Title III does not require acquiescing to DOJ's demand................................. 6

    C.  DOJ cannot retroactively add a "basis" for its written demand, and merely citing Title III is not an adequate "basis."................................................................................... 9

    D.  Enforcement of the NVRA and HAVA is not a valid "purpose" under Title III.............. 12

    E.  DOJ offers no meaningful response to Matthews's argument that its use of Title III in these lawsuits raises serious constitutional concerns...................................................... 16

III. Conclusion ................................................................................................................. 16

Certificate of Compliance ................................................................................................ 17

**TABLE OF AUTHORITIES**

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ...................................... 6

*Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) ............................ 14

*Becker v. United States*, 451 U.S. 1306 (1981) ................................................................................ 5

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ..................................................................................... 5

*City & Cnty. of San Francisco v. EPA*, 604 U.S. 334 (2025) .................................................... 12, 13

*Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ...................................................................................................... 5

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984)..................................................................... 10

*Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020). ............................. 11

*Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019) ..................................................... 12

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022) ............................................................................ 15

*Foster v. Love*, 522 U.S. 67 (1997)................................................................................................. 16

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................................................................ 10

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .................................................................. 9, 13

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ...................................................................... 10, 13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).................................................................... passim

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999) ................................ 1, 6, 11

*Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195 (7th Cir. 1999). ................................ 6

*Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986)...................... 14

*Loja v. Main St. Acquisition Corp.*, 906 F.3d 680 (7th Cir. 2018) ............................................... 10

*McIntyre v. Morgan*, 624 F. Supp. 658 (S.D. Ind. 1985).............................................................. 6

*McLane Co. v. EEOC*, 581 U.S. 72 (2017).................................................................................... 16

*Rueda v. Midland Credit Mgmt., Inc.*, 2019 WL 3943681 (N.D. Ill. Aug. 21, 2019) .................. 14

*Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341 (11th Cir. 2020) .................................................. 5

*Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056 (7th Cir. 2020) ................................ 7, 14

*United States v. Amore*, --- F. Supp. 3d ---, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) .... 3, 10, 15

*United States v. Benson*, --- F. Supp. 3d ---, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ............................................................................................................................. 3, 5, 7

*United States v. Berkos*, 543 F.3d 392 (7th Cir. 2008) ........................................................... 10, 15

*United States v. Clarke*, 573 U.S. 248 (2014)................................................................................. 4

*United States v. Galvin*, --- F. Supp. 3d ---, 2026 WL 972129 (D. Mass. Apr. 9, 2026).... 3, 10, 11

*United States v. McCoy*, 954 F.2d 1000 (5th Cir. 1992)................................................................ 5

*United States v. Oregon*, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................................ 2, 9, 11, 15

*United States v. Powell*, 379 U.S. 48 (1964) .......................................................................... 3, 4, 5

*United States v. Tan*, 16 F.4th 1346 (9th Cir. 2021) ................................................................... 5

*United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .......... 2, 9

*Util. Air Reg. Grp. v. E.P.A.*, 573 U.S. 302 (2014)................................................................... 16

*Walsh v. Alight Sols. LLC*, 44 F.4th 716 (7th Cir. 2022)............................................................ 4

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)............................................................... 7

**Constitutional Provisions**

U.S. Const. art. 1, § 2................................................................................................................ 16

U.S. Const. art. 1, § 4, cl. 1 ........................................................................................................ 1

**Statutes**

10 ILCS 5/1A-16...................................................................................................................... 15

10 ILCS 5/1A-16.5................................................................................................................... 15

10 ILCS 5/1A-16.7..................................................................................................................... 8

10 ILCS 5/1A-16.8..................................................................................................................... 9

10 ILCS 5/1A-25........................................................................................................................ 8

10 ILCS 5/1A-45........................................................................................................................ 8

42 U.S.C. § 2000e-2................................................................................................................. 13

42 U.S.C. § 2000e-9................................................................................................................. 13

42 U.S.C. § 3604...................................................................................................................... 14

42 U.S.C. § 3606...................................................................................................................... 14

42 U.S.C. § 3611...................................................................................................................... 14

52 U.S.C. § 10101................................................................................................................. 1, 12

52 U.S.C. § 20503.................................................................................................................... 16

52 U.S.C. § 20507...................................................................................................................... 2

52 U.S.C. § 20510.................................................................................................................... 14

52 U.S.C. § 20701.................................................................................................................. 1, 6

Ch. 114, 16 Stat. 140................................................................................................................ 12

Pub. L. 85-315, 71 Stat. 634 .................................................................................................... 12

Pub. L. 88-352, 78 Stat. 241 (1964).......................................................................................... 13

**Rules**

Fed. R. Civ. P. 81 ........................................................................................................ 4, 5

**Other Authorities**

Office of the Law Revision Counsel, *Editorial Reclassification: Title 52, United States Code*, https://uscode.house.gov/editorialreclassification/t52/index.html .............................. 13

## I. INTRODUCTION

The Department of Justice ("DOJ") has sued over 30 jurisdictions to force them to turn over unredacted voter files containing millions of American voters' sensitive personal identifiers. It has pursued this campaign even though the Constitution assigns the States primary responsibility to administer federal elections, subject only to those regulations that *Congress* has enacted. *See* U.S. Const. art. 1, § 4, cl. 1. DOJ relies on Title III of the Civil Rights Act of 1960, a law passed "to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) [hereinafter, *Lynd I*]. Section 1971, recodified in 2014 as 52 U.S.C. § 10101, protects the right to vote without "distinction of race, color, or previous condition of servitude." 52 U.S.C. § 10101(a)(1). Yet DOJ instead claims that it seeks these data "to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), at 8. The legal deficiencies in DOJ's demand are apparent from the face of the complaint, so this action should be dismissed for failure to state a claim.

First, Title III's plain text does not encompass a copy of the requested state voter file, for multiple reasons. DOJ's opposition filing offers no meaningful response to two textual arguments that Matthews presented in her motion to dismiss: Title III applies only to records tied to a *specific election*, and Title III does not require Matthews to *produce* an *electronic copy* of anything. ECF 65 at 9–10, 12. DOJ's forfeiture on these two points is sufficient basis, all on its own, to dismiss the complaint. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response."). DOJ does try to respond to a third point, that the state voter file does not "come into [the] possession" of Bernadette Matthews, in her official capacity as Executive Director of the Illinois State Board of Elections. 52 U.S.C. § 20701. But DOJ's response does not persuade. Title III does not cover DOJ's demand for an unredacted voter file.

1

Second, Title III requires DOJ to state "the basis" and "the purpose" for its demand "in writing." *Id.* § 20703. DOJ's demand here named no basis. As for its purpose, DOJ tells this Court under penalty of perjury that it has "one purpose only: to evaluate Illinois' compliance with the list maintenance provisions of HAVA and the NVRA" and that all records will be "compartmentalized" at DOJ. ECF 73 at 2, 5. Yet DOJ has told the District of Rhode Island that "our intention is to run [the voter file] against DHS's SAVE database," a database maintained by the Department of Homeland Security. *See* Tr. of Mar. 26, 2026, Hearing, 50:22–23, *United States v. Amore*, 25-cv-639 (D.R.I.) (Ex. 1). And it has told the Sixth and Ninth Circuits that it intends to use the data to try to find noncitizens on the voter rolls,[1] which is a topic that HAVA and the NVRA do not address. *See* 52 U.S.C. § 20507(a)(4). DOJ's shifting positions demonstrate the "critical" role that the requirement of a written basis and purpose serves in "ensur[ing] the request is legitimately related to the purpose of the statute." *United States v. Weber*, --- F. Supp. 3d ---, 2026 WL 118807, at * 9 (C.D. Cal. Jan. 15, 2026). In any event, DOJ's argument that it can use Title III for NVRA enforcement ignores the plain structure of the law and creates absurd results. Considering DOJ's pleading alone, without drawing any conclusions about DOJ's good faith, DOJ's stated purpose is not "legitimately related to the purpose of" Title III. *Id.*

For these reasons and others, five courts have already dismissed DOJ's lawsuits, which are unauthorized by Title III, ignore Title III's procedural requirements, and infringe the state-level control of elections enshrined in the Constitution. *See Weber*, 2026 WL 118807; *United States v. Oregon*, --- F. Supp. 3d ---, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*,

---

[1] *See* Appellant's Opposed Motion to Expedite Appeal at 2, 15, *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 3, 2026), Doc. No. 12.1 (Ex. 2); Appellant's Opposed Motion to Expedite Appeal at 2, 15, *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), Doc. No. 12.1 (Ex. 3); United States' Emergency Motion to Expedite Briefing at 3, 16, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), Doc. No. 6-1 (Ex. 4).

--- F. Supp. 3d ---, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *United States v. Galvin*, --- F. Supp. 3d ---, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, --- F. Supp. 3d ---, 2026 WL 1040637 (D.R.I. Apr. 17, 2026). This Court should do the same.

## II. ARGUMENT

DOJ's opposition proposes the wrong legal standard and then repeatedly fails to engage with Matthews's motion to dismiss. As to the legal standard, this Court should apply the developed framework for civil investigative demands under modern caselaw, not the Fifth Circuit's 1962 ruling in *Lynd I.* The first question under the proper standard is DOJ's statutory authority. Title III does not authorize DOJ's demand for an electronic copy of the current voter list for at least three reasons, and DOJ does not even respond to two of them. Next, Title III required DOJ to state "the basis and the purpose" for its demand "in writing" when it sent the demand. 52 U.S.C. § 20703. DOJ stated no basis and an invalid purpose: enforcement of the NVRA. Finally, DOJ does not meaningfully respond to Matthews's final argument, that DOJ is attempting to unconstitutionally arrogate powers beyond its limited congressional delegation of authority. So, in the final alternative, constitutional avoidance counsels against DOJ's aggressive deployment of Title III in its ongoing litigation campaign.

A.      **The *Powell* standard for civil investigative demands applies, and it provides ample authority for this Court to scrutinize DOJ's demand and complaint.**

Although DOJ first contends that Title III demands are "summarily" enforced and that the Federal Rules of Civil Procedure are categorically "inapplicable," ECF 73 at 6–7, 9–10 (citing *Lynd I*, 306 F.2d at 225–26); it eventually concedes that the district court in the Michigan case correctly "constru[ed] a CRA record demand as akin to an administrative subpoena," *id.* at 8 (citing *Benson*, 2026 WL 362789, at *7). But in subpoena enforcement, under *United States v. Powell*, 379 U.S. 48 (1964), and its progeny, the government must "*show* that the investigation will be

3

conducted pursuant to a legitimate purpose [and] that the inquiry may be relevant to the purpose," *id.* at 57 (emphasis added). The target is entitled to "challenge the summons on any appropriate ground." *Id.* at 58. And, as a default rule, "the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18; *see also* Fed. R. Civ. P. 81(a)(5). All courts to rule on the issue so far have reached that conclusion, *see* ECF 65 at 9, including most recently the District of Rhode Island, *see Amore*, 2026 WL 1040637, at *4.

Matthews agrees with the *Benson* court (and others) that the most analogous legal standards are those for the enforcement of administrative subpoenas, summonses, and other civil investigative demands. *See* ECF 65 at 6–9 (so arguing). *Lynd I* is no longer good law on the contours of those standards, under Title III or any other statute. *Lynd I* held that "the factual foundation for, or the sufficiency of" the "statement of the basis and the purpose" is "not open to judicial review or ascertainment." 306 F.3d at 226. *Powell* rejected that categorical view when reviewing an administrative summons, explaining that because "a court may not permit its process to be abused," the court may "inquire into the underlying reasons for the examination" to decide "if the summons had been issued for an improper purpose." 379 U.S. at 58. Down to the present, the Supreme Court holds that the recipient of process "must receive notice, and may present argument and evidence on all matters bearing on a summons's validity." *United States v. Clarke*, 573 U.S. 248, 254 (2014). And "a subpoena may not be issued for an illegitimate purpose." *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022). So the reading of *Lynd I* that DOJ pursues here is out of step with decades of later developments.

DOJ attempts to limit *Powell*'s effect by arguing that *Powell* turned on certain statutory language that "prohibited the Government from subjecting a taxpayer 'to unnecessary examination or investigations.'" ECF 73 at 9 (quoting *Powell*, 379 U.S. at 52). But *Powell*'s holding was not

4

tax-specific: The Courts of Appeals treat *Powell* as a seminal case for enforcement of investigative demands in all contexts. *E.g.*, *United States v. Tan*, 16 F.4th 1346, 1353 (9th Cir. 2021) (Customs and Border Protection summons); *Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020) (Securities and Exchange Commission subpoena); *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 688 (D.C. Cir. 2017) (Consumer Financial Protection Bureau civil investigative demand). In fact, *Powell*'s analysis of that provision in the Internal Revenue Code, 26 U.S.C. § 7605(b), did not underlie its holding about the scope of judicial review of civil investigative demands. The chief holding appears pages later, in an entirely different section of the opinion, which does not reference the "unnecessary examination" statute. *See* 379 U.S. at 57–58. DOJ simply misreads the opinion.

As for procedure, the Civil Rules serve as the default, but, consistent with the *Benson* court's conclusion, they can be relaxed by court order. *See* Fed. R. Civ. P. 81(a)(5); *Becker v. United States*, 451 U.S. 1306, 1308 (1981). Congress must speak clearly in order "to exempt actions . . . from the operation of the Federal Rules of Civil Procedure." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). So the statement in *Lynd I* that "[t]here is no place for any other procedural device or maneuver" in a Title III enforcement proceeding, 306 F.2d at 226, is out of step with contemporary law. But DOJ's opposition brief ignores *Califano* and subsequent cases that establish the modern standard, including in the Fifth Circuit. *See*, *e.g.*, *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992). Because DOJ has filed "a traditional civil complaint," "the Court [should] apply the Rule 12(b)(6) standard to evaluate the United States' CRA claim." *Benson*, 2026 WL 362789, at *7.

**B.    The text of Title III does not require acquiescing to DOJ's demand.**

DOJ's scattershot responses to Matthews's textual arguments change nothing. Indeed, DOJ forfeits response to two of the three arguments, providing ample basis to dismiss on that ground alone. *See Kirksey*, 168 F.3d at 1041.

First, Title III requires preservation and permits DOJ inspection of records relating to voter registration in a particular federal election for 22 months after that election. 52 U.S.C. §§ 20701, 20703. There were two federal elections held in the 22 months preceding DOJ's demand: the March 19, 2024, primary election and the November 5, 2024, general election. But DOJ did not demand the voter list as it was on either of those dates. Instead, DOJ requested a snapshot of that list at the time of its demand, in August 2025. So the record DOJ sought was not required to be preserved under Title III, because it did not relate to voter registration activities for any particular federal election in the last 22 months. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) ("Regardless of when these records came into the possession of the election official . . . they must be retained and preserved for a period of twenty-two months 'from the date of any general, special, or primary election' *if* they relate to acts requisite to voting *in such election*." (emphases added)); *see also McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985) (Title III requires preservation of "election materials used in elections for federal offices for a period of twenty-two (22) months from the date of the election," which "encompasses, among other things, voting registration records, poll lists, applications for absentee ballots, ballot envelopes, tally sheets, computer programs used to tabulate votes, as well as the ballots themselves."). In its response brief, DOJ fails to address the argument that its demand was untethered to any specific federal election, so any response is waived. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999).

6

Second, DOJ likewise failed to respond to Matthews's argument that Title III authorizes only in-person inspection and reproduction, not production of electronic copies of records. ECF 65 at 12. DOJ weakly suggests that Title III authorizes it to demand electronic production of records that are born and maintained electronically, ECF 73 at 19 & n.14, but DOJ cites no basis or legal authority for this statement. And such arguments "that are underdeveloped, cursory, and lack supporting authority are waived." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020).

Third, DOJ's attempt to characterize the statute's "come into possession" language as merely a "temporal" distinction makes little sense. *See* ECF 73 at 15. In a hypothetical statute that extended to documents that an election official "has *or* comes into possession of," perhaps DOJ's construction would gain purchase. But here, Title III only includes documents that "come into [the] possession" of the Board. As set forth in Matthews's motion, the unredacted voter list never "comes into" the Board's possession—it was created internally and maintained using information from a variety of sources. *See* ECF 65-2 at 4–6 (detailing list maintenance); *see Benson*, 2026 WL 362789, at *10.

The fact that Matthews's subordinates at the Board and her local counterparts use various sources of information to compile and update the voter list, ECF 73 at 16, is immaterial: DOJ sued Matthews in her *official* capacity as Executive Director of the Illinois State Board of Elections, meaning that the Board is the real party in interest: "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also* Fed. R. Civ. P. 17(d), 25(d) (providing that an action against a public official in her official capacity may legally proceed against the office). Because the Board itself internally *creates* the list, the Board never "comes into

7

possession" of it, and Title III does not require the Board to preserve and produce it. *See Lynd I,* 306 F.2d at 231 (Title III did not aim to expose "confidential, private papers and effects").[2] DOJ complains that Title III's textual limitations hamper DOJ's ability to conduct its purported investigations. *See* ECF 73 at 20–21. But it was Congress that limited the kinds of records DOJ could obtain and the process by which it could do so. Congress balanced a desire to support DOJ's investigative capabilities with avoiding undue interference in the States' operation of elections, especially in light of the Constitution's assignment of that role to the States. *See infra* p. 16.

Fourth, DOJ misconstrues Matthews's position in suggesting that Matthews seeks to exclude all non-public information from Title III's ambit. ECF 73 at 16. In fact, Matthews has already provided DOJ with a non-public version of the voter list that includes information redacted from the public list, such as street numbers of home addresses, telephone numbers, and identifiable portions of email addresses.[3] 10 ILCS 5/1A-25(c).

Finally, DOJ suggests that Illinois's participation in the Electronic Registration Information Center ("ERIC") moots Illinois's objections to disclosing every voter's personal information to the federal government. ECF 73 at 17. This is a red herring. ERIC is a nonpartisan consortium comprised of state election officials from 25 States and the District of Columbia that is funded and governed by its member states. Illinois law directs the Board to participate in ERIC and to convey necessary information to ERIC "for the purpose of maintaining a statewide voter registration database." 10 ILCS 5/1A-45(a); *see also id.* 5/1A-16.7(k). Every 60 days, ERIC provides a list of voters who moved from Illinois to another ERIC member state, moved within

---

[2] DOJ's reference to NVRA cases is inapposite. ECF 73 at 21. Those cases concerned the interpretation of a different term ("record") in a different statute, not the meaning of the phrase "come into possession."

[3] The version of the list provided to DOJ is the version that the Board routinely provides to registered political committees, for bona fide political purposes, and government entities, for government purposes. *See* 10 ILCS 5/1A-25(b). *See* ECF 65-1 (Aug. 11, 2025, Correspondence), at 1.

Illinois, passed away as reported on the Social Security Administration's Master Death List, or have a potential duplicate record in Illinois. *See* ECF 65-2 (Sept. 10, 2025, Correspondence), at 6. Local election officials then use this information to update records in compliance with State and Federal law. *See* 10 ILCS 5/1A-16.8(b). Illinois's participation in ERIC is simply evidence of its commitment to maintaining accurate voter rolls. In any event, there is no principle of law that would cause Illinois's participation in ERIC to somehow alter the meaning of Title III.

**C.    DOJ cannot retroactively add a "basis" for its written demand, and merely citing Title III is not an adequate "basis."**

Title III requires DOJ to provide "the basis *and* the purpose" for its demand "in writing." 52 U.S.C. § 20703 (emphasis added). DOJ's written demand on August 14, 2025, did not mention any "basis" (or any other forms of that word). ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence). Nor did the earlier July 28 letter, which in any event did not contain a demand under Title III. *See* ECF 5-1 Ex. 1 (July 28, 2025, Correspondence). DOJ's omission of an articulated basis provides sufficient reason to dismiss the complaint, as Matthews argued in her motion, ECF 65 at 13, and as three other courts have now held, *see Galvin*, 2026 WL 972129, at *6; *Oregon*, 2026 WL 318402, at *9; *Weber*, 2026 WL 118807, at *9.

By way of contrast, in the early 1960s, DOJ's practice was to specify the factual basis for its demands to election officials in writing up front. DOJ cherry picks statements from the *Coleman* case to suggest courts at the time allowed brief, generic statements. *See* ECF 73 at 10–11. Not so. In that case, DOJ's written demand stated, in part:

> This demand is *based* upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

*In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (emphasis added), *aff'd sub nom.*

9

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963); *see also Lynd I*, 306 F.2d at 229 n.6 (same); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same). So the contemporaneous understanding of Title III after its passage was that DOJ needed to provide a factual basis for its investigation. That is not unusual: "To invoke all (or virtually all) investigatory tools and compulsory process, the law requires some showing—typically less than the showing required to prevail on the related claim." *Galvin*, 2026 WL 972129, at *6. DOJ is hoping that it can instead rely on *no* showing.

DOJ contends in a footnote that no "distinct" basis is required and that, instead, a purpose alone can suffice. ECF 73 at 11 n.7. That cannot be correct; then the requirement of a "basis" would add nothing to the meaning of the statute. *See United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) ("We avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless."). DOJ's interpretation would also require the conjunctive "and" connecting "the basis" with "the purpose" to instead mean the disjunctive "or." *See Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 683 (7th Cir. 2018) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives.") (quoting Antonin Scalia & Bryan A. Garner, Reading Law 116 (2012)). Neither case that DOJ cites in its footnote claimed, as DOJ would have it, that "the same explanation can furnish both." ECF 73 at 11 n.7. Instead, those opinions just happened to use the phrase "basis and purpose," without suggesting in any way that the two words mean the same thing. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 (1984); *Heckler v. Chaney*, 470 U.S. 821, 841 (1985) (Marshall, J., concurring). "Congress could not have intended Title III to be interpreted in this redundant and circular manner." *Amore*, 2026 WL 1040637, at *5.

Pivoting, DOJ attempts to now provide a "basis" after the fact in its opposition brief and accompanying declaration. *See* ECF 73 at 10–12; ECF 73-1 (2d Neff Decl), ¶¶ 4–5, 9. It cannot

10

do that. *See* ECF 65 at 14. The original "demand in writing" needs to "contain" the "statement of the basis." 52 U.S.C. § 20703. "The statute therefore directs the Court to the Attorney General's written demand—rather than the United States' subsequent court filings—to determine whether that demand 'contain[ed] a statement of the basis' for the demand." *Galvin*, 2026 WL 972129, at *3 (quoting 52 U.S.C. § 20703). As in Administrative Procedure Act litigation, a post-hoc rationalization does not suffice. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 21 (2020). DOJ did not respond to Matthews's argument that the basis needed to be specified on August 14, 2025, ECF 73 at 10–12, forfeiting any opposition on the point. *See Kirksey*, 168 F.3d at 1041.

Finally, even if the Court examined DOJ's purported bases provided in its opposition brief, they fail. First, DOJ argues that all it needed to do was make "reference to the statutory basis for making the demand, namely the CRA." ECF 73 at 10. An unadorned citation to Title III is not a valid "basis." That interpretation would, once again, read the word "basis" out of the statute, because the "basis" requirement would then be automatically satisfied in every possible written demand under Title III. "This argument confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state 'the basis'—the foundation in fact or evidence for the demand." *Galvin*, 2026 WL 972129, at *5. Second, DOJ argues that its *July 28* letter raised concerns about Illinois's compliance with "the list maintenance provisions of the NVRA and HAVA," providing an adequate basis. ECF 73 at 12. For one thing, the August 14 correspondence, not the July 28 correspondence, contained the Title III written demand, "and the August 14 Letter's Title III demand does not identify the information in the July [28] Letter as its factual basis." *Oregon*, 2026 WL 318402, at *9. But even if the Court assumed that DOJ can treat the two letters as one unified Title III demand, NVRA and HAVA-related

11

queries cannot form the basis for a valid Title III investigation. *See* ECF 65 at 14–18; *infra* pp. 11–14. DOJ has articulated no basis grounded in the legitimate scope of Title III.

**D.      Enforcement of the NVRA and HAVA is not a valid "purpose" under Title III.**

Title III was enacted as part of the Civil Rights Act of 1960 to bolster federal enforcement of the Fifteenth Amendment and its implementing legislation. *See* ECF 65 at 1–2, 15–16. The written purpose that DOJ gives, "to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA," ECF 5-2 Ex. 2 (Aug. 14, 2025, Correspondence), at 8, is therefore not legitimate under Title III. DOJ's response reiterates that list maintenance is the "one purpose" for its demand, ECF 73 at 5, but it contends that Title III can be used to enforce any federal law, *id.* at 13–15. DOJ's interpretation should be rejected.

Textual interpretation requires "a careful examination of the ordinary meaning and *structure* of the law," *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (emphasis added), not just one piece of it in isolation. "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *City & Cnty. of San Francisco v. EPA*, 604 U.S. 334, 350 (2025) (quotation omitted). DOJ argues that Title III does not reference racial discrimination in its text, *see* ECF 73 at 13–14, but DOJ ignores all structure and context. The substantive law for which Title III serves as an enforcement mechanism is the Enforcement Act of 1870, as expanded by the Civil Rights Act of 1957. *See* Ch. 114, 16 Stat. 140, 140, § 1; Pub. L. 85-315, § 131, 71 Stat. 634, 637. The Enforcement Act *does* expressly reference racial discrimination: "All citizens of the United States who are otherwise qualified by law to vote . . .  shall be entitled and allowed to vote . . . without distinction of race, color, or previous condition of servitude." 52 U.S.C. § 10101(a)(1). Until a 2014 re-codification, this guarantee of equal rights was codified at 42 U.S.C. § 1971, and Title III was codified immediately following it

12

at § 1974.[4] Soon after Title III's enactment, in the Civil Rights Act of 1964, Congress expressly tied § 1971 to § 1974, amending § 1971 to mandate retention and production of literacy-test papers to the individuals who took them "within the period of time during which records and papers are required to be retained and preserved pursuant to title III of the Civil Rights Act of 1960 (42 U.S.C. 1974–74e; 74 Stat. 88)." Pub. L. 88-352, § 101, 78 Stat. 241, 241 (1964) (now codified at 52 U.S.C. § 10101(a)(2)(C)). The 1964 language provides explicit contemporary evidence that Congress viewed the Enforcement Act of 1870 and Title III as part of the same "overall statutory scheme." *San Francisco v. EPA*, 604 U.S. at 350.

So, when early courts applying Title III spoke about "any violation of Federal law," they were referring to violations "in connection with the registration and voting of [Black citizens]." *In re Coleman*, 208 F. Supp. at 200–01. The "purpose" of "[t]he Title III proceeding" was "to determine whether § 1971 suits or similar actions should be instituted." *Lynd I*, 306 F.2d at 228. On the other hand, these contemporary decisions regarded "failures to purge voters who have moved away or have died," the subject of the NVRA, as having no "particular importance" to a Title III investigation. *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962).

DOJ attempts to contrast Title III, which allegedly lacks reference to discrimination, with Title VII of the Civil Rights Act of 1964 and the "Fair House [sic] Act of 1968." ECF 73 at 14 & nn. 9, 11. But these examples merely prove that Title III is limited to enforcing equal voting rights. The subpoena provision of Title VII does *not* reference protected categories—only the substantive prohibition does. *Contrast* 42 U.S.C. § 2000e-9 (barebones investigative provision incorporating by reference a subpoena provision from another law); *with id.* § 2000e-2 (substantive prohibition that DOJ cites). The Fair Housing Act of 1968 similarly authorizes subpoenas in general terms, 42

---

[4] *See* Office of the Law Revision Counsel, *Editorial Reclassification: Title 52, United States Code*, https://uscode.house.gov/editorialreclassification/t52/index.html.

U.S.C. § 3611, and only the substantive prohibitions discuss the classifications prohibited by the Act, *id.* §§ 3604–3606. The commonsense parallel conclusion is the opposite of the conclusion that DOJ draws: Congress granted investigatory powers to enforce accompanying laws, not just any federal law at all.[5]

The NVRA and HAVA were enacted decades later for a totally different purpose, to impose baseline national standards for voter list maintenance, to "protect[] registered voters from improper removal from the rolls and place[] limited requirements on states to remove ineligible voters from the rolls." *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017). The NVRA and HAVA have their own separate enforcement provisions and do not cross-reference Title III. *See* 52 U.S.C. §§ 20507(i), 20510, 21111. Matthews argued in her motion that these separate mechanisms demonstrate congressional intent that those devices, not Title III, provide DOJ's tools for enforcement of the NVRA and HAVA. *See* ECF 65 at 16. Even while DOJ's opposition notes the existence of these distinct enforcement provisions, *see* ECF 73 at 5, it never responds to Matthews's point that they foreclose the use of Title III as a duplicative mechanism. Once again DOJ forfeits a legally dispositive issue. *See Shipley*, 947 F.3d at 1063. Enforcement of the NVRA and HAVA cannot justify a Title III demand.

DOJ's interpretation, in fact, would simply read the "purpose" requirement out of the statute. DOJ tries to give the word some content by saying that Title III must be used to enforce *some* federal law, though not specifically voting rights laws. *See* ECF 73 at 14. But, as the Oregon

---

[5] In the introduction of its brief, DOJ cites various consent decrees where other States agreed to produce or retain records pursuant to Title III. *See* ECF 73 at 3. DOJ does not revisit the topic in argument or explain why it matters. "[C]onsent decrees do not bind non-parties or create generally applicable rules of law." *Rueda v. Midland Credit Mgmt., Inc.*, 2019 WL 3943681, at *3 (N.D. Ill. Aug. 21, 2019). "[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522 (1986). So the consent decrees have no persuasive force on any legal point.

14

court explained, "that limitation on 'purpose' does not appear in the statute, either. Following [DOJ's] reading of the statute to its logical conclusion, Title III would allow [DOJ] access to those records for *any* purpose it put into writing in its demand." *Oregon*, 2026 WL 318402, at *9 (emphasis in original); *see also Amore*, 2026 WL 1040637, at *6 (same). Expanding the meaning of "purpose" to the point where it imposes no limit at all should be avoided. *See Berkos*, 543 F.3d at 396. That is especially true here, where DOJ's interpretation infringes upon the States' traditional and constitutionally guaranteed role as the primary administrators of federal elections. *See infra* p. 16.

Finally, even if voter list maintenance were a valid "purpose" for a Title III demand, DOJ still has not explained how acquiring an outdated copy of the voter list would serve that purpose. *See* ECF 65 at 16–18. Confronted with this basic question, DOJ has no compelling answer. Instead of discussing any of Matthews's actual list-maintenance duties, DOJ retreats to the position that it just seeks to check whether Matthews is collecting driver's license or social security numbers as required by HAVA. *See* ECF 73 at 11–12 (citing 52 U.S.C. § 21083(a)(5)(A)(i)). DOJ does not need to collect millions of Illinois voters' sensitive personal identifiers to verify that aspect of Illinois voter registration practices. Illinois law requires the Board to collect such identifiers, in compliance with federal law. *See* 10 ILCS 5/1A-16(d)(10)–(11), 5/1A-16.5(e). The publicly available voter application accordingly asks for the required identifiers. *See* Ex. 5 (Illinois Voter Registration Application).[6] A civil investigative demand must seek "relevant" information that is not "unduly burdensome in light of the circumstances." *McLane Co. v. EEOC*, 581 U.S. 72, 81

---

[6] Matthews requests that the Court take judicial notice of the voter registration form. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."). The form is available for download online at: https://www.elections.il.gov/InformationForVoters.aspx?MID=I0cuvBFuZRw%3d.

(2017). A demand to reveal all Illinois voters' private information just to double-check this basic fact about Illinois law flunks the test.

**E.     DOJ offers no meaningful response to Matthews's argument that its use of Title III in these lawsuits raises serious constitutional concerns.**

The United States Constitution grants States the power to administer federal elections, subject to Congress' limited power to preempt State regulations governing the time, place, and manner of these elections. *Foster v. Love*, 522 U.S. 67, 69 (1997); *see* U.S. Const. art. 1, § 4, cl. 1; U.S. Const. art. 1, § 2, cl. 1; 52 U.S.C. § 20503(a) (States conduct voter registration as "provided for under State law"). And Congress can delegate its Elections Clause authority to preempt state law only by "speak[ing] clearly." *Util. Air Reg. Grp. v. E.P.A.*, 573 U.S. 302, 324 (2014). It has not done so here. DOJ provides only a cursory response, merely stating that Title III is "an express grant of authority from Congress." ECF 73 at 23. Title III grants DOJ authority to inspect and copy records that come into an election official's possession and that relate to a specific federal election within twenty-two months of that election, with a proper basis and purpose, grounded in the Fifteenth Amendment. It does not grant authority to DOJ to assert sweeping oversight of state-run elections despite having no constitutional role in election administration.

### III. CONCLUSION

The complaint should be dismissed with prejudice for failure to state a claim.

Dated: April 17, 2026                          Respectfully submitted,

Vikas Didwania                                  KWAME RAOUL,
Holly F.B. Berlin                               Attorney General of Illinois, on behalf of
R. Henry Weaver                                 Bernadette Matthews, Executive Director of the
Office of the Illinois Attorney General         Illinois State Board of Elections
115 S. LaSalle St.
Chicago, IL 60603                               By:   */s/ Holly F.B. Berlin*
*vikas.didwania@ilag.gov*                             Assistant Attorney General
*holly.berlin@ilag.gov*
*robert.weaver@ilag.gov*
(312) 814-3000

16

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Civil Local Rule 7.1(B)(4)(c) that this memorandum complies with the type volume limitation. This memorandum contains 5674 words, including all headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, and signature block.

By:  */s/ Holly F.B. Berlin*
Holly F.B. Berlin