**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

BERNADETTE MATTHEWS, *in her official capacity as Executive Director of the State Board of Elections for the State of Illinois*,

    *Defendant*.

Case No. 3:25-cv-3398

**ILLINOIS AFL-CIO, ILLINOIS ALLIANCE FOR RETIRED AMERICANS, AND ILLINOIS FEDERATION OF TEACHERS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.      DOJ cannot avoid this Court's review. ....................................................................... 2

    A.  The Federal Rules apply, requiring adjudication of the motions to dismiss.................... 2

    B.  The Court must review the lawfulness of DOJ's demand. ............................................. 4

II.     DOJ failed to provide an adequate basis and purpose for its demand. ................................ 7

    C.  DOJ failed to state *any* "basis" for its demand. ................................................. 7

    D.  DOJ did not provide a legally sufficient "purpose" for its demand............................. 10

III.    Title III does not authorize the generalized audit power DOJ asserts. ............................... 12

IV.     Title III does not prohibit redaction of sensitive voter information..................................... 14

V.      DOJ's collection of Illinois' voter list would violate the Privacy Act............................... 14

CONCLUSION..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 6

*Arizona v. United States*,
567 U.S. 387 (2012) ............................................................................................. 14

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ......................................................................... 3, 4

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) ........................................................................... 4, 9

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963) ................................................................................ 8

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ............................................................................................... 13

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ....................................................................................... 11, 12

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ............................................................................................. 13

*Gahagan v. USCIS*,
911 F.3d 298 (5th Cir. 2018) ................................................................................ 5

*Gonzalez v. Thaler*,
623 F.3d 222 (5th Cir. 2010) ................................................................................ 5

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) ..................................................................... 8

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ....................................................................... *passim*

*Kirksey v. R.J. Reynolds Tobacco Co.*,
168 F.3d 1039 (7th Cir. 1999) ............................................................................ 14

*McHenry County v. Raoul*,
44 F.4th 581 (7th Cir. 2022) ............................................................................... 14

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ................................................................................................. 10

*Sec. & Exch. Comm'n v. Marin*,
    982 F.3d 1341 (11th Cir. 2020) ................................................................................ 3

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
    584 F.3d 340 (1st Cir. 2009) .................................................................................... 4

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001) .................................................................................................... 8

*United States v. Adams*,
    777 F. Supp. 3d 185 (S.D.N.Y. 2025) ..................................................................... 11

*United States v. Amore*,
    No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ...................... *passim*

*United States v. Benson*,
    No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................................ 3, 5, 10

*United States v. Galvin*,
    No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ................................ *passim*

*United States v. LaSalle Nat'l Bank*,
    437 U.S. 298 (1978) .................................................................................................. 11

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962) .................................................................................... 6

*United States v. Markwood*,
    48 F.3d 969 (6th Cir. 1995) ...................................................................................... 11

*United States v. Millman*,
    822 F.2d 305 (2d Cir. 1987) ..................................................................................... 4

*United States v. Oregon*,
    No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ............................... *passim*

*United States v. Powell*,
    379 U.S. 48 (1964) .................................................................................................... *passim*

*United States v. Tan*,
    16 F.4th 1346 (9th Cir. 2021) ................................................................................... 3

*United States v. Weber*,
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................. *passim*

iii

*United States v. Zack*,
521 F.2d 1366 (9th Cir. 1975)..................................................................................... 4

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .................................................................................................. 13

## STATUTES

26 U.S.C. § 7604 ...........................................................................................................2

26 U.S.C. § 7605 ...........................................................................................................3

42 U.S.C. § 1973gg .......................................................................................................7

5 U.S.C. § 552a ..................................................................................................... 14, 15

52 U.S.C. § 20507 .........................................................................................................7

52 U.S.C. § 20701 ....................................................................................................... 13

52 U.S.C. § 20702 ....................................................................................................... 13

52 U.S.C. § 20703 ..................................................................................................... 4, 9

52 U.S.C. § 20705 .........................................................................................................2

52 U.S.C. § 21083 ....................................................................................................... 13

## OTHER AUTHORITIES

106 Cong. Rec. 5086 (1960)..........................................................................................9

*Basis, Black's Law Dictionary* (4th ed. 1968) ...........................................................8

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026),
available at https://perma.cc/UL2Y-TYKX............................................................ 11

*Hearings Before Subcomm. No. 5 of the H Comm. on the Judiciary*,
86th Cong. 212 (1959), available at https://perma.cc/ET26-FKD9 .......................9

Sarah N. Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll data to Homeland Security, sources say*, CBS News (Mar. 26, 2026), https://www.cbsnews.com/news/justice-dept-finalizing-deal-voter-roll-data-homeland-security/.................................................................................................... 13

**INTRODUCTION**

The Department of Justice ("DOJ") has filed more than two dozen lawsuits seeking to compel states and D.C. to produce their unredacted voter registration lists, including private voter information protected by state law. When Intervenors filed their motion to dismiss in March, three federal courts—in California, Oregon, and Michigan—had already dismissed DOJ's complaints. *See* Intervenors' Mot. Dismiss at 2, ECF No. 56 (citing decisions). Since then, two more have done the same, in Massachusetts, *see United States v. Galvin*, No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026), and Rhode Island, *see United States v. Amore*, No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026). As of this filing, every court that has ruled on a motion to dismiss in these cases has granted them. This Court should do the same.

DOJ attempts to avoid this result by arguing that the Court has no authority to review the demand at all. But, as in its motion to compel, DOJ relies on a distinguishable and decades-old out-of-circuit case, *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), that was never binding here and was implicitly overruled by *United States v. Powell*, 379 U.S. 48, 52 n.10 (1964). There, the U.S. Supreme Court held both that (1) the Federal Rules apply when statutes—like Title III of the Civil Rights Act—confer jurisdiction on federal courts "by appropriate process to compel" compliance with federal document demands, *id.* at 52 n.10, and (2) courts may "inquire into the underlying reasons for" the demand. *Id.* at 52, 58 & n.18; *see also* Intervenors' Mot. Dismiss at 7–8; Intervenors' Opp. to Mot. to Compel at 3–4, ECF No. 57. DOJ's attempt to distinguish *Powell* ignores its plain and clear language.

It is not surprising that DOJ wishes to avoid review, because its demand is facially insufficient under Title III's plain language, which expressly requires that any demand made pursuant to it must state both a basis *and* purpose. DOJ failed to identify *any* adequate "basis" in its demand of Illinois, and its stated "purpose"—regulatory oversight under the NVRA and

1

HAVA—falls outside of Title III. DOJ largely ignores Intervenors' argument that Title III does not authorize it to make demands in service of that purpose. But both the context and history of Title III is clear: it is an investigative tool for DOJ to use when it has a basis for believing election officials are violating voting rights; it does *not* grant the federal government freestanding audit or supervisory authority over state elections. Nor does DOJ even attempt to argue that Title III preempts Illinois' privacy laws, or offer any basis for concluding that DOJ has complied with the Privacy Act. Each of these failures independently requires dismissal.

**ARGUMENT**

**I.      DOJ cannot avoid this Court's review.**

**A.      The Federal Rules apply, requiring adjudication of the motions to dismiss.**

DOJ's lead argument—that the Federal Rules, and thus Rule 12(b)(6), do not apply—is foreclosed by Supreme Court precedent. *See Powell*, 379 U.S. at 58 n.18; *see also United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *8 (C.D. Cal. Jan. 15, 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *Amore*, 2026 WL 1040637, at *4. Intervenors addressed this argument in their opposition to DOJ's motion to compel (at 3–4). But, simply put, *Powell* confirmed that, where a statute authorizes courts to compel compliance through "appropriate process," but "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply," and courts may inquire into the underlying reason for the demand. 379 U.S. at 52, 58 n.18. That holding controls here: Title III and the statute at issue in *Powell* use *identical* language, both providing that district courts "shall have jurisdiction by appropriate process to compel" production of the records at issue. *Compare* 52 U.S.C. § 20705, *with* 26 U.S.C. § 7604(a).

2

DOJ attempts to escape *Powell* by misreading it. Specifically, DOJ claims that *Powell* based its conclusions on language in the Internal Revenue Code protecting taxpayers from "unnecessary examination or investigations," 26 U.S.C. § 7605(b), and argues that, because "no similar language limits the Attorney General's authority to compel records under" Title III, *Powell* does not apply. Opp. at 8, ECF No. 73 (quoting *Powell*, 379 U.S. at 52–53). But that is not what *Powell* says. The Court did *not* rely on section 7605(b) to justify its application of the Federal Rules. It held very squarely that, when there is "no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18. For that reason, Courts of Appeals treat *Powell* as a seminal case when reviewing investigative demands in many contexts. *See e.g.*, *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 688 (D.C. Cir. 2017) (Consumer Financial Protection Bureau civil investigative demand); *Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020) (Securities and Exchange Commission subpoena); *United States v. Tan*, 16 F.4th 1346, 1353 (9th Cir. 2021) (Customs and Border Protection summons). DOJ cannot avoid its application here.

Several courts have recognized as much in rejecting DOJ's parallel claims against other states by applying the Federal Rules and holding that DOJ's Title III claim cannot survive its mandatory encounter with Rule 12. *See Weber*, 2026 WL 118807, at *8 n.15, *20 (finding the Federal Rules apply to DOJ's complaint and dismissing same); *Oregon*, 2026 WL 318402, at *8, 10, 12 (same); *Amore*, 2026 WL 1040637, at *4-6 (same).[1] This Court should similarly conclude that the Federal Rules govern and grant the motions to dismiss.

---

[1] Although the court in *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789, at *7, 9–11 (W.D. Mich. Feb. 10, 2026), indicated it might have come to a different conclusion had DOJ pled that case differently, that suggestion is clearly dicta—*Benson did* apply the Federal Rules and grant Intervenors' motions to dismiss—nor is that dicta consistent with *Powell* for the reasons explained.

**B.**        **The Court must review the lawfulness of DOJ's demand.**

DOJ is also wrong to suggest that this Court cannot review whether its demand complies with Title III. Opp. at 2. As Intervenors explained in their opposition to DOJ's motion to compel (at 3–5), this argument is also foreclosed by *Powell*, which makes clear that courts have a duty to consider whether a governmental demand is appropriate under the law. The Court explained, "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58.

Courts are thus empowered to decide whether demands comply with their authorizing statutes—including by requiring the government to show its investigation serves "a legitimate purpose" and that "the inquiry may be relevant to the purpose." *E.g.*, *id.* at 57; *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (noting an agency's authority to demand documents and information "is a creature of statute," and, as such, it "must comply with statutory requirements"); *see also ACICS*, 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements); *United States v. Zack*, 521 F.2d 1366, 1368–69 (9th Cir. 1975) (considering whether agency issued summons for an improper purpose); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009) (allowing summons recipient opportunity to rebut government's prima facie case); *United States v. Millman*, 822 F.2d 305, 308–09 (2d Cir. 1987) (holding a summons recipient can successfully challenge a government document request by "showing bad faith on the part of the [agency]").

Here, Title III includes the express requirement that any demand state "the basis and the purpose" for the government's request. 52 U.S.C. § 20703. Courts have uniformly held that whether DOJ has satisfied that requirement is subject to judicial review. *See Oregon*, 2026 WL 318402, at *7–8 ("There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding

4

Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place."); *Weber*, 2026 WL 118807, at *8–12 (granting motion to dismiss because stated basis and purpose were inadequate); *Galvin*, 2026 WL 972129, at *4 (dismissing case because there was no "basis" for DOJ's demand, and thus demand was facially inadequate); *Amore*, 2026 WL 1040637, at *5–6 (granting motion to dismiss DOJ's case after concluding its demand lacks a "legally sufficient" basis or purpose).

DOJ claims that *Benson* came to the contrary result, but while that opinion states—unique among courts to have reached this issue—that Title III "does not allow courts to evaluate the substance of the DOJ's purported basis and purpose," Opp. at 9 (quoting *Benson*, 2026 WL 362789, at *8), even it concluded that courts may assess whether DOJ satisfied Title III's explicit "basis" and "purpose" requirements—indeed, the *Benson* court conducted such an assessment itself (and found DOJ's demand wanting). *Benson*, 2026 WL 362789, at *8. To the extent *Benson* meant to hold that courts can determine whether there was an asserted basis and purpose in a Title III demand, but not whether the basis or purpose was adequate or appropriate under that provision, it reached that conclusion in reliance on *Lynd*, but on this point too, *Lynd* was implicitly overruled by *Powell*. *See Benson*, 2026 WL 362789, at *8 (citing *Lynd*, 306 F.2d at 226); *Powell*, 379 U.S. at 58; *see also Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010)).

The *Benson* decision and DOJ also both ignore the vastly different context in which *Lynd* (and similar cases from the South in the early 1960s) were decided, as well as the content of the demand that the court evaluated in *Lynd*. This includes *Lynd*'s emphases that (1) DOJ's demand in that case "adequately stated the basis and purpose therefor" under Title III's requirements, 306

5

F.2d at 229, (2) if there were "a genuine dispute" as to whether specific information "comes within" the reach of Title III "the Court would, of course, be open for its determination," *id.* at 226, and (3) it was "of great importance" that the records DOJ sought were "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers," *id*. at 231.

Every single one of these factors is different in this case. In *Lynd*, DOJ sought records from targeted jurisdictions "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [those] jurisdiction[s]." *Id*. at 229 n.6. Compare that with DOJ's demand of Illinois here, discussed further in Section II, below. Nor was there any serious question that DOJ had a factual basis to believe that the targeted jurisdictions in *Lynd* were violating voting rights: "[n]o Negro had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected." *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (enjoining alleged voting rights violations pending appeal). There also was no dispute as to whether the purpose underlying the demand was proper, because Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." *Lynd*, 306 F.2d at 228; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial discrimination."); *Oregon*, 2026 WL 318402, at *10 (the purpose of a Title III demand "must relate to . . . investigating violations of individuals' voting rights"). Further, while it was "of great

importance" to the *Lynd* court that the records DOJ sought were "public records which ought ordinarily to be open to legitimate reasonable inspection," 306 F.2d at 231, here DOJ is specifically *targeting* confidential, private information.

Absent shelter in the law (including the primary authority that DOJ upon which has built its entire case), DOJ attempts to appeal to policy concerns, arguing that "[t]he United States cannot be expected to effectively enforce federal election laws such as HAVA and the NVRA if the Attorney General is required to allege facts from federal election records that state officers of election have denied to her." Opp. at 6. But that ignores that Congress used *its* policy judgment to determine the most appropriate way for DOJ to enforce those laws and provided tools for their enforcement in the NVRA and HAVA themselves. *See, e.g.*, 42 U.S.C. § 1973gg(6)(1) (transferred to 52 U.S.C. § 20507). DOJ may not be satisfied with those tools here, but it is stuck with them. Neither DOJ nor this Court has any authority to override congressional judgment and graft new investigatory tools into the law that are not there simply because DOJ has decided it wants something more. And Congress also used its policy judgment in drafting Title III to explicitly require that a demand under that law must include both "'a statement of the basis' [and the purpose] for the demand." *Galvin*, 2026 WL 972129, at *6. This Court has the authority (and the duty) to consider whether DOJ satisfied that requirement here.

## II.     DOJ failed to provide an adequate basis and purpose for its demand.

### C.     DOJ failed to state *any* "basis" for its demand.

The Court need go no further than look to DOJ's demand—set forth in its August 14 letter—to hold it is faulty on its face, because it states no "basis" for its demand of Illinois here at all. *See* Mot. Compel Ex. 2, ECF No. 5-2 ("Aug. 14 Letter"). That omission alone requires dismissal. *See, e.g.*, *Amore*, 2026 WL 1040637, at *5–6. To avoid this result, DOJ offers two arguments. First, it contends that "the basis for the demand was Title III." Opp. at 9. But that is the

*authority* under which the request was purportedly made, not the factual *basis* for the request. *See, e.g.*, *Oregon*, 2026 WL 318402, at *8 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."); *Galvin*, 2026 WL 972129, at *4 (finding DOJ stated no basis where its demand letter "contain[ed] nothing that could fairly be characterized as the factual basis for the demand"); *Amore*, 2026 WL 1040637, at *5 ("[T]he 'basis'" contemplated by Title III is a factual, not legal basis."); *see also Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" as the "groundwork," "support," or "foundation" of something).

DOJ's reading contravenes the "cardinal principle of statutory construction" that a statute should be construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotation omitted); *Galvin*, 2026 WL 972129, at *4 (same). If Title III itself were an adequate "basis," the statute's "basis" requirement would be superfluous. For the same reasons, DOJ's attempt to collapse "basis" and "purpose" into a single requirement, Opp. at 11 n.7, also fails. *See Galvin*, 2026 WL 972129, at *4 (rejecting this argument); *Oregon*, 2026 WL 318402, at *8–9 (same); *Amore*, 2026 WL 1040637, at *5 (same).[2] More broadly, if merely invoking Title III were sufficient, DOJ would have "virtually limitless access to records required to be maintained under" that provision. *Oregon*, 2026 WL 318402, at *8. The written "basis" and "purpose" requirement would have no function under such a scheme. *See* Alliance Mot. Dismiss at 12–13, ECF No. 56.

---

[2] As noted in the discussion about *Lynd*, *see supra* Section I, DOJ's past practice confirms that it also previously understood Title III to require both a factual basis and valid purpose for a demand. In *Lynd*, its demand said it had "information . . . tending to show" that racial discrimination in voter registration had occurred in the target jurisdiction. 306 F.2d at 229 n.6; *see also In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (upholding Title III demand "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction"), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963); *Lynd*, 306 F.2d at 229 n.6.

If Congress had intended to grant DOJ such freestanding audit power over state voting records, it would have said so. But the legislative history says just the opposite. *See, e.g.*, Hearings Before Subcomm. No. 5 of the H Comm. on the Judiciary, 86th Cong. 212, 700 (1959), *available at* https://perma.cc/ET26-FKD9 ("It [was not the purpose of title III to supervise State elections.") (statement of Rep. William M. McCulloch, a principal drafter of Title III). Instead, the "purpose of Title III" was to preserve records for cases where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right." *Id.*, *see also id*. at 599 (Attorney General Rogers explaining Title III is meant to facilitate investigations into "complaints that qualified persons have been denied the right to vote in violation of Federal law"), 106 Cong. Rec. 5086 (1960) (explaining Title III "requires the preservation of voting records and gives the Justice Department power to inspect them in enforcing the 1957 act" (Statement of Sen. Saltonstall)).

Alternatively, DOJ argues that it *has* provided a factual basis because the Court can extrapolate one from its letters to Illinois. Opp. at 11–12. To that end, DOJ cites its demand for "all fields" in the voter file and a footnote stating its position that HAVA intended to empower DOJ to "conduct an independent review of each state's list." *Id.* This is plainly insufficient; a broad statement of what DOJ believes HAVA empowers it to do does not explain "what conduct, [DOJ] believes, constitute[d] an alleged violation" of federal law. *Source for Pub. Data*, 903 F.3d at 458– 59. DOJ also contends that data from the Election Assistance Commission that was cited in a separate letter sent on July 28, 2025, which did not mention Title III or the Civil Rights Act, provides the "basis" for DOJ's demand. Opp. at 12. This does not suffice either. Title III provides that "*th[e] demand* shall contain a statement of the basis and the purpose therefor," not that a basis can be inferred from separate communications. 52 U.S.C. § 20703 (emphasis); *accord Galvin*, 2026 WL 972129, at *4; *Oregon*, 2026 WL 318402, at *9 ("Plaintiff's patchwork and post hoc

9

effort to stitch together a legally sufficient 'statement of the basis' fails."). Even if the July 28 letter could be considered part of the demand, it does not provide the "basis" required by Title III because it fails to point to "[any] purported anomalies" in Illinois' voter registration data suggesting that the state had failed to comply with some requirement of federal law. *Galvin*, 2026 WL 972129, at *4; *Amore*, 2026 WL 1040637, at *5; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021) (holding that statutory instructions similar to Title III require the government to provide a "single document containing the required information, not a mishmash of pieces with some assembly required.").[3] In short, because DOJ's demand to Illinois includes no "basis" under Title III, it is facially inadequate, and the complaint must be dismissed.

**D.      DOJ did not provide a legally sufficient "purpose" for its demand.**

Beyond contending that its "purpose" is unreviewable, DOJ does not argue that an objective outside the ambit of Title III's authority can satisfy the purpose requirement. Nor does it show that Title III authorizes DOJ's stated purpose: "to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 14 Letter at 2. As explained below, Title III does not sanction the broad oversight DOJ asserts. *See infra* Section III. DOJ cannot satisfy the "purpose" requirement by stating a goal the statute does not authorize. Nor can it justify its demand for Illinois's voter files (as it attempts to do for the first time in its response) by pointing to a solitary enforcement action in North Carolina. Opp. at 2. And, indeed, DOJ fails entirely to explain how that example could possibly serve to undermine the integrity of *Illinois's* voter file or list maintenance practices.

But even if DOJ's purpose were valid on its face, there is ample evidence it does not reflect

---

[3] The court in *Benson* incorrectly considered a letter outside of DOJ's Title III demand in finding that DOJ had satisfied the "basis" requirement. *See* 2026 WL 362789, at *8 n.3. That letter is also distinguishably different than DOJ's demand to Illinois.

DOJ's true or full purpose. In the context of a government demand, "the dispositive question . . . is whether the [agency] is pursuing the authorized purposes in good faith." *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995) (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317–18 (1978)). A "request grounded in pretext cannot be made in good faith." *United States v. Adams*, 777 F. Supp. 3d 185, 232 (S.D.N.Y. 2025). Yet, as several courts have noted, public statements indicate that DOJ's purposes for these demands of the states go "beyond [its] purported compliance check . . . and into the territory of comprehensive data collection." *Weber*, 2026 WL 118807, at *10 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 756 (2019)); *see also Oregon*, 2026 WL 318402, at *11.[4]

Even in the confines of these lawsuits, DOJ keeps changing its story. For example, in seeking to expedite its appeals in California, Oregon, and Michigan, DOJ claimed for the first time that it needs the files to identify noncitizens on the rolls before the 2026 elections—a purpose nowhere mentioned in its papers before the district courts in those cases, or in its demand to Illinois or its filings here. *See* Alliance Mot. Dismiss Supp. at 1–2, ECF No. 69. Now, in its merits briefing in those appeals, it has abandoned this argument entirely. *See generally* DOJ Br., *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 18, 2026); DOJ Br., *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 18, 2026); DOJ Br., *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 24, 2026). This Court is not obliged to "ignore the disconnect between the decision made and the explanation

---

[4] In addition to prior statements noted by these courts and in Intervenors' response in opposition to DOJ's motion to compel (at 8-9), on March 31, 2026, President Trump issued an Executive Order titled "Ensuring Citizenship Verification and Integrity in Federal Elections," which directs the Secretary of Homeland Security to compile "State Citizenship Lists" of "confirmed" U.S. citizens who are eligible voters in each state and directs the Postal Service not to transmit ballots from any person not on those lists. *See* Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), available at https://perma.cc/UL2Y-TYKX. It seems implausible that DOJ's efforts here (and in the 29 similar cases it is currently litigating) would not be used to build these lists.

given"—or "exhibit a naiveté from which ordinary citizens are free." *Weber*, 2026 WL 118807, at *10 (quoting *Dep't of Com.*, 588 U.S. at 756).

### III.    Title III does not authorize the generalized audit power DOJ asserts.

This Court need not reach this question in order to dismiss DOJ's complaint, because its demand fails to comply with the explicit requirements of Title III, as discussed above. But DOJ's claim is separately fatally flawed because Title III does not authorize it at all. As Intervenors explained in their motion to dismiss, both the language and statutory framework of Title III confirm that what it allows DOJ to do is investigate discrete *violations of voting rights*—not exercise supervisory oversight over all state voting data for all purposes. *See* Alliance Mot. Dismiss at 11–14.

DOJ does not address any of that. Instead, it argues only that Title III investigations cannot be limited to those based on racial discrimination or violations of the right to vote, Opp. at 13–15, but this is not the argument Intervenors make. Rather, Intervenors argue that the structure, language, and context of Title III confirm its role as an enforcement tool to protect federal voting rights. *See* Alliance Mot. Dismiss at 11–12.[5] Nor can DOJ cite any case in which a court has approved of a demand made under Title III to assess a State's HAVA compliance, or for *any* purpose beyond investigation into the infringement of federal voting rights.

DOJ also fails to consider the sweeping implications of its assertion of federal power. Under its theory, nothing would stop DOJ from demanding state election records to investigate

---

[5] DOJ bizarrely claims that rejecting its reading of Title III would prevent DOJ from enforcing "requirements in HAVA and the NVRA that help protect voting rights." Opp. at 14. But DOJ does not even pretend that it seeks to enforce the rights-protecting provisions of HAVA and the NVRA. Moreover, Assistant Attorney General Harmeet Dhillon has very publicly promised that suits like this one will result in "hundreds of thousands of people in some States being *removed* from the voter rolls." Alliance Resp. Mot. Compel at 7, ECF No. 57 (emphasis added).

compliance with *any* federal statute, no matter how far afield. It could use state voter data to investigate violations of admiralty, bankruptcy, or—it has elsewhere acknowledged it intends to do here—immigration law. *See* Alliance Mot. Dismiss Supp. at 1–2.[6] If Congress intended such a sweeping result, it would have said so. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

DOJ also disputes Illinois's argument that the text of Title III of the Civil Rights Act does not encompass the voter file, *See* Opp. at Sections II.D, E, but, here, too, DOJ's argument is incompatible with the statutory language. Title III not only requires election officials to "retain and preserve" records that "come into [election officials'] possession," 52 U.S.C. § 20701, but also makes tampering with or *altering* any of those records a federal crime, *see id.* § 20702 (authorizing a criminal fine or imprisonment for "[a]ny person" who "alters any record or paper required by section 20701 of this title to be retained and preserved"). Meanwhile, HAVA *requires* election officials to regularly alter state voter lists so that they remain updated. *See, e.g.*, *id.* § 21083(a)(1)(A)(iv), (a)(2)(A), (a)(4). Thus, reading Title III to encompass the voter file would put election officials at risk for criminal liability based on what HAVA affirmatively requires them to do. Courts construe statutes to avoid such conflicts. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (explaining courts should "interpret Congress's statutes as a harmonious whole rather than at war with one another"); *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (stating courts must "approach federal statutes touching on the same topic with a 'strong presumption' they can coexist harmoniously").

---

[6] *See also* Sarah N. Lynch, *Justice Dept. close to finalizing deal to hand over states' voter roll data to Homeland Security, sources say*, CBS News (Mar. 26, 2026), https://www.cbsnews.com/news/justice-dept-finalizing-deal-voter-roll-data-homeland-security/.

**IV.     Title III does not prohibit redaction of sensitive voter information.**

DOJ's complaint must also be dismissed because Illinois is entitled to redact sensitive personal information from any production of the statewide voter list, including if produced in response to a demand under Title III. *See* Alliance Mot. Dismiss at 14–16. DOJ does not contest that Illinois law protects such information. Therefore, it can obtain this information *only* if federal law preempts Illinois privacy protections. It does not, and DOJ fails to show otherwise.

Indeed, DOJ fails to address preemption at all; the word does not even appear in its brief. Nor does DOJ dispute Intervenors' argument that Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. *Arizona v. United States*, 567 U.S. 387, 400 (2012). It also never engages with the fact that *Lynd*—DOJ's principal authority—expressly held that Title III does not require disclosure of "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. And it does not argue that there is a conflict between Title III and Illinois' protection of its private voter data. *See McHenry County v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022) (explaining preemption standard). Since DOJ's claim *only* concerns the private data Illinois law protects, DOJ's failure to even argue that preemption applies requires dismissal of its claim. *See Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999) ("An unresponsive response is no response.").

**V.     DOJ's collection of Illinois' voter list would violate the Privacy Act.**

DOJ's failure to comply with the Privacy Act also requires dismissal. *See* Alliance Mot. Dismiss at 16–20. The Privacy Act is triggered whenever an agency "collects" or "maintains" any "system of records." *See* 5 U.S.C. § 552a(a)(3)–(4), (e). DOJ does not dispute that Illinois's voter file is a "system of records," or that its attempt to "collect" it invokes the Privacy Act. DOJ also does not dispute that, to comply with the Act, it was required to publish a System of Records

14

Notice ("SORN") that applies to Illinois's statewide voter list before collecting it. Nor does it contend that such a SORN exists.

DOJ addresses the Privacy Act only in passing, stating baldly that it plans to "strictly abide" by federal privacy laws. Opp. at 17–18. Bare protestations of good faith—particularly in the absence of any actual argument—cannot save DOJ's claim from dismissal. DOJ is required to comply with the Act's requirements by publishing an appropriate SORN and allowing for public comment *before* it may obtain Illinois's voter data. Because it has not pled that it has done so, "it cannot collect the sensitive, unredacted voting records of millions of [Illinoisans]." *Weber*, 2026 WL 118807, at \*18.[7]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[7] The Privacy Act also separately precludes DOJ from using Illinois's voter file for immigration and criminal investigations, *see supra* n.6, because such actions would require the creation of a "computer matching program" that lacks "legal authority." 5 U.S.C. § 552a(o)(1)(A). Under the Privacy Act, "[n]o record which is contained in a system of records may be disclosed to a recipient agency . . . for use in a computer matching program except pursuant to a written agreement between the source agency and the recipient agency" specifying, among other things, the "legal authority for conducting the program." *Id*. The only way for voter records to be of use for immigration or criminal investigations is if information contained in the voter file was "match[ed]" with other files maintained by agencies like DHS. But Intervenors are not aware of any provision of law that would authorize such a matching program to exist. Therefore, there is legal basis for such sharing to occur.

15

Dated: April 20, 2026

/s/ *Elisabeth Frost*
Elisabeth Frost
*Counsel for Proposed-Intervenors*

Elisabeth Frost
Katie Chamblee-Ryan
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
kchambleeryan@elias.law
tmengmorrison@elias.law
Tel: (202) 968-4490

Sarah Grady
John Hazinski
Adam Smith
**KAPLAN & GRADY LLC**
2071 N. Southport Ave., Ste. 205
Chicago, IL 60614
sarah@kaplangrady.com
Tel: (312) 852-2184

*Counsel for Proposed-Intervenors*

16