E-FILED
Friday, 31 July, 2026  05:06:35 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 25-cv-3398** |
| | ) | |
| **BERNADETTE MATTHEWS, in her official** | ) | |
| **capacity as Executive Director of the State** | ) | |
| **Board of Elections for the State of Illinois,** | ) | |
| Defendant. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff, United States of America, by and through the Attorney General, asks this Court to order Defendant Bernadette Matthews, as the Executive Director of the Illinois State Board of Elections, to produce federal voter records pursuant to Title III of the Civil Rights Act of 1960 ("Title III" and "CRA"). (Doc. 5). Matthews and the Intervenor Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because the United States lacks authority under Title III to demand the voter registration list from the State of Illinois. (Docs. 41, 49, 56, 64, 67). For the following reasons, the United States' Motion to Compel is DENIED and Defendants' Motions to Dismiss are GRANTED.

## I.    LEGAL BACKGROUND

The U.S. Constitution empowers states in the first instance to regulate and administer elections. U.S. Const. art. I, § 4, cl. 1; *see also Ass'n of Cmty. Orgs. for Reform Now*

*v. Edgar*, 56 F.3d 791, 796 (7th Cir. 1995). Although Congress may legislate to preempt state legislative choices as to elections, its preemptory authority may go only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)).

Indeed, "Congress has erected a complex superstructure of federal regulation atop state voter-registration systems." *Id.* at 5. The National Voter Registration Act of 1993 ("NVRA") "requires states to provide simplified systems for registering to vote in federal elections." *Id.* (emphasis omitted) (quoting *Young v. Fordice*, 520 U.S. 273, 275 (1997)). The NVRA "has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018) (citing 52 U.S.C. § 20501(b)). Each state is charged with "the administration of voter registration for elections for Federal office," including the handling and maintaining of voter registration lists. 52 U.S.C. § 20507(a)–(g).

Congress later enacted the Help America Vote Act of 2002 ("HAVA") to "establish minimum election administration standards for federal elections" whereby states were required to "standardize voting systems, maintain computerized voter registration lists, and more." *Wis. Voter All. v. Millis*, 166 F.4th 627, 630 (7th Cir. 2026) (per curiam) (quotation omitted). HAVA requires "each State, acting through the chief State election official, [to] implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration

information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A). The method of compliance with HAVA was left to the discretion of each State. *Id.* § 21085.

Decades earlier, Congress enacted the Civil Rights Act of 1960 to combat racial discrimination in voting. *S.C. v. Katzenbach*, 383 U.S. 301, 313 (1966). Title III of the CRA "gave the Attorney General access to local voting records" to aid in his enforcement of voting rights statutes. *Id.* For the immediate twenty-two months following a federal election, the election official is required by Title III to "retain and preserve . . . all records and papers which *come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). The Attorney General may "demand in writing" from the election official any "record or paper" required to be "retained and preserved," but the demand "shall contain a statement of the *basis and the purpose* therefor." *Id.* § 20703 (emphasis added). If a dispute arises, the district court sitting in the district where the demand is made "shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

## II.     FACTUAL BACKGROUND

On July 28, 2025, the U.S. Attorney General sent a letter to Matthews requesting, among other things, "[t]he current electronic copy of the State of Illinois' computerized statewide voter registration list." (Doc. 5-2 at Ex. 1). On August 11, 2025, Matthews provided the Attorney General with an electronic redacted copy of the list that omitted

the following sensitive information: dates of birth, driver's license and/or state identification numbers, and the last four digits of each registrant's social security number (collectively, "Sensitive Voter Information"). (Doc. 65-1; Doc. 4 at ¶¶ 22–24).

On August 14, 2025, the Attorney General sent a demand letter to Matthews stating: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Illinois's complete and current [Voter Registration List]. The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA." (Doc. 5-2; Doc. 4 at ¶¶ 23, 25). Citing privacy laws, Matthews refused to provide the Attorney General with an unredacted copy of the list. (Doc. 4 at ¶¶ 23, 25).

Matthews and the Intervenor Defendants[1] moved to dismiss the complaint arguing the Attorney General lacks authority under Title III to demand the unredacted voter registration list from Illinois. Amicus briefs in support of dismissal were submitted by the Democratic National Committee, Eighteen States and the District of Columbia, and former attorneys of the United States Department of Justice's Civil Rights Division.

As of July 30, 2026, the Department of Justice (the "DOJ") has initiated similar Title III suits against election officials in 30 other states and the District of Columbia, seeking their full, unredacted voter information.[2] Eighteen district courts have dismissed the

---

[1] The Intervenor Defendants are Illinois AFL-CIO, Illinois Alliance for Retired Americans, Illinois Federation of Teachers, Common Cause, Illinois Coalition for Immigrant and Refugee Rights, Brian Beals, Pablo Mendoza, and Alejandra L. Ibañez.

[2] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just., https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (last updated July 30, 2026).

DOJ's suit and the Sixth Circuit recently affirmed the judgment of the District Court for the Western District of Michigan dismissing the suit. *See United States v. Benson*, No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026). As detailed further below, the Court finds Title III does not provide the Attorney General with the authority to compel production of the unredacted voter registration list, and the written demand was deficient as a matter of law.

### III.    DISCUSSION

#### A.  Standard of Review

The parties dispute the appropriate standard of review. The United States argues the Federal Rules of Civil Procedure do not apply to actions under Title III because those actions are "summary proceedings" and "not the commencement of an ordinary, traditional civil action with all its trappings." (Doc. 73 at 6 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962))). The United States contends that a district court may not inquire into the legal sufficiency of the written demand's basis or purpose, but only consider whether the Attorney General has, in fact, made a written demand for federal election records with the necessary basis and purpose and whether that demand was refused.

The Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964), held that where a statute authorizes courts to compel compliance, but the statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 57–58, 58 n.18. In *Powell*, the Supreme Court

applied the Federal Rules of Civil Procedure in considering whether Section 7604(a) of the Internal Revenue Code authorized the enforcement of the IRS Commissioner's summons "by appropriate process." *Id.* at 52, 57–58, 58 n.18. Here, Title III of the CRA also provides district courts with jurisdiction "by appropriate process" to compel the production of records and papers. 52 U.S.C. § 20705. Accordingly, the Court finds judicial review of Title III is governed by the Federal Rules of Civil Procedure. *Powell*, 379 U.S. at 58 ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused."); *see also Benson*, 2026 WL 1815425, at *8 n.2.

A motion to dismiss under Rule 12(b)(6) challenges whether a complaint has stated a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, the claim on its face must demonstrate a plausible right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. In review, a district court need not accept a complaint's legal conclusions, *id.*, and may take judicial notice of matters of public record, *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

### B. Title III Does Not Authorize the Attorney General to Demand a Voter Registration List

Under Title III of the CRA, the Attorney General is authorized to demand only those records held by an election official following an election that "come into his possession," and are "requisite to voting in such election." 52 U.S.C. §§ 20701, 20703.

"Come into possession" is a synonym for "obtain," "acquire," or "receive." *See Benson*, 2026 WL 1815425, at *4 (finding same); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) (defining "obtain" to mean, among other things, "to come into the possession" of something (citing 10 Oxford English Dictionary 669 (2d ed. 1989))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting Webster's New International Dictionary (3d ed. 1966))). As used in Title III, the phrase does not encompass records that state election officials *create* or merely *possess*. *See Benson*, 2026 WL 1815425, at *5 ("An ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained.") Instead, the election officials are required to preserve records that come into their possession from outside sources.

Recall that HAVA requires "each State, acting through the chief State election official" to implement a statewide voter list. 52 U.S.C. § 21083(a)(1)(A). The list is created by the Illinois Board of Elections and maintained internally.[3] Although the Board possesses the list by its own creation, the Board did not *come into* its possession. If Congress had meant "come into possession" to simply mean any record existing within the election official's "possession," it would not have chosen to include the ostensibly

---

[3] The Board accepts information received from other state agencies—in addition to voters—and compiles that information into its voter registration list as required by federal and state law. 52 U.S.C. §§ 20504, 20506; 10 ILCS 5/1A-16.1–16.8; *see also United States v. Wisc. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354, at *4 (W.D. Wis. May 21, 2026) ("[V]oter registration lists are not necessarily simple compilations of voter registration applications. Some contain additional information that Congress may very well have wanted to exempt from production.").

extraneous language. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (collecting cases and explaining that no statute should be read to make any word or clause "superfluous, void, or insignificant" (internal quotation marks omitted)); *Benson*, 2026 WL 1815425, at *6 ("A construction that makes all voting records and papers in the election officers' possession subject to Title III would render 'come into' superfluous."). Furthermore, Title III's plain text states that retained records must be "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. The Sixth Circuit correctly identifies these terms as referring to those records obtained from voters or prospective voters—"[e]lection officers do not create these kinds of records." *Benson*, 2026 WL 1815425, at *5.

Requiring disclosure of records received rather than those created by state election officials is consistent with the CRA's congressional purpose. Congress was concerned with racial discrimination in voting when it passed the CRA. *See Katzenbach*, 383 U.S. at 313. Title III confers the Attorney General authority to review records that come into the state's possession with respect to a particular federal election to determine whether the state violated individuals' voting rights. 52 U.S.C. § 20701; *see United States v. Oregon*, No. 6:25-cv-1666, 2026 WL 318402, at *10 (D. Or. Feb. 5, 2026). In furtherance of the CRA's objectives, the federal election records received by the state—and "requisite to voting in such election"—are amenable to the federal government's review. 52 U.S.C. § 20701. Allowing the Attorney General to review everything the state itself generates serves as an expansive grant of authority and is one such grant that is not clear from the text of the

statute. *See Inter Tribal Council of Ariz.*, 570 U.S. at 9 (regulating federal elections is reserved to the states insofar as Congress chooses to exercise its preemptory authority); *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) ("Where the statute at issue is one that confers authority upon an administrative agency, that inquiry must be shaped, at least in some measure, by the nature of the question presented—whether Congress in fact meant to confer the power the agency has asserted." (internal quotation marks omitted)).

Finally, NVRA and HAVA require election officials to maintain voter registration lists with "reasonable effort[s]" to ensure accuracy by removing "the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507 (NVRA); *id.* § 21083 (HAVA). The appropriate election official is tasked with performing list maintenance on a regular basis including altering the list. *Id.* § 21083. But under Title III, anyone who "willfully steals, destroys, conceals, mutilates, or alters any record or paper required . . . to be retained and preserved shall be fined . . . or imprisoned . . . ." *Id.* § 20702. Thus, interpreting Title III to require the preservation and disclosure of the voter registration list "would place elections officials in violation of one federal law for trying to comply with others," *Benson*, 2026 WL 1815425, at *6; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) ("Courts must 'interpret Congress's statutes as a harmonious whole rather than at war with one another').

Accordingly, the Court finds a voter registration list is not subject to the Attorney General's investigatory power under Title III.

### C. The August 14th Demand Letter Did Not State a Sufficient "Basis" or Legitimate "Purpose"

Dismissal is additionally warranted because the Attorney General's written demand did not include both a sufficient basis and legitimate purpose for requesting the unredacted voter registration list. *See* 52 U.S.C. § 20703. The United States argues § 20703 requires the demand to include a statement of the basis *or* the purpose for the demand. However, the canons of statutory construction demand otherwise. 52 U.S.C. § 20703 (stating "demand shall contain a statement of the basis *and* the purpose therefor." (emphasis added)); *see also Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 683 (7th Cir. 2018) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 116 (2012))).

It is well established that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31 (internal quotation marks omitted and collecting cases). This Court agrees with the Sixth Circuit and district courts who have considered the issue and, in accordance with principles of statutory construction, have required the Attorney General to state both a basis and purpose in his demand.[4] *Benson*, 2026 WL 1815425, at *8; *see, e.g., United States v. Galvin*, No. 25-13816, 2026 WL 972129, at *5 (D. Mass. Apr. 9, 2026); *see also Walsh v. Alight Sols. LLC*, 44 F.4th 716, 722 (7th Cir. 2022) (an

---

[4] Given that the "demand shall *contain* a statement of the basis and the purpose," 52 U.S.C. § 20703 (emphasis added), each statement must be included within the written demand. Any ex ante or post hoc statement or rationalization of the basis or purpose, *see* Doc. 73 at 12 (arguing the earlier letter dated July 28th stated a basis); Doc. 73-1 (2d Declaration of Eric Neff), cannot suffice.

administrative subpoena "may not be issued for an illegitimate purpose" and "the information sought [must be] reasonably relevant" to an inquiry "within the authority of the agency").

### (1) "Basis"

The United States contends the written demand complied with Title III's basis requirement by identifying the legal authority relied upon. (Doc. 5-2 ("Pursuant to the foregoing authorities, including the CRA . . . .")). But it stands to reason that the Attorney General must state more than a vague statutory reference or every Title III demand would have sufficient basis so long as the Attorney General includes some statutory authority. *See Galvin*, 2026 WL 972129, at *5 ("This argument confuses the legal authority under which the Attorney General made the demand — the CRA — and the statute's requirement to state 'the basis' — the foundation in fact or evidence for the demand."); *Oregon*, 2026 WL 318402, at *9 ("[T]he statute underlying the investigation is nothing more than a component of the purpose.").

Instead, Title III requires a factual basis for the demand which could include the evidence behind the Attorney General's investigation into the state's suspected noncompliance with federal law. *See, e.g.*, *Galvin*, 2026 WL 972129, at *5 (collecting cases and reasoning that Congress could not have intended that the Attorney General need only "include a citation to Title III in demand letters"); *e.g.*, *Oregon*, 2026 WL 318402, at *8–9 ("The Court understands 'basis' to mean a factual basis for investigating a violation of a federal statute."); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026)

("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."). However, no determination on the contours can be made here because the August 14th Demand Letter did not provide any factual basis for this Court to review. The Court finds the Attorney General was statutorily required to explain the relevance of the Sensitive Voter Information to his inquiry. Because he failed to do so, the Attorney General's written demand was deficient on its face for want of a stated basis.

**(2) "Purpose"**

Although the August 14th Demand Letter contained an explicit statement of the purpose of the demand – "to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA" – enforcement of the maintenance requirements is not a proper purpose for a records demand under Title III.

The Attorney General must state a *legitimate* purpose for any Title III demand, distinct from his basis, that entitles him to the records sought, and district courts must consider its sufficiency. *See Benson*, 2026 WL 1815425, at *8 (requiring "a statement of the basis and purpose" for the demand). If the Attorney General could simply justify his demand with a statement of any purpose whatsoever, the requirement that he specify his purpose (and his basis) would be pointless and it would provide him with unfettered authority to demand voting records. *See TRW Inc.*, 534 U.S. at 31 (collecting cases on statutory interpretation); *see also Oregon*, 2026 WL 318402, at *9.

In consideration of the context from which the CRA was enacted, *see Abramski v. United States*, 573 U.S. 169, 179 (2014), as well as the "language and design of the statute," *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988), a Title III purpose must relate to Congress's rationale behind granting the Attorney General investigatory authority over certain federal voting records. In essence, the demand "must relate to a purpose of investigating violations of individuals' voting rights," as that is what the Attorney General was tasked by Congress to investigate. *Oregon*, 2026 WL 318402, at *10; *Inter Tribal Council of Ariz.*, 570 U.S. at 9 (Congress may choose to preempt States' "responsibility for the mechanics of congressional elections," but only "so far as [preemption] is exercised, and no farther"). Congress did not confer a general auditing power to the DOJ over state election officials. *See West Virginia*, 597 U.S. at 721–23.

Therefore, the Attorney General's stated interest in investigating "Illinois's compliance with the list maintenance requirements of the NVRA and HAVA" is not a proper Title III purpose as it does not relate to any suspected violation of voting. The Attorney General's demand is deficient in both its stated basis and purpose and cannot be enforced against Matthews.

## IV.    CONCLUSION

For the reasons discussed, Defendant Bernadette Matthews was not required to disclose the records at issue in this case. Accordingly, the United States' Motion to Compel (Doc. 5) is DENIED and Defendants' Motions to Dismiss (Docs. 41, 49, 56, 64, and 67) are GRANTED. Because the Court finds any further amendment to the complaint

would be futile, the action is DISMISSED with prejudice. The Clerk is directed to close this case and enter Judgment in accordance with this Opinion.

ENTER: July 31, 2026

 s/Colleen R. Lawless
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE